**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

---

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

Case No. 19-cv-809-wmc

BLUEPOINT INVESTMENT COUNSEL, LLC, et al.,

Defendants.

---

## JOINT RULE 26(f) REPORT

---

Pursuant to the Court's Rule 26 Standing Order, and Rule 26(f) of the Federal Rules of Civil Procedure, the parties, by their respective counsel, jointly submit this Rule 26(f) Report.

## 1. Meeting

Pursuant to Federal Rule of Civil Procedure 26(f), the parties held a Rule 26(f) conference via telephone on December 27, 2019. Present by telephone were Doressia L. Hutton and Christopher H. White for Plaintiff United States Securities and Exchange Commission ("SEC" or "Plaintiff"), and Robert Romashko of Husch Blackwell, LLP for Defendants Bluepoint Investment Counsel, Inc. ("Bluepoint"), Michael G. Hull ("Hull"), Christopher J. Nohl ("Nohl"), Chrysalis Financial, LLC ("Chrysalis"), and Greenpoint Asset Management II, LLC ("GAM") (collectively, "Defendants").

## 2. Nature of the Case

### a. *The SEC's Statement*

From April 2014 to at least the filing of the Complaint, Defendants have defrauded at least 129 investors in 10 states out of over $52 million. Hull and his entity, Greenpoint Asset

Management II LLC ("Greenpoint Management II"), and Nohl and his entity, Chrysalis, perpetrated an offering fraud.

Hull, Nohl, and their entities are investment advisers to Greenpoint Tactical Income Fund LLC ("Greenpoint Tactical Income Fund" or the "Fund"). They breached fiduciary duties owed to the Fund. As of June 30, 2018,[1] 52% of the Fund's purported value was its gem and mineral collection, and 46% of the Fund's purported value was a portfolio of securities of private companies, primarily consisting of an environmental remediation company named Amiran Technologies LLC ("Amiran").

Hull, Nohl, and their entities have unlawfully enriched themselves at the expense of investors by engaging in undisclosed self-dealing and related party transactions. As fiduciaries, they were obligated to disclose related party transactions but did not. Hull and Nohl repeatedly made personal loans to the Fund and often charged the Fund interest exceeding 100% annual percentage rate. In violation of their fiduciary duties, Hull, Nohl, and their entities did not disclose these loans to the Fund's investors or auditor.

In the offering materials for Greenpoint Tactical Income Fund, Hull, Nohl, and their entities made false and misleading statements to the investors. Hull, Nohl, and their entities misled the investors as to how they have been operating the Fund and valuing its assets.

According to the Fund, as of June 30, 2018, it had a net asset value of $135 million based almost entirely on unrealized gains. Indeed, 95% of the purported gains were unrealized and largely fictitious. The purported returns come from Hull and Nohl improperly inflating the value of Amiran and from the valuations of the gems and minerals that, amongst other things, failed to comply with the minimal valuation procedures contained in the Fund's operating agreements.

[1] At the time of the filing of the Complaint, June 30, 2018 was the last date for which the Fund had financial statements.

By increasing the valuation of the Fund's assets, Hull and Nohl increased their management fees.

Hull, Nohl, and their entities more than doubled the value of Amiran from the fourth quarter of 2017 to the first quarter of 2018 from $18.3 million to $38.5 million while knowing that the primary subsidiary of Amiran was in default on a line of credit secured by all of the subsidiary's assets and guaranteed by Amiran. Amiran is now defunct and worthless. The investors never made any money with respect to Amiran. However, Hull and Nohl received increased management fees as they continued to increase the value of Amiran without an objective basis for doing so. Hull and Nohl's valuations of Amiran were misleading, unreasonable, lacked an objective basis, and ignored significant negative facts

Hull, Nohl, and their entities represented to the Fund's investors and auditor that the gem and mineral valuations were determined in an objective manner; that the appraisers were independent; and that the gems and minerals were valued at the purchase price during the year they were acquired. To the contrary, Nohl repeatedly interfered in the appraisals of the gems and minerals owned by the Fund in order to obtain and report higher values and thereby obtain higher management fees. Also, Hull and Nohl acted in violation of the Fund's operating agreement by not using the purchase prices as the value of the gems and minerals during the year the Fund acquired them.

Hull is also the co-owner of Bluepoint, a now de-registered investment adviser that claimed to have as much as $145 million in assets under management. Bluepoint through Hull recommended that all of Bluepoint's individual clients invest in the Greenpoint Tactical Income Fund and other affiliated Greenpoint Funds. Hull made these recommendations without regard for each individual investor's needs and circumstances.

**b.** ***Defendants' Statement***

Plaintiff's Complaint alleges that the Defendants have collectively misled investors and investment advisees in violation of the securities laws. These allegations relate primarily to investors in and management of Greenpoint Tactical Income Fund, LLC ("GTIF"). In sum, Plaintiff alleges that Defendants misled investors in GTIF as to the use of funds that were to be raised, failed to adequately disclose material information regarding loans, related party transactions, valuations, and unreasonably valued its assets. However, as described in Defendants' Motion to Dismiss, filed November 29, 2019, SEC's allegations are unsupported and deficient, including improper allegations premised on misleading and selective quotations from offering materials or valuation statements. Further, the evidence will show that investors were not misled, materially or otherwise, as to any matter and that no misrepresentations were made.

**3. Material Factual and Legal Issues to be Resolved at Trial**

**a.** ***The SEC's Statement***

**1)** That Hull, Nohl, Bluepoint, Greenpoint Management II, and Chrysalis are investment advisers and breached their fiduciary duties.

**2)** That Hull, Nohl, Bluepoint, Greenpoint Management II, and Chrysalis engaged in undisclosed self-dealing and related party transactions.

**3)** That Hull, Nohl, Greenpoint Management II, and Chrysalis made false and misleading statements in the offering materials for Greenpoint Tactical Income Fund, the financial statements, and the valuation reports for Amiran.

**4)** That Hull, Nohl, Greenpoint Management II, and Chrysalis made false and misleading statements about how Greenpoint Tactical Income Fund was valuing the gems and minerals.

**5)** That Hull and Bluepoint made false and misleading statements about the risks of investing in Greenpoint Tactical Income Fund and investors being able to get their money back.

**6)** That Hull and Bluepoint recommended that all of Bluepoint's individual clients invest in the Greenpoint Funds without regard for each investor's individual needs and circumstances.

**7)** That Hull, Nohl, Greenpoint Management II, and Chrysalis ignored material negative facts in the valuations of Amiran and of the Fund's equity ownership in Amiran.

**8)** That Hull and Nohl's valuations of Amiran and the Fund's equity ownership in Amiran were misleading, unreasonable, and lacked an objective basis.

**9)** That Hull, Nohl, Bluepoint, Greenpoint Management II, and Chrysalis violated Sections 17(a)(1), 17(a)(2), and 17(a)(3) of the Securities Act of 1933 ("Securities Act').

**10)** That Hull, Nohl, Bluepoint, Greenpoint Management II, and Chrysalis violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder.

**11)** That Hull, Nohl, Bluepoint, Greenpoint Management II, and Chrysalis violated Sections 206(1) and 206(2) of the Advisers Act of 1940 ("Advisers Act").

**12)** That Hull and Nohl aided and abetted Bluepoint's, Greenpoint Management II's, and Chrysalis' violations of Sections 206(1) and 206(2) of the Advisers Act.

**13)** That Hull, Nohl, Greenpoint Management II, and Chrysalis violated Section 206(4) of the Advisers Act and Rule 206(4)-8.

**b. *Defendants' Statement***

The following are the factual and legal issues to be resolved at trial, as identified by Defendants on the basis of the Complaint as currently constituted. Defendants have moved to dismiss Plaintiff's complaint, which may narrow these issues. Further, these issues are identified without the benefit of discovery and may be updated as Defendants identify new issues:

i. Whether the Plaintiff and other governmental agencies have acted in violation of Defendants' rights and interests in connection with related, parallel investigations predicated on false and unsupported allegations, violations of Federal Rule of Criminal Procedure 6(e), other rules of procedure, and regulatory or administrative restrictions on information sharing.

ii. Whether information developed by Plaintiff in its administrative investigation demonstrates that representations made by Plaintiff in its Complaint are unsupported or false, and whether such representations were made with improper motives resulting in economic and other serious injury and damages to Defendants as well as investors in GTIF or any other fund.

iii. Whether Defendants made any misrepresentation to any investor, advisee or auditors, as to use of funds, valuation methods or timing, or any other matter identified in the Complaint.

iv. Whether any such misrepresentation was material.

v. Whether Defendants omitted any material fact from any disclosure to investors, advisees, or auditors, as to any matter identified in the Complaint.

vi. Whether Defendants Michael Hull or Christopher Nohl aided and abetted any material misrepresentation or omission, if any.

vii. Whether any material omission or misrepresentation, if any, was made with scienter.

viii. Whether, as a matter of law, Plaintiff has the statutory authority to seek disgorgement as a remedy in this Court.

ix. Whether any of the funds managed or advised by any Defendant constitutes a pooled investment vehicle Under Rule 206(4)-8.

**4. Jurisdiction**

The parties agree that this Court has jurisdiction pursuant to Section 22(a) of the Securities Act (15 U.S.C. § 77v), Section 27(a) of the Exchange Act (15 U.S.C. § 78aa), and Section 214(a) of the Advisers Act (15 U.S.C. § 80b-14(a)).

**5. Amendments to the Pleadings that any Party Intends to Make**

The SEC staff intends to seek authorization from the Commission to file an amended Complaint to name two additional entities as defendants.

Defendants have moved to dismiss the Complaint under Rule 12(b)(6). If that motion is granted, in whole or in part, Defendants anticipate the Complaint will be amended. Defendants have not yet filed an Answer while their Motion to Dismiss is pending. Defendants learned of SEC's intent to name the two additional parties during discussion of this Report; Defendants anticipate filing an opposition to the Amendment.

**6. Identity of New Parties to be Added**

***a. The SEC's Statement***

The SEC staff intends to seek authorization from the Commission to file an amended Complaint that names Greenpoint Tactical Income Fund and GP Rare Earth Trading Account LLC ("GP Rare Earth") as Defendants. As stated in the Complaint:

> **Greenpoint Tactical Income Fund LLC ("Greenpoint Tactical Income Fund" or the "Fund")** is a Wisconsin limited liability company with its principal place of business in Madison, Wisconsin. Greenpoint Tactical Income Fund is a private investment fund managed by Greenpoint Management II, Chrysalis, Hull, and Nohl. The Fund has a stated investment strategy of "generating a strong, stable balance of current cash flow and capital gains." (Complaint ¶ 27)

> **GP Rare Earth Trading Account LLC ("GP Rare Earth")** is a wholly owned subsidiary of Greenpoint Tactical Income Fund. It is a Wisconsin limited liability company. GP Rare Earth is the entity that holds the gems and minerals. (Complaint ¶ 31)

Greenpoint Tactical Income Fund made false material representations and omitted material facts in its offering materials, its financial statements, and valuation reports for Amiran. GP Rare Earth is an instrumentality of the fraud alleged in the Complaint. The appraisals of the gems and minerals—in which Nohl interfered in order to drive up their appraised values—were performed on behalf of GP Rare Earth as the entity holding the gems and minerals. The appraisals were then used by Greenpoint Tactical Income Fund to pay increased management fees to Hull's and Nohl's entities.

On October 4, 2019, Greenpoint Tactical Income Fund and GP Rare Earth filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Eastern District of Wisconsin ("Bankruptcy Case"). On January 2, 2020, the SEC filed an adversary proceeding against Greenpoint Tactical Income Fund and GP Rare Earth in the Bankruptcy Case seeking a declaration that the SEC's claims for disgorgement of ill-gotten gains, prejudgment interest, and civil penalties are non-dischargeable pursuant to Section 1141(d)(6) of the Bankruptcy Code. The filing of the bankruptcy petitions does not operate as a stay "of the commencement or continuation of an action or proceeding by a governmental unit ... to enforce such governmental unit's ... police and regulatory power, including the enforcement of a judgment other than a money

judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's ... police or regulatory power." 11 U.S.C. § 362(b)(4). It is well established that the SEC's enforcement actions, including actions that seek injunctive relief, disgorgement, and civil penalties, are an exercise of the SEC's police and regulatory powers to protect the public interest and not pecuniary, and hence are exempt from the automatic stay. *See, e.g., SEC v. First Financial Group of Texas*, 645 F.2d 429, 437 (5th Cir. 1981); *SEC v. Long*, 106 B.R. 697 (D. Kan. 1989); *SEC v. Elmas Trading Corp.*, 620 F. Supp. 231 (D. Nev. 1985), *aff'd*, 805 F.2d 1039 (9th Cir. 1986); *SEC v. Towers Fin. Corp.*, 205 B.R. 27 (S.D.N.Y. 1997).

On January 2, 2020, Plaintiff filed proofs of claim against Greenpoint Tactical Income Fund and GP Rare Earth in the Bankruptcy Case asserting claims for disgorgement of ill-gotten gains, prejudgment interest, and civil penalties.

***b. Defendants' Statement***

Defendants learned of SEC's intention to add these two specific parties as Defendants on January 2, 2020 and are still evaluating the effect of this information, but will likely oppose the amendment of the Complaint. SEC is out of time to file amendments to its Complaint as of right, and it is unclear what justifies the failure to name these parties in September, when the case was filed. In addition, Defendants state that, given that it is not clear who the parties to this matter even are, at this juncture, commencement of discovery would be premature.

**7. Related Cases**

*Erick J. Hallick v. Greenpoint Tactical Income Fund, LLC*, *et al.* which was filed in the Circuit Court of Dane County and subsequently moved to arbitration. The arbitration was stayed after Greenpoint Tactical Income Fund and GP Rare Earth filed for bankruptcy.

GTIF and its wholly-owned subsidiary are presently in bankruptcy proceedings in the Eastern District of Wisconsin. These cases are *In re Greenpoint Tactical Income Fund LLC*, Eastern District of Wisconsin Bankruptcy Court case no. 2019-bk-29613, and *In re GP rare Earth Trading Account, LLC*, case no. 2019-bk-29617.

On January 2, 2020, the SEC filed an adversary proceeding against Greenpoint Tactical Income Fund and GP Rare Earth in the Bankruptcy Case seeking a declaration that the SEC's claims against are non-dischargeable. The adversary proceeding was filed under the Bankruptcy Case and is styled *U.S. Securities and Exchange Commission v. Greenpoint Tactical Income Fund LLC and GP Rare Earth Trading Account LLC*, Adversary Proceeding No. 20-02005-gmh.

**8. Discovery Plan and Schedule**

***a. The SEC's Proposed Discovery Plan and Schedule***

The SEC has been informed that Defendants intend to seek a stay of discovery. The SEC intends to file an opposition to any such motion. The filing of a motion to dismiss based on Federal Rules of Civil Procedure 8 and Rule 9(b) does not automatically lead to a stay of discovery. "The party seeking a stay has no absolute right to a stay; rather, that party bears the burden of proof to show that the Court should exercise its discretion in staying the case." *United States ex rel. Robinson v. Indiana University Health Inc.*, 2015 WL 3961221, *1 (S.D. Ind. June 30, 2015) (denying motion to stay discovery until the Court resolves motion to dismiss).

Adding the Fund and GP Rare Earth, both of which are discussed in the Complaint, as defendants does not support a stay of discovery as these additional parties do not change the subjects on which discovery is needed. The claims against these two parties are based on the facts already alleged in the Complaint. It is merely adding two parties which are liable for the fraud that is already detailed in the Complaint.

If discovery is not stayed, the SEC will work with Defendants to timely exchange documents. For example, the Defendants would like the SEC to produce testimony transcripts and exhibits as expeditiously as possible, and the SEC would like Defendants to produce the Fund's general ledgers for 2018 and 2019 as expeditiously as possible. Defendants have not agreed to produce the general ledgers for 2018 and 2019. The SEC's position is that Defendants cannot have it both ways meaning that they cannot demand a stay of discovery while at the same time demanding that the SEC produce testimony transcripts and exhibits.

***Subjects On Which Discovery Is Needed***

The SEC will seek discovery on its claims including that Hull, Nohl, Bluepoint, Greenpoint Management II, and Chrysalis violated Sections 17(a)(1), 17(a)(2), and 17(a)(3) of the Securities Act; Section 10(b) of the Exchange Act and Rule 10b-5 thereunder; and Sections 206(1) and 206(2) of the Advisers Act and that Hull, Nohl, Greenpoint Management II, and Chrysalis violated Section 206(4) of the Advisers Act and Rule 206(4)-8. The SEC will also seek discovery on Defendants' defenses.

The SEC proposes that the parties follow Federal Rule of Civil Procedure 26(b)(1) as to the scope of discovery.

The SEC proposes that fact discovery occur before expert discovery.

***Trial Date***

A jury trial shall commence on **May 1, 2021** (16 months after the preliminary pretrial conference).

***Amendment of Pleadings***

Pleadings shall be amended by April 30, 2020.

***Deadlines For Discovery, Non-Dispostive Motions, And Dispositive Motions***

1) The parties shall provide their disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1) by **January 15, 2020**.
2) Dispositive motions shall be filed by **December 15, 2020** (4 ½ months before trial).
3) Fact discovery shall be completed by **November 3, 2020**.
4) Each party shall disclose the identity of its expert witness(es) and disclose the report(s) required under Rule 26(a)(2) by **November 10, 2020**.
5) Non-dispositive motions except for motions relating to experts shall be filed by **November 10, 2020**.
6) Each party shall disclose the identity of its rebuttal expert witness(es) and disclose any rebuttal report(s) by **December 10, 2020**
7) Each expert shall be deposed no more than one time. Any expert depositions shall be completed by **January 22, 2021.**

***Interrogatories***

The SEC shall be allowed to serve no more than 25 interrogatories on Defendants.

All Defendants collectively shall be allowed to serve no more than 25 interrogatories on the SEC.

***Depositions***

The SEC shall be allowed to take depositions of each of Defendants' expert witnesses, and Defendants collectively shall be allowed to take one deposition of each of the SEC's expert witnesses.

The SEC shall be allowed to take 12 depositions (excluding the expert depositions).

All Defendants collectively shall be allowed to take 12 depositions (excluding the expert depositions).

***ESI***

The SEC proposes that the parties agree that if any electronically stored information ("ESI") is sought by discovery request, the ESI shall be produced in the form the party created, received, or acquired it. If a party created, received, or acquired information in electronic form, including metadata, then it should be produced in electronic form, including metadata. For example, if a party created, received, or acquired native files (including, but not limited to, word documents, excel spreadsheets, emails, etc.), then such native files shall be produced in their native format, including metadata. If a party received or acquired image files (but not a native file), then such image files shall be produced either as TIFF or PDF images, with all available metadata.

**b. *Defendants' Proposed Discovery Plan and Schedule***

Discovery should be held in abeyance until the Court rules on Defendants' Motion to Dismiss and until SEC files its intended amended Complaint adding additional defendants. It is inefficient and impractical to begin discovery when both the basis for the claims and the very parties subject to them are in dispute. Defendants' Motion to Dismiss is premised in part upon the allegation that the Complaint is deficient and contrary to Rules 8 and 9 of the Federal Rules

of Civil Procedure and that discovery under such a pleading would be wide-ranging and uncontrolled. Discovery should not begin until that matter is resolved. Further, although SEC asserts Defendants' requests for prompt production of witness testimony are inconsistent with this position, such testimony and its attached exhibits are expected to include materials incorporated by reference into the Complaint and may be relevant at the dismissal stage.

In the alternative, the Defendants propose the following discovery plan in accordance with Fed. R. Civ. P. Rule 26(f)(3)(A) – (F).

**a.** ***Initial Disclosures.*** Initial disclosures shall be due January 15, 2020. Defendants request that no written discovery requests be served until after initial disclosures are received; Defendants have further requested that Plaintiff's initial disclosures include copies of all witness testimonies and exhibits thereto from Plaintiff's pre-complaint investigation, rather than requiring Defendants to serve written discovery requests and wait for responses; Plaintiffs have refused this request absent an agreement by Defendants to produce other requested materials.

**b.** ***Subjects on which discovery may be needed.*** Defendants anticipate seeking discovery as to issues related to the accuracy of representations made by federal investigatory authorities and cooperating individuals purporting to raise legitimate (albeit unsupported) concerns relating to the conduct and operations of the Defendants, communications between federal investigatory and enforcement authorities relating to the parallel investigations of Defendants and the mishandling of secret grand jury material and sharing of same, representations by Defendants to investors and auditors, communications between Defendants and investors, auditors, and other third parties, and as to the bases for such assertions.

These subjects will include the appraisal process for gems and minerals and private equity investments, loans and related party transactions related to GTIF, timing of valuations, and accuracy thereof.

**c.** ***Timing of Discovery.***

i. **When discovery should be completed.** Fact discovery shall be completed by September 15, 2020 and expert discovery by February 15, 2021.

ii. **Phases of discovery or limitations on the subjects of discovery.** Defendants' position is that discovery need not be conducted in phases and, at this time, that any limitations on the subjects of discovery should be governed by the Federal Rules of Civil Procedure. Defendants suggest the following deadlines and seek an order entering them:

1. Plaintiff's deadline to amend the complaint and join additional parties is July 31, 2020. Defendants' deadline to amend their pleadings is August 7, 2020.

2. Plaintiff shall make the expert disclosures required by Federal Rule of Civil Procedure 26(a) by October 1, 2020. Defendants shall make the expert disclosures required by Federal Rule of Civil Procedure 26(a) by November 3, 2020.

3. All parties shall identify any rebuttal experts on any issue and make the disclosures required by Federal Rule of Civil Procedure 26(a)(2)(A)&(B) by November 27, 2020.

4. The deadline for filing and serving dispositive motions and *Daubert* motions is February 15, 2021.

**d.** ***Number of Interrogatories and Depositions.*** Defendants propose interrogatories be limited to 25, as provided by Federal Rule of Civil Procedure 33(a)(1), per individually-named party; although some allegations overlap, the Complaint raises allegations applicable to specific Defendants (for example, allegations regarding Defendant Hull's investment clients, and claims of aiding and abetting against Defendants Hull and Nohl) that require separate proofs. Defendants also propose that each side may notice no more than 15 depositions without leave of the Court as provided by Federal Rule of Civil Procedure 30(a)(2)(A)(i); SEC has proposed a higher number but when asked, offered no justification for this request; however, on information and belief, SEC, in its pre-complaint investigation, took testimonies of more than this number of witnesses and should have no reason to take additional depositions.

**e.** ***Discovery of electronically stored information.*** Defendants propose that the parties agree to make reasonable efforts to (1) agree to search terms and (2) reduce document review and production through de-duplication, email threading, and other methods, as reasonably available. Furthermore, the parties agree to work cooperatively to develop agreed procedures governing the gathering, review, and production of ESI in this matter.

**9. <u>Other Matters</u>**

***Claims of privilege or protection.***

If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

The SEC does not agree with Defendants' proposal not to log materials claimed to be protected from discovery by the attorney-client privilege or attorney work-product doctrine, where such materials are dated or created on or after March 22, 2017.

Defendants have proposed that the parties agree that they shall not be required to log materials protected from discovery by the attorney-client privilege, or attorney work-product doctrine, where such materials are dated or created on or after March 22, 2017, the date Defendants became aware of SEC's investigation in this matter.

Defendants will request that the Court issue an order pursuant to Federal Rule of Evidence 502 as well as a protective order to prevent disclosure of sensitive trade information, investor information, and Defendants' employees' personal information. Defendants have been informed that SEC is unwilling to agree to such a protective order but has a form of order it would like entered if and only if the Court determines such an order is necessary. Defendants will submit a proposed form of order as an attachment to a Motion for Protective Order.

Defendants will not be able to produce documents or other confidential information prior to resolution of this issue.

The SEC does not believe that a protective order is necessary in this case. The SEC states that if the Court were to enter a protective order it should limit the definition of confidential information to "trade secrets or other confidential research, development, or commercial information and financial information of non-parties."

The SEC's position is that any protective order should also provide that:

> Notwithstanding any other provision of this Protective Order, the Securities and Exchange Commission shall not be limited in its ability to share, disclose, or produce any information received in connection with this action with any other federal or state authority, agency, or department, or to the extent otherwise required by law or permitted pursuant to the terms of SEC Form 1662.

In the event, the Court decides a protective order is necessary. The SEC suggests the protective order attached as Exhibit A.

**10. Settlement**

***a. The SEC's Position***

The SEC states that the parties have engaged in initial settlement discussions but were not close to any agreement. The SEC is willing to engage in settlement discussions. The SEC has informed Defendants that a bifurcated settlement is an option. A "bifurcated" settlement is a settlement in which a defendant: (1) consents to the entry of permanent injunctions without admitting or denying the allegations of the Complaint and (2) the parties then submit briefs to the Court regarding the amounts of disgorgement, prejudgment interest, and civil penalty the Defendant should be ordered to pay. The Court determines the amount the Defendant owes and enters a final judgment from which there is no appeal. In the briefing for a bifurcated settlement, the Defendant cannot deny any of the facts alleged in the Complaint.

***b. Defendants' Position***

Defendants are open to further settlement discussions, but state that such discussions are premature prior to Defendants' review of witness testimony obtained by SEC in its investigation. Defendants are similarly willing to explore whether mediation would be helpful.

.

**11. Type and Length of Trial**

The SEC has demanded a jury trial. The parties agree that such a trial will last approximately 15 days. The SEC states that a jury trial should commence on May 1, 2021 (16 months after the preliminary pretrial conference). Defendants state that a jury trial should commence on June 30, 2021 (18 months after the preliminary pretrial conference).

**12. Additional Issues Affecting the Just, Speedy, and Inexpensive Disposition of this Case.**

**a.** ***The SEC's Statement***

The SEC's position is that discovery should not be stayed pending resolution of the Defendants' motion to dismiss. A stay will unnecessarily delay resolution of this matter. A number of investors in this case have asked Defendants to redeem their investments because they need their money. Most of these requests have been denied. Consequently, a swift resolution of this matter is in the investors' best interest.

**b.** ***Defendants' Statement***

Defendants' position is that the Complaint fails to state a claim and contains numerous impertinent, irrelevant, and prejudicial allegations, as well as numerous allegations that do not meet the applicable pleading standards under Rules 8 and 9 of the Federal Rules of Civil Procedure. This matter cannot be resolved efficiently or speedily without first resolving and

eliminating such allegations in the pleadings. In addition, on January 2, 2020, for the first time, SEC disclosed the identity of two additional Defendants it seeks to add. It is unclear how or why SEC proposes to proceed to discovery or that such discovery is urgent when the identities of the parties to this action have not yet been identified.

Dated this 3rd day of January, 2020.

**HUSCH BLACKWELL LLP**
**Attorneys for Defendants**

By: /s/Patrick S. Coffey
Patrick S. Coffey
State Bar No. 1002573
Robert M. Romashko
State Bar No. 1106485
555 E. Wells Street, Suite 1900
Milwaukee, Wisconsin 53202-3819
(414) 273-2100
(414) 223-5000 (fax)
Robert.Romashko@huschblackwell.com
Patrick.Coffey@huschblackwell.com

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**

By: /s/Doressia L. Hutton
Doressia L. Hutton (HuttonD@sec.gov)
Christopher H. White (WhiteCh@sec.gov)
175 West Jackson Boulevard, Suite 1450
Chicago, IL 60604-2615
(312) 596-6050; (312) 353-7398 (fax)