**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

_____

|  |  |  |
|---|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No.  19-cv-809-wmc** |
| **BLUEPOINT INVESTMENT COUNSEL, LLC, MICHAEL G. HULL, CHRISTOPHER J.  NOHL, CHRYSALIS FINANCIAL LLC, and GREENPOINT ASSET MANAGEMENT II LLC,** | ) ) ) ) ) ) ) | |
| **Defendants.** | ) | |

**OPPOSITION TO DEFENDANTS' MOTION
FOR PROTECTIVE ORDER**

Plaintiff United States Securities and Exchange Commission ("SEC") respectfully submits this memorandum of law in opposition to Defendants' Motion for Protective Order ("Motion") (Dkt. No. 21) and accompanying Defendants' Memorandum in Support of Motion for Protective Order ("Memorandum") (Dkt. No. 22).  For the reasons set forth below, the Motion should be denied.

**I.     DEFENDANTS HAVE NOT SHOWN GOOD CAUSE TO HAVE DOCUMENTS AND DEPOSITIONS DESIGNATED CONFIDENTIAL AND FILED UNDER SEAL OR REDACTED BEFORE FILING**

On September 30, 2019, the SEC filed a lawsuit alleging the defendants defrauded at least 129 investors out of over $52 million.  Michael G. Hull ("Hull"), Christopher J. Nohl ("Nohl"), and their entities ("Defendants") have unlawfully enriched themselves at the expense of investors.  The SEC brought this civil law enforcement action in the public interest pursuant to the SEC's Congressional mandate.  Defendants are asking this Court to enter a protective order

that allows them to keep facts about their misconduct out of the public record.  Defendants'

Motion should be denied.

      **A.**      **Defendants' Proposed Protective Order**

      Defendants are asking this Court to hold that (i) every document that was produced

during the SEC's investigation; (ii) every document that will be produced in this litigation; (iii)

every deposition transcript; and (iv) every exhibit that will be used in every deposition may be

designated as confidential and the SEC must redact such documents or file them under seal when

it uses them to support any court filing.  Defendants' Proposed Protective Order defines

"Discovery Materials" as "[a]ny and all materials produced or received in the course of

discovery or the Securities and Exchange Commission's pre-complaint investigation, and

deposition transcripts and exhibits."  (Dkt. No. 21-1 at p. ii  ¶1)  Footnote 1 to Defendants'

Proposed Protective Order contains an expansive definition of what may be designated as

"Confidential":

> A party or non-party may designate Discovery Material as "Confidential" if it
> contains trade secrets or other confidential research, development, proprietary or
> commercial information; the financial and identifying information of individuals
> and entities, including those who are not parties to this action; or confidential
> personal information.

(Dkt. No. 21-1 at ¶2 fn.1)  Defendants' Proposed Protective Order then provides that if a party

seeks to file with the Court, in connection with a motion, pleading, or other filing, Discovery

Materials that have been designated "Confidential" that party "shall" redact it or seek to file it

under seal.  (Dkt. No. 21-1 at ¶2)  In other words, once Defendants designate a document as

"Confidential," the SEC has to redact it or seek to file it under seal.

      Defendants admit in a footnote that they will designate as "Confidential" **all** materials

they produced in the SEC's investigation:

SEC already has over **300,000 pages** of such evidence produced by Defendants in its pre-Complaint investigation.  Defendants designated **all such information confidential**.  **Defendants' proposed protective order would extend confidentiality protection to all such documents.**

(Dkt. No. 22 at p. 2 fn.2 (emphasis added))

From April 2014 to at least the filing of the Complaint, Defendants have defrauded at least 129 investors in 10 states out of over $52 million.  Defendants are asking this Court to authorize them to keep secret from these investors and the public relevant facts about Defendants' conduct with respect to these very investors.  Remarkably, Defendants' Proposed Protective Order does not even contain a process for the SEC, investors, or any other interested parties to challenge Defendants' designation of documents as "Confidential."  Consequently, the SEC must seek to file any document that is designated as "Confidential" under seal or redact it.  Likewise, there is no provision providing that the party asserting that the material is confidential bears the burden of proving that the information in question is within the scope of protection afforded by Federal Rule of Civil Procedure 26(c).  The bare statement that "[a]ny party may move the Court or seek consent from the producing party for relief from this Order" is insufficient to provide any protection from Defendants' broad assertions of confidentiality.  (Dkt. No. 21-1 at ¶11)

Additionally, Defendants' Proposed Protective Order allows Defendants to use or share the very documents they designate as "Confidential" in any manner they desire.  (Dkt. No. 21-1 at ¶5 stating "[n]othing in this Order prevents the parties from using their own information or documents").  In order words, Defendants can disclose documents or information and at the same time prevent the SEC from filing such documents and information on the public docket.

**B.      Entry Of A Protective Order Requires A Determination Of Good Cause**

Federal Rule of Civil Procedure 26(c) requires a determination of good cause:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following . . .
>
> (G)  requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way.

Defendants have not demonstrated that good cause exists.  Defendants have utterly failed to demonstrate that every one of the 300,000 pages they have produced consists entirely of confidential information and should therefore be redacted or filed under seal.  Defendants have not demonstrated that any documents contain trade secrets.  Defendants merely state bare conclusions such as "[t]he Greenpoint Funds, and Defendants as their managers, would obviously be harmed if they are unable to keep investors' and their own individual financial information confidential."  (Dkt. No. 22 at p. 2)  Defendants wanting to keep their financial information confidential is not good cause to enter a protective order and require filing under seal documents that they unilaterally deem confidential.  *See Baxter International, Inc. v. Abbott Labs,* 297 F.3d 544, 547 (7th Cir. 2002) (stating "many litigants would like to keep confidential the salary they make, the injuries they suffered, or the price they agreed to pay under a contract, but when these things are vital to claims made in litigation they must be revealed").

Defendants also state the bare conclusion that "allegations relating to investor suitability and related-party transactions will require the examination of matters such as investor suitability questionnaires and the related financial information of individuals (both parties and nonparties)."

(Dkt. No. 22 at p. 2)  Defendants fail to explain how allegations about related party transactions such as Greenpoint Tactical Income Fund borrowing money from Defendant Nohl and Nohl charging the Fund interest rates exceeding 200% APR require examination of "investor suitability questionnaires and the related financial information of individuals."  As to protecting investors' financial information, Federal Rule of Civil Procedure 5.2 requires redaction of certain information such as financial account numbers.  Investors could be further protected by simply redacting their names.  The SEC already redacts investors' names or refers to them by number. For example, in the Complaint, the SEC refers to Investor Number 1 and Investor Number 2 rather than using investors' names.  (Dkt. No. 1 at ¶ 105)  Protecting investors' financial information does not require the broad protective order sought by defendants.  Accordingly, Defendants' Motion should be denied.

## II.   THE SEVENTH CIRCUIT HAS HELD THAT BROAD PROTECTIVE ORDERS ARE INVALID

Defendants are asking this Court to enter a broad protective order that will give them carte blanche to designate documents as "Confidential" and require the SEC to seek to file under seal those documents and any information from them or redact them.  The Seventh Circuit has rejected such broad protective orders.  *See, e.g., Citizens First National Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943 (7th Cir. 1999).  The Seventh Circuit stated, "the district judge, in accordance with a stipulation by the parties, issued an order authorizing either party to designate as confidential, and thus keep out of the public record of the litigation, any document 'believed to contain trade secrets or other confidential or governmental information, including information held in a fiduciary capacity.'"  *Id*. at 944.  The Seventh Circuit held that the protective order was "far too broad:"

The order that the district judge issued in this case is not quite so broad as "seal whatever you want," but it is far too broad to demarcate a set of documents clearly entitled without further inquiry to confidential status. The order is not limited to trade secrets, or even to documents "believed to contain trade secrets," which anyway is too broad both because "believed" is a fudge and because a document that contains trade secrets may also contain material that is not a trade secret, in which case all that would be required to protect a party's interest in trade secrecy would be redaction of portions of the document. Also much too broad is "other confidential ... information," not further specified, and all "governmental information," a category absurdly overbroad. The order is so loose that it amounts, as we suggested at the outset, to giving each party carte blanche to decide what portions of the record shall be kept secret. Such an order is invalid.

*Id*. at 945.

A Court must make a determination of "good cause." *Id*. at 944. The Seventh Circuit held that

Instead of doing that [the district court judge] granted a virtual carte blanche to either party to seal whatever portions of the record the party wanted to seal. This delegation was improper. The parties to a lawsuit are not the only people who have a legitimate interest in the record compiled in a legal proceeding.

*Id*. "[T]he public at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding." *Id*. at 945.

Defendants' Proposed Protective Order contains a definition of "Confidential" that is considerably broader than "trade secret or other confidential research, development, or commercial information," which is in Federal Rule of Civil Procedure 26(c)(1)(G). Defendants' definition of "Confidential" is also broader than the definition ruled too broad in *Citizens First National Bank of Princeton*. 178 F.3d at 944. The Seventh Circuit has "insisted that only genuine trade secrets, or information within the scope of a requirement such as Fed.R.Crim.P. 6(e)(2) ("matters occurring before the grand jury"), may be held in long-term confidence." *Union Oil Co. of Cal. v. Leavell,* 220 F.3d 562, 568 (7th Cir. 2000). "[M]ost portions of discovery that are filed and form the basis of judicial action must eventually be released." *Id*.

"Judges deliberate in private but issue public decisions after public arguments based on public records." *Id*.

Defendants assert "there is no presumption that the public should be allowed access to discovery materials." (Dkt. No. 22 at p. 3)  Defendants ignore that they have admitted that they are designating all documents they produced in the SEC's investigation as "Confidential."  As a result of Defendant's confidential designation, if the SEC uses the documents in connection with any filing, the SEC "shall" seek to file such documents under seal or redact them.  (Dkt. No. 21-1 at ¶2)  Hence, Defendants' Proposed Protective Order keeps the designated documents out of the public record even when they are filed with the Court.  "Documents that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality." *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010).  "Seventh Circuit case law made clear that the simple fact that a document had been designated confidential pursuant to a protective order was not sufficient ground to constitute cause for sealing." *Healthwerks, Inc. v. Howmedica Osteonics Corp.*, 14-cv-93-PP, 2016 WL 398300, at *1 (E.D. Wis. Feb. 1, 2016); *see also Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994) (stating "[a]s a general proposition, pretrial discovery must take place in the [sic] public unless compelling reasons exist for denying the public access to the proceedings" and holding good cause did not exist for a protective order).

## III. DEFENDANTS' PROPOSED PROTECTIVE ORDER WOULD KEEP RELEVANT, NON-CONFIDENTIAL INFORMATION OUT OF THE PUBLIC RECORD AND FROM THE INVESTORS

Defendants have admitted that they will designate as "Confidential" all of the documents they have produced to the SEC.  (Dkt. No. 22 at p. 2 fn.2)  This will require the SEC to file all such documents under seal or redact them and redact its motions, oppositions, and other filings

7

with the Court.  Defendants have claimed without merit that "[i]nformation about appraisals and business transactions of the Greenpoint Funds, if it became public, ***could*** impact the Greenpoint Fund's ability to sell their assets and continue to operate."  (Dkt. No. 22 at p. 2 (emphasis added))  Defendants have not demonstrated how all of their "business transactions" and "appraisals" are "trade secret[s] or other confidential research, development, or commercial information" that should be kept out of the public record.  Furthermore, Seventh Circuit case law is clear that asserting that disclosure "could harm [company's] competitive position" is not sufficient to justify sealing documents.  *Baxter International,* 297 F.3d at 547.  Also, "customer lists or names do not constitute trade secrets."  *Healthwerks, Inc.,* 2016 WL 398300, at *5.

One such transaction that Defendants want to keep secret is illustrated by Exhibit 3 to Defendants' memorandum in support of their motion to dismiss.  (Dkt. No. 17-3)  As discussed in Section IV, *infra,* Defendants have waived any claims of confidentiality by filing this document on the public docket.  In addition, there is nothing about this 2015 transaction that requires the contract to be filed under seal.  The SEC's Complaint makes specific allegations about the transaction including:

> The three most expensive specimens were purchased from a dealer ("Dealer Number 1") for a combined price of $6.8 million.  The written contract with Dealer Number 1 dated February 18, 2015 required the following installments to be paid:
> - $1,000,000 due now [February 18, 2015]
> - $1,450,000 due April 15, 2015
> - $1,450,000 due June 15, 2015
> - $1,450,000 due August 15, 2015
> - $1,450,000 due October 15, 2015.
>
> Greenpoint Tactical Income Fund through GP Rare Earth failed to make the required payments to Dealer Number 1.  After the Fund through GP Rare Earth made partial payments, Dealer Number 1 delivered two of the three specimens to the Fund.  After the Fund through GP Rare Earth still had not fully paid Dealer Number 1, Dealer Number 1 threatened to sue.  The Fund then paid most of what it owed Dealer Number 1 plus a $500,000 late fee between December 2018 and

February 2019.  The Fund did not take possession of the third piece, which is an emerald named the "Emperor," until February 2019 after it paid most of what it owed.  The Fund still owes $100,000 to Dealer Number 1.

Nohl created a false contract with Dealer Number 1.  The false contract is the same as the actual contract with Dealer Number 1, but has handwritten on it "time is not of the essence and all payments are best efforts."  The false contract also has a signature on it.  Dealer Number 1 did not sign the false contract.

Nohl recorded large, unrealized gains on the three specimens even though the Fund through GP Rare Earth did not make the payments according to schedule; still has not completely paid for them; did not have possession of two of the pieces until months after the contract date; and did not have possession of the third specimen until February 2019.

(Complaint, Dkt. No. 1 at ¶¶ No. 61-64)  The contract is an important document, but Defendants want to designate it as confidential and require the SEC to seek to file it under seal and redact any court filings that would use information from the contract.  Defendants have not shown good cause to keep this 2015 contract from the investors and otherwise out of the public record.  "Documents that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality."  *In re Specht*, 622 F.3d at 701.

Furthermore, Defendants have not demonstrated how past appraisals from 2015, 2016, and 2017 are "trade secret[s] or other confidential research, development, or commercial information" that should be kept from the investors and out of the public record all together.  Importantly, these appraisals are part of the SEC's claims against Defendants because the SEC has alleged that Defendant Nohl interfered in the appraisal process.  The SEC has alleged:

Moreover, Hull, Nohl, and their entities represented to the Fund's investors and auditor that the gem and mineral valuations were determined in an objective manner; that the appraisers were independent; and that the gems and minerals were valued at the purchase price during the year they were acquired.  To the contrary, Nohl repeatedly interfered in the appraisals of the gems and minerals owned by the Fund in order to obtain and report higher values and thereby obtain higher management fees.  Nohl's interference includes purchasing minerals from

9

an appraiser contemporaneously with the appraiser appraising the Fund's gems and minerals; leaning on appraisers to assign higher appraised values; rejecting appraisals he deemed too low and instead using older, higher appraised values; and cherry-picking higher appraised values. Also, Hull and Nohl acted in violation of the Fund's operating agreement by not using the purchase prices as the value of the gems and minerals during the year the Fund acquired them.

(Complaint, Dkt. No. 1 at ¶11)  As to specific appraisals, for example, the SEC alleged

On two different occasions, Nohl rejected appraisals of a set of tourmaline gemstones. The Fund purchased the set of tourmaline gemstones in October 2013 for $1.2 million.

In March 2015, a gemologist ("Appraiser Number 3") appraised the set of tourmaline gemstones for approximately $3 million, which was $1.8 million more than the Fund paid for the tourmalines.

Nohl told Appraiser Number 3 that the appraisals were unreasonably low. Appraiser Number 3's boss told her to keep the customer happy. Appraiser Number 3 then increased the appraised value of the set of tourmaline gemstones to $6,340,730. Based on the revised appraisals, Hull and Nohl had the Fund record approximately $5.1 million ($6.3 million minus $1.2 million) in unrealized gains.

Hull, Nohl, Chrysalis, and Greenpoint Management II did not disclose to the Fund's investors or auditor that Appraiser Number 3 appraised the set of tourmaline gemstones for approximately $3 million and changed the appraised value to $6,340,730 after Nohl complained that the $3 million was too low.

(Complaint, Dkt. No. 1 at ¶¶ 205-208)  The SEC further alleged

In August 2017, another gemologist ("Appraiser Number 4") appraised the same set of tourmaline gemstones discussed above for $1,546,251. In March 2015, Appraiser Number 3 had appraised the same set of tourmaline gemstones for $6,340,730 after Nohl influenced the appraisals. In June 2016, Appraiser Number 2 had appraised the same set of tourmaline gemstones for $8,156,100. This set of appraisals was performed at the same time Appraiser Number 2 received the $125,000 from Nohl.

Hull and Nohl had the Fund record unrealized gains based on the $8,156,100 appraised value assigned by Appraiser Number 2 in 2016.

Nohl rejected the $1,546,251 appraised value from Appraiser Number 4 in 2017. Hull and Nohl continued to use the $8,156,100 appraised value from 2016.

Hull, Nohl, Chrysalis, and Greenpoint Management II charged higher

management fees based on the $8,156,100 appraised value rather than the $1,546,251 appraised value.

Hull, Nohl, Chrysalis, and Greenpoint Management II did not disclose to the Fund's investors that Nohl rejected the $1,546,251 appraised value and continued to use the $8,156,100 appraised value for the set of tourmaline gemstones.

Hull, Nohl, Chrysalis, and Greenpoint Management II obtained money by means of falsely representing the appraised value of the set of tourmaline gemstones. Hull, Nohl, Chrysalis, and Greenpoint Management obtained increased management fees by using the old appraised value of $8,156,100.

(Complaint, Dkt. No. 1 at ¶¶ 211-215)

The appraisals themselves are key documents, but Defendants have admitted they will designate them as "Confidential" and require the SEC to file them under seal and have to redact any court filings that use information from the appraisals.  Defendants have not shown good cause to keep these appraisals from 2015, 2016, and 2017 from the investors and otherwise out of the public record.

Defendants suggest that their proposed protective order has to be entered because there is a different protective order in the bankruptcy proceeding.  (Dkt. No. 22 at p. 3)  That is incorrect. This Court has to find that there is good cause to enter the overly broad protective order sought by Defendants.  The protective order in the bankruptcy proceeding that is referred to by Defendants does not contain the good cause determination required by Federal Rule of Civil Procedure 26(c).  Furthermore, this case involves issues and considerations that are different from the bankruptcy proceeding.

## IV.    DEFENDANTS HAVE WAIVED CONFIDENTIALLY

Defendants have waived confidentially as to many categories of documents.[1]  Critically, Defendants have publicly disclosed the very information they claim is confidential.  Defendants

---

[1] The SEC does not concede that any of these documents were confidential before Defendants filed them on the public docket.

disclose in public court filings information about appraisals, business transactions, and financial information when they believe it benefits them. But then Defendants make baseless assertions of confidentiality to keep non-confidential information that they view as unfavorable out of the public record. Below are some categories of documents for which Defendants have waived confidentiality.

### A.  Financial Statements

Defendants filed as exhibit G to their memorandum in support of their motion to dismiss a document entitled Greenpoint Tactical Income Fund Financial Statements as of and for the year ended December 31, 2016. (Dkt. No. 17-7) By filing this on the public docket, Defendants have waived any claims of confidentiality as to their financial statements and information relating to their finances.

### B.  Offering Documents For Greenpoint Tactical Income Fund

Defendants filed as exhibit A to their memorandum in support of their motion to dismiss a document entitled Income Strategy Q4 2015 Greenpoint Tactical Income Fund. (Dkt. No. 17-1) As exhibit B, they filed a document entitled Confidential Investment Letter Greenpoint Tactical Income Fund $190,750,000 Maximum Offering – 7,630 Class A Units. (Dkt. No. 17-2) As exhibit E, they filed a document entitled Confidential Investment Letter Greenpoint Tactical Income Fund Maximum Offering of up to: $190,750,000 Number of Units: up to 7,630 Class A Units. (Dkt. No. 17-5) As exhibit F, they filed a document entitled Confidential Letter to Investors Quarter 3 2016. (Dkt. No. 17-6) By filing these offering materials and letters to investors on the public docket, Defendants have waived any claims of confidentiality as to the offering documents, letters to investors, and related information for Greenpoint Tactical Income Fund.

### C.      Documents Concerning The Valuation Of Amiran

Defendants filed as exhibits H through R to their memorandum in support of their motion to dismiss documents entitled Quarterly Evaluation for Amiran Technologies, LLC ("Amiran") for the Fourth Quarter of 2015 through the Second Quarter of 2018.  (Dkt. Nos. 17-8 through 17-18)  By filing these documents on the public docket, Defendants have waived any claims of confidentiality as to documents concerning their valuations of Amiran and related information.

### D.      Agreements Regarding Purchases Of Amiran's Securities

Defendants filed as exhibits S and T to their memorandum in support of their motion to dismiss documents entitled Option to Purchase Units – Issuance 1 and Exchange Agreement. (Dkt. Nos. 17-19 through 17-20)  By filing these agreements on the public docket, Defendants have waived any claims of confidentiality as to agreements regarding purchases of Amiran's securities and related information.

### E.      Application For A Search Warrant

Defendants filed as exhibit D to their memorandum in support of their motion to dismiss a document entitled Application For A Search Warrant and Affidavit.  (Dkt. No. 17-4)  By filing this on the public docket, Defendants have waived any claims of confidentiality as to the facts in the Application For A Search Warrant and Affidavit.

### F.      Information About A Settlement With An Investor

Greenpoint Tactical Income Fund, through Hull and Nohl, disclosed in public court filings information about Greenpoint Tactical Income Fund's settlement with an investor.  For example, a Complaint filed on September 27, 2019 by Greenpoint Tactical Income Fund ("Appraiser Complaint") states:

> A dispute arose between [Investor] and Greenpoint which was resolved in
> mediation on April 13, 2019 (the "mediation") in which a settlement agreement

> was entered into whereby Greenpoint agreed to turn over the ownership of $15
> million of the Greenpoint's gems and minerals.  Pursuant to the settlement
> agreement, an independent appraiser was to be retained to appraise the value of
> Greenpoint's gems and minerals.  [Investor] would be entitled to $15 million
> worth of the selected precious gems and minerals.

(Appraiser Complaint attached as Exhibit 1 at ⁋5 ) By filing this Complaint on the public docket,

Defendants have waived any claims of confidentiality as to the settlement with the investor and

related information.

Defendants' overreach with respect to designating material as confidential is further

demonstrated by their handling of the referenced settlement agreement.  They disclosed

information about the settlement agreement when they wanted to use it to file a lawsuit, but they

sought to file the settlement agreement under seal when they moved to reject the settlement

agreement in the bankruptcy proceeding.  The bankruptcy court recently denied the motion to

file the settlement agreement under seal.  (Order Denying Motion for Authority to File

Settlement Agreement Under Seal attached as Exhibit 2)

### G.    Information About Appraisals

Defendants claim information regarding appraisals of the gems and minerals and general

business transaction are confidential and should be filed under seal.  However, they have

publicly disclosed the very information they claim is confidential.  In the Appraiser Complaint,

Greenpoint Tactical Income Fund alleged:

> Three years ago, Greenpoint had a subset of its gems and minerals holdings
> appraised at $45 million.  That subset is the collection of gems and minerals that
> [Investor] subsequently selected as the items to be valued for his settlement.
>
> On September 10, 2019, Defendant appraised [Investor's] list of Greenpoint's
> precious gems and minerals at a value of $15,539,000 far below the $45 million
> valuation given only three years earlier.

(Exhibit 1 ⁋⁋6, 10)

Greenpoint Tactical Income Fund, through Hull and Nohl, has already publicly disclosed that the gems and minerals have been appraised for **one-third** of what they were appraised for three years ago.  Defendants have waived or breached any confidentiality as to appraisals and related information.  Furthermore, any purported harm that they claim will be done by releasing appraised values would have already been done by them putting this information into multiple public filings.

H.     **Information About Gem And Mineral Transactions**

In support of their Motion, Defendants cite and attach to their Memorandum a declaration that Defendant Hull ("Hull Declaration") submitted in the bankruptcy proceeding for Greenpoint Tactical Income Fund.  (Dkt. No. 22-1)  The Hull Declaration was filed in support of a motion to sell gems and minerals, which was subsequently withdrawn in the bankruptcy proceeding.  The Hull Declaration makes numerous assertions about gem and mineral transactions.  By filing this on the public docket, Defendants have waived any claims of confidentiality as to information about gem and mineral transactions.

Moreover, the Hull Declaration demonstrates how Defendants disclose information about transactions when they think it benefits them, but then block the SEC from demonstrating on the public record that their claims about their transactions are false.  The Hull Declaration, which was publicly filed, falsely claims:

> We have had good success selling gemstones in the past.  As of the date these cases were commenced on October 4, 2019, we have sold a total of $7,999,045.37 of gems and minerals reflecting a return over acquisition costs of 613%, and a return over appraised value of 222%.

(Dkt. 22-1 at ¶5)  The SEC had to heavily redact its opposition, which details that they have not sold $7,999,045.37 of gems and minerals, because Greenpoint Tactical Income Fund, through Hull and Nohl, asserted their past sales had to be filed under seal.  (Redacted Filing attached as

Exhibit 3)  There is no legitimate basis to keep this information from the investors and off of the public docket.

The Hull Declaration also falsely claims that they made "a $2.5 Million sale on December 31, 2015."  (Dkt. No.  22-1 at ⁋5)  A document attached to Defendants' memorandum in support of their motion to dismiss shows that this purported $2.5 million sale was actually a trade of a mineral for Amiran stock.  (Dkt. No. 17-20)  The document is entitled "Exchange Agreement."  (Dkt. No. 17-20)  With respect to this transaction, the SEC's complaint alleges "[o]n December 31, 2015, the Fund gave the founder of Private Company 1 a mineral in exchange for 932 shares of Private Company 1.  The Fund did not have the cash to pay for the shares."  (Dkt. No. 1 at ⁋ 259)

Defendants are using spurious claims of confidentiality to keep facts they view as unfavorable from the investors and the rest of the public.  This is not a proper use of protective orders.  At least 129 investors in 10 states invested over $52 million in Greenpoint Tactical Income.  These investors and the rest of the public should be able to view the docket in this case and see what has been filed, not entries that say "filed under seal."

## V.    THE CASES CITED BY DEFENDANTS ARE INAPPOSITE

The cases relied on by Defendants do not support this Court entering their proposed protective order.  *Bond v. Utreras*, 585 F.3d 1061, 1065 (7th Cir. 2009) held that an independent journalist's petition to intervene in an action so he could challenge a protective order should have been denied because he did not have standing to challenge the protective order.   There, the documents the journalist sought were exchanged in discovery but never filed with the Court.  *Id*. at 1066.  Here, by contrast, Defendants are asking this Court to hold they can designate **all** documents they have produced in the SEC's investigation as confidential and that the SEC has to

seek to file these documents under seal or redact them when used to support a "motion, pleading, or other filing."  (Dkt. No. 21-1 at ⁋2)  The Court in *Bond* rejected the mass filing of documents under seal when it stated "[i]t is beyond dispute that most documents filed in court are presumptively open to the public." *Bond,* 585 F.3d at 1073.  "[T]he public has a presumptive right to access discovery materials that are filed with the court, used in a judicial proceeding, or otherwise constitute judicial records." *Id*. (internal quotations omitted).

Defendants' reliance on *Shultz v. Dart*, No. 13 C 3641, 2015 WL 4934552, (N.D. Ill. Aug. 18, 2015) is similarly misplaced.  There, the Sherriff of Cook County Illinois sought an order barring dissemination of the transcript and video of his deposition. *Id. at* *1.  The Sheriff argued

> that public dissemination of the video or transcript will disclose sensitive information about Cook County Jail security protocols and is likely to subject him to spending time responding to inquiries from the public and media. He is also concerned that snippets of the transcript or video will be taken out of context and used in the media or on the internet. He further objects to Shultz's counsel using the deposition transcript in the "many other cases" he has against Dart and Cook County.

*Id.* at *2.  That Court noted "[t]here is genuine concern about the potential for abuse of a deposition transcript and particularly a video of a deposition of a high-ranking elected official like the Sherriff of Cook County." *Id*. at *3.  In granting the protective order the Court stated, "[i]f the transcript is later used in connection with a motion or in a hearing, whether it can be filed under seal involves a different standard." *Id*. at *3.  "Documents filed in the court record and used as part of the judicial decision-making process are presumed to be public." *Id*. at *3.  Defendants have not shown the good cause that the Sherriff of Cook County showed.  Furthermore, the Court rejected the notion that the

deposition would automatically have to be filed under seal if it is used in connection with a motion or hearing.  *Id*.

The third and final case relied on by Defendants also does not support entry of their proposed, overly broad protective order.  *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992) was a copyright infringement case.  It involved trade secrets including the source code, developmental plans, and the identities of beta testers. *Id.* at 1470.  The defendant moved for a protective order restricting access of the plaintiff's in-house counsel, but not outside counsel, to certain documents.  *Id*. at 1469. The case turned on whether trade secrets should be disclosed to an employee of the plaintiff where the employment entailed "advising his employer in areas relating to the [defendants'] trade secrets."  *Id*. at 1471.   Defendants have failed to demonstrate that the facts of this case are in any way similar to *Brown Bag Software.*  Obviously, this is not a copyright infringement case involving trade secrets such as source code, developmental plans, and beta testers.

## VI.   IF THE COURT MAKES A DETERMINATION OF GOOD CAUSE, THE SEC HAS PROPOSED AN ALTERNATIVE PROTECTIVE ORDER

As stated in the Rule 26(f) Report, the SEC does not believe that a protective order is necessary in this case.  (Dkt. No. 20)  If the Court makes a determination of good cause for entering a protective order, it should limit the definition of confidential information to

> trade secrets or other confidential research, development, or commercial information
>
> and
>
> financial information of non-parties.

This definition protects trade secrets and investors' financial information.

Any protective order should also provide that:

Notwithstanding any other provision of this Protective Order, the Securities and Exchange Commission shall not be limited in its ability to share, disclose, or produce any information received in connection with this action with any other federal or state authority, agency, or department, or to the extent otherwise required by law or permitted pursuant to the terms of SEC Form 1662.

The Court should not limit the SEC's use of information produced in discovery or its investigation. Among other things, the SEC acts in the public interest and is tasked by Congress with investigating whether any person has violated or is about to violate the federal securities laws or any rules, regulations, or orders thereunder and prosecute persons who have engaged or are about to engage in such violations. *See* Sections 20(a) and (b) of the Securities Act of 1933 [15 U.S.C. §§ 77t(a), (b)]; Sections 21(a)(1) and (d)(1) of the Securities Exchange Act of 1934 [15 U.S.C. §§ 78u(a)(1) and (d)(1)]. Should the documents produced reveal violations of the securities laws, the SEC should not be precluded from using such information in investigations or litigation.

In addition, the federal securities laws specifically authorize the SEC to share information with federal and state civil and criminal authorities. *See* Section 20(b) of the Securities Act of 1933 [15 U.S.C. § 77t(b)]; Sections 21(d)(1) and 24(c) of the Securities Exchange Act of 1934 [15 U.S.C. §§ 78u(d)(1), 78x(c)]; and Rule 24c-1(b) thereunder [17 C.F.R. 240.24c-1(b)]. To prevent the sharing of information with other civil and criminal authorities contravenes this statutory mandate and impedes the legitimate goals of protecting the investing public and prosecuting wrongdoers.

The SEC routinely uses documents and information produced to it during investigations and litigation to fulfill its obligations as a governmental agency and to the investing public. A list of these routine uses is included in the SEC's Form 1662. (Exhibit 4) The SEC should be permitted to utilize the information produced in accordance with these routine uses. A protective

order which limits these uses may interfere with the SEC's ability to fulfill its governmental and investor protection functions.

Moreover, any protective order must make explicit that any party and any interested member of the public can challenge any confidentiality designation and the sealing of documents. *Citizens First Nat. Bank of Princeton*, 178 F.3d at 946.

The protective order attached to the Rule 26(f) Report and attached to this opposition as Exhibit 5 meets all of these requirements. Accordingly, if the Court determines that good cause exists for entry of a protective order, it should enter the one attached as Exhibit 5.

## VII.  CONCLUSION

For all of the stated reasons, Defendants' Motion for Protective Order should be denied.

Dated: January 21, 2020

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION

By: /s/Doressia L. Hutton
Doressia L. Hutton (HuttonD@sec.gov)
Christopher H. White (WhiteCh@sec.gov)
175 West Jackson Boulevard, Suite 1450
Chicago, IL 60604-2615
(312) 353-7390
(312) 353-7398 (fax)

*Attorneys for Plaintiff the United States*
*Securities and Exchange Commission*

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2020, I served the foregoing **OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER** on all counsel of record through the Court's ECF filing system.

By: ***/s/Doressia L. Hutton***

## EXHIBIT LIST

**Exhibit 1** – Complaint filed by Greenpoint Tactical Income Fund on September 27, 2019

**Exhibit 2 -** Order Denying Motion for Authority to File Settlement Agreement Under Seal

**Exhibit 3 –** Heavily redacted Objection of the U.S. Securities and Exchange Commission

**Exhibit 4** – Securities and Exchange Commission Form 1662

**Exhibit 5** – Protective Order proposed by the SEC if a good cause determination is made