UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

       Plaintiff,

  v.

                                    Case No. 19-cv-809

BLUEPOINT INVESTMENT COUNSEL,
LLC, et al.,

       Defendants.

## DEFENDANTS' REPLY TO BRIEF IN OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

Patrick S. Coffey (State Bar No. 1002573)
Robert M. Romashko (State Bar No. 1106485)
HUSCH BLACKWELL, LLP
555 E. Wells Street, Suite 1900
Milwaukee, Wisconsin 53202-3819
(414) 273-2100
(414) 223-5000 (fax)
Robert.Romashko@huschblackwell.com
Patrick.Coffey@huschblackwell.com

*Counsel for Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.   INTRODUCTION ................................................................................................... 1

II.  THE DOCUMENTS FILED WITH THE MOTION TO DISMISS ARE
     CENTRAL TO OR REFERENCED IN THE FAC AND MAY PROPERLY BE
     CONSIDERED .......................................................................................................... 2

III. DEFENDANTS HAVE DEMONSTRATED THE FAC FAILS TO STATE
     CLAIMS UPON WHICH RELIEF CAN BE GRANTED, AND SEC'S
     ARGUMENTS TO THE CONTRARY ARE UNAVAILING ............................... 4

     A.   SEC Incorrectly States that the Court Should Not Consider Plausible
          Innocuous Alternative Explanations ............................................................ 5

     B.   The Motion to Dismiss Does Not Ask the Court to Resolve Factual
          Disputes ...................................................................................................... 7

     C.   SEC's Own Attempts to Show it Stated Claims Demonstrate its FAC Falls
          Short of the Short and Plain Statement Rule of Rule 8(a) ........................ 8

     D.   SEC has not Adequately Supported Allegations of Misrepresentation
          Made in the FAC by Pleading Facts Showing Representations were False ........ 10

     E.   SEC has Failed to Plead its Claims with the Specificity Required for Fraud
          Claims by Rule 9(b) .................................................................................... 12

          (i)   SEC's Claims Cannot Survive SEC's Failure to Plead Asset
                Valuations ......................................................................................... 13

          (ii)  SEC Fails to Meet the Fraud Pleading Standard as to Verbal
                Representations by Michael Hull ..................................................... 13

IV.  SEC HAS NOT ALLEGED SUFFICIENT FACTS TO DEMONSTRATE THAT
     ALLEGED RELATED PARTY TRANSACTIONS COULD BE MATERIAL ............. 14

V.   CONCLUSION ...................................................................................................... 17

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*16630 Southfield Ltd. Partnership v. Flagstar Bank, F.S.B.*,
    727 F.3d 502 (6th Cir. 2013) ................................................................ 7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................... 6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................... 7

*Brownmark Films, LLC v. Comedy Partners*,
    682 F.3d 687 (7th Cir. 2012) ................................................................ 3

*Eclectic Properties Eastern, LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ........................................................... 5, 6

*Greebel v. FTP Software, Inc.*,
    194 F.3d 185 (1st Cir. 1999)................................................................ 13

*Greenhouse v. MCG Capital Corp.*,
    392 F.3d 650 (4th Cir. 2004) ................................................................ 3

*In re Allied Capital Corp. Securities Litigation*,
    Fed Sec. L. Rep. P. 92,411, 2003 WL 1964184 (S.D.N.Y. 2003)........................... 13

*In re Century Aluminum Co. Securities Litigation*,
    729 F.3d 1104 (9th Cir. 2013) ............................................................. 6

*In re Minton*,
    No. 14-91293, 2017 WL 354319 (Bankr. C.D. Ill. Jan. 24, 2017) ........................... 8

*Jennings v. Emry*,
    910 F.2d 1434 (7th Cir. 1990) ............................................................. 9

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*,
    631 F.3d 436 (7th Cir. 2011) ............................................................. 13

*S.E.C. v. Buntrock*,
    No. 02 C 2180, 2004 WL 1169423 (N.D. Ill. May 25, 2004) ............................... 15

*S.E.C. v. Conrad*,
    354 F.Supp. 3d 1330 (N.D. Ga. 2019)..................................................... 16

*S.E.C. v. Gane*,
   No. 03-61553-CIV-SEITZ, 2005 WL 90154 (S.D. Fla. Jan. 4, 2005) ................................... 11

*S.E.C. v. Revolutions Med. Corp.*,
   No. 1:12-CV-3298-LMM, 2015 WL 11199068 (N.D. Ga. Apr. 3, 2015) ............................ 11

*S.E.C. v. Reynolds*,
   No. CIV.A.3-08-CV-0384-B, 2008 WL 3850550 (N.D. Tex. Aug. 19, 2008) ................ 10, 11

*S.E.C. v. Trabulse*,
   526 F.Supp. 2d 1001 (N.D. Cal. 2007) ................................................................. 14

*S.E.C. v. Ustian*,
   229 F. Supp. 3d 739 (N.D. Ill. 2017) ................................................................. 11

*Starr v. Baca*,
   121 (9th Cir. 2011) ................................................................................................. 6

*Tierney v. Vahle*,
   304 F.3d 734 (7th Cir. 2002) .................................................................................. 3

*United States ex rel. Garst v. Lockheed Martin Corp.*,
   No. 98 C 5072, 2002 WL 1794004 (N.D. Ill. Aug. 2, 2002),
   *aff'd*, 328 F.3d 374 (7th Cir. 2003) ..................................................................... 8

*United States v. Dunkel*,
   927 F.2d 955 (7th Cir. 1991) ................................................................................. 9

*Venture Associates Corp. v. Zenith Data Sys. Corp.*,
   987 F.2d 429 (7th Cir. 1993) ................................................................................. 2

## Rules and Regulations

Fed. R. Civ. P. 12 ......................................................................................................... 3

Fed. R. Civ. P. 8 ........................................................................................................... 8

Fed. R. Civ. P. 9 ........................................................................................................... 12

In reply to SEC's Brief in Opposition to Defendants' Motion to Dismiss First Amended Complaint ("Opposition"), Defendants Bluepoint Investment Counsel LLC ("Bluepoint"), Chrysalis Financial LLC, Greenpoint Asset Management II LLC, Michael Hull ("Hull") Christopher Nohl ("Nohl"), Greenpoint Tactical Income Fund ("GTIF") and GP Rare Earth Trading Account, LLC ("GPRE") state as follows:

## I.   INTRODUCTION

The assertion (*see* Opposition, p. 1.) that Defendants Nohl*,* Hull, or their companies defrauded more than 120 investors out of $52 million is unsupported and untrue. If it was true, this would not be a civil case. In spite of the assertion in the Opposition that investors have been defrauded out of funds, SEC has failed to allege facts tending to show losses by investors.

SEC's "shotgun" or kitchen-sink pleadings allege numerous supposed bad acts with varying degrees of relation to any purported violation of the securities laws. These allegations are not well-pleaded and are based on improperly and misleadingly quoted documents. Confronted once already with its own misconduct in the first Motion to Dismiss, SEC has simply repeated the same misleading and selective quotations and representations in its First Amended Complaint ("FAC"), opting not to resolve any of the problems with the Complaint and preserving every single one of its defects.

The SEC's conduct can only be explained by an improper motive. SEC, knowing that it cannot state valid claims, has instead simply resorted to unsupported allegations of every supposed bad act imaginable in an effort to injure and negatively impact Defendants' business. SEC's conduct in this case – from twice filing Complaints full of misleading allegations to opposing the institution of a discovery protective order and claiming an absolute right to inform the public of Defendants' unproven "misconduct" – is all in furtherance of this improper aim.

The Court has over a hundred pages of briefing relative to the Motion to Dismiss the FAC. Defendants will not rehash every point demonstrating SEC's failures to state a claim in its FAC; those points have been well established and SEC's attempts to refute those points miss the mark. Defendants address herein only those matters in SEC's Opposition that require additional argument or response not previously addressed. Points raised by SEC, but not addressed herein, are not conceded.

## II. THE DOCUMENTS FILED WITH THE MOTION TO DISMISS ARE CENTRAL TO OR REFERENCED IN THE FAC AND MAY PROPERLY BE CONSIDERED

The FAC has numerous defects, but most alarming is that it misleadingly cites numerous statements made by Defendants. These matters are not accidental – these misleading citations were identified in Defendants' first Motion to Dismiss, and SEC nonetheless left them all unchanged in its FAC. For example, paragraph 75 of the FAC quotes, in part, GTIF's Second Confidential Investment Letter by saying funds will be used for investment in three asset classes, and then alleges that as of June 30, 2018, investments were not in these areas. However, as demonstrated by Defendants in their Memorandum of Law in Support of Motion to Dismiss ("Memorandum"), the very next sentence in the Second Confidential Investment Letter, after the one quoted by SEC, states that the managers would remain open to any other investment opportunities that arose; investors could not have expected investments to be limited to enumerated categories. Memorandum, p. 23. SEC's FAC omits this sentence. Similarly, the FAC alleges, at paragraphs 386-88, that the alleged fact that Amiran Technologies, LLC ("Amiran") was in default on a loan was improperly omitted from a June 30, 2017 valuation report, even though the face of the report discloses that the same loan was past due. Memorandum, p. 59.

As stated in the Memorandum, a defendant may attach documents to its Motion to Dismiss if they are "referred to in the complaint and central to the claim." *Venture Assocs. Corp.*

*v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir. 1993). The purpose of the doctrine is to prevent a plaintiff from "evad[ing] dismissal under "Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] his claim has no merit." *Tierney v. Vahle,* 304 F.3d 734, 738 (7th Cir. 2002). Documents incorporated by reference may be considered without converting the 12(b)(6) motion to a motion for summary judgment. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment"). The doctrine is designed to prevent a party from doing exactly what SEC has done – selectively or misleadingly referencing matters that are trivially disproven by the documents in question. *See Tierney*, 304 F.3d at 738 (document attached to dismissal motion may prove that claims have no merit). A party cannot simply ignore the contents of documents central to its claims to survive a motion to dismiss and obtain discovery. Yet this is exactly what SEC has attempted – twice.

Here, Defendants filed these documents as exhibits to the Declaration of Christopher Nohl ("Nohl Dec.), which was filed with the Memorandum. Of 20 documents so filed, 18 are either directly quoted or referenced in the FAC. The doctrine does not just extend to documents directly quoted or referenced in a complaint, but also to materials on which a plaintiff's allegations "necessarily rely." *Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 656 (4th Cir. 2004). Defendants attached two such documents. The first is a search warrant affidavit showing that the government was fully aware that GTIF in fact built a vault the FAC implies was not constructed. *See* Memorandum, p. 28, and Nohl Dec. Exhibit D. The second is a Confidential Letter to Investors, Quarter 3, 2016, showing that use of a related party for accounting services

was disclosed to investors, in spite of SEC's allegations that it was not disclosed. *See* Memorandum, p. 34, at Nohl Dec. Exhibit F.

It is not the case that the inclusion of these documents creates factual issues for the Court to resolve. Rather, SEC asserts that certain statements were made or not made, and uses misleading quotations to make those claims (s*ee, e.g.,* FAC ¶ 75; *see also* Memorandum p. 21 and Nohl Dec. Exhibit B); or SEC asserts that matters were omitted from materials provided to investors when they were, in fact, disclosed (*see* FAC, ¶¶ 387-88; *see also* Memorandum p. 59 and Exhibit P); or SEC asserts that events (the construction of a vault and clearing house) did not take place while other federal agencies made public court filings, on SEC's referral, contradicting those claims (*see* FAC, ¶ 83; *see also* Memorandum p. 28 and Exhibit D)*.* The documents show that SEC's allegations are based on intentionally selective and misleading quotations and readings of documents, or omissions of key facts SEC is fully aware of, and that the FAC should be dismissed in its entirety.

SEC does not argue that it in fact cited documents in a reasonable manner or that it did not actually conceal material portions of documents. Presumably, it realizes that its actions are indefensible in that regard. When it amended its Complaint, it could have addressed these issues; it did not. The only possible surmise is that SEC has filed this case with an improper purpose, attempting to damage the Defendants' reputations via misleading and inappropriate allegations.

## III.   DEFENDANTS HAVE DEMONSTRATED THE FAC FAILS TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED, AND SEC'S ARGUMENTS TO THE CONTRARY ARE UNAVAILING

SEC has argued that Defendants have failed to demonstrate that SEC met its pleading burden in numerous ways. First, SEC has argued that Defendants "cite some cases that they contend state the elements of a claim… but they fail to apply that law to any of the allegations in the Amended Complaint or otherwise demonstrate that the Amended Complaint does not state a

claim." *See, e.g.,* Opposition, pp. 8-9. But Defendants have demonstrated that SEC's claims all have a common element of a misrepresentation or omission (or a scheme that would serve as a fraud or deceit)[1] and require a showing of materiality. *See* Memorandum, pp. 3-7. Nor does SEC seriously dispute this fact; rather, SEC simply seems to argue that for each claim, Defendants have not stated which elements are shown or not shown.

Defendants' position is clear. These common elements are not met. SEC has failed to allege sufficient well-pleaded facts to show the supposed misrepresentations or omissions it claims (and in many cases, it has misled the court about the documents containing representations), and has not alleged sufficient facts to plausibly suggest materiality as to the matters pleaded. In the absence of sufficient allegations supporting these elements, SEC's claims must be dismissed. SEC makes hundreds of allegations, but does not tie these allegations to the elements of its claims. There is no authority suggesting that Defendants are required to attempt that task, constructing a straw man to knock down and show how each allegation fails to establish whatever claim it might attach to. The simple fact is that the FAC fails to identify facts that could support the common elements of falsity and materiality as to any of its claims. That is more than enough for dismissal.

Defendants address SEC's additional arguments as to the pleading standard as follows:

### A.    SEC Incorrectly States that the Court Should Not Consider Plausible Innocuous Alternative Explanations

SEC argues in its Opposition that the Court should disregard plausible alternative explanations to its theory of the case (to the extent that one is discernible). SEC suggests that a single case, *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014), cited by Defendants and stating that if factual allegations are susceptible to both plausible

---

[1] Although a scheme that would serve as a fraud or deceit could include actions other than a misrepresentation or omission, SEC has alleged no such scheme other than in the context of misrepresentations or omissions.

innocuous and unlawful explanations the case should be dismissed, says the opposite. Opposition, pp. 5-6. But SEC quotes an excerpt from *Starr v. Baca*, 652 F.3d, 1202, 1216 (9th Cir. 2011), quoted in *Eclectic*. SEC then goes on to argue that "[a]ccordingly, the case relied on by Defendants supports denial of their motion." Opposition, p. 6. Then, later in its Opposition, SEC accuses Defendants of offering "hypotheticals and speculation" that create questions of material fact that cannot be resolved at the Motion to Dismiss stage. *See* Opposition, p. 41; *see also* pp. 6, 38, 54, 64.

But SEC has misleadingly cited *Eclectic* and *Starr*. *Eclectic* explains the *Starr* case – in *Starr*, "plaintiff's plausible complaint survived a motion to dismiss **by offering facts that tended to exclude the defendant's innocuous alternative explanation.**" *Eclectic*, 751 F.3d at 996-97 (emphasis added). The *Eclectic* court contrasted *Starr* with *In re Century Aluminum Co. Secs. Litig.,* 729 F.3d 1104 (9th Cir. 2013). In *Century Aluminum*, the Ninth Circuit held that it is not enough that "plaintiffs offer… allegations that are merely consistent with their favored explanation but are also consistent with an alternative explanation." *Id.* Ultimately, the *Eclectic* court followed *Century Aluminum*, dismissing the complaint because allegations were consistent with an innocuous explanation. *Eclectic*, 751 F.3d at 996-97. Here, SEC has not offered factual allegations that support its assertions of wrongdoing to the exclusion of plausible and obvious innocuous explanations offered by Defendants. Rather, SEC misstates the law and the case it cites in suggesting otherwise.

Moreover, *Eclectic Properties* and *Century Aluminum* are not outliers. It is baffling that SEC suggests that reference to such explanations requires this Court to consider hypotheticals or weigh facts (*see, e.g.,* Opposition, p. 41), because consideration of such explanations is a core step in evaluating the sufficiency of a pleading, as prescribed by the Supreme Court.  In *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 680 (2009), the Court stated that where plausible alternative explanations exist, it is less likely the complaint "allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." Similarly, in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 554-57 (2007), the Court explicitly reasoned that conduct alleged had an "obvious alternative explanation . . . consistent with . . . a wide swath of rational and competitive business strategy."

Here, the FAC does not offer facts that would exclude plausible innocuous explanations for the alleged conduct. This is true throughout the FAC and is especially egregious regarding valuations, where SEC asserts, without any factual support, that rejection of certain appraisals is indicative of fraud solely because of the fact of that rejection. SEC makes no allegations that suggest that rejected valuations should have been used. The facts alleged by SEC are sparing, at best, and fail to exclude obvious plausible explanations about why those actions were not fraudulent. *See 16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 505-06 (6th Cir. 2013) ("existence of obvious alternative explanations simply illustrates the unreasonableness of the inference sought and the implausibility of the claims made.")

### B.     The Motion to Dismiss Does Not Ask the Court to Resolve Factual Disputes

Similarly, SEC accuses Defendants of requesting that the Court resolve factual disputes in their favor in other contexts. SEC levels this accusation repeatedly. *See* Opposition, p. 38 (claiming that Defendants' argument that SEC's interpretation of operating agreement is unreasonable requires resolution of a factual dispute), pp. 42-43 (claiming that Defendants' argument concerning timing of purchase of minerals from appraiser seeks resolution of a factual dispute), pp. 46-47 (claiming that Defendants' argument that SEC has not alleged facts that would show GTIF was not an "income" fund requires resolution of a factual dispute).

Yet Defendants do not ask the Court to resolve factual disputes. Interpretation of an operating agreement or contract's provisions is not a factual question. *In re Minton*, No. 14-91293, 2017 WL 354319, at *4 (Bankr. C.D. Ill. Jan. 24, 2017) ("the interpretation of an LLC operating agreement is a question of law for a court to decide."). Nor is there an issue of material fact implicated where SEC has alleged that a transaction was entered into on April 7, 2015, and that the operating agreement barred such transactions effective January 1, 2016. *See* FAC, ¶¶ 202, 206. Nor do Defendants ask the Court to resolve factual disputes by pointing out that allegations about asset allocations at a given point in time, or even gains realized or not realized, do not show that GTIF misled investors about its goals; rather, such arguments demonstrate that SEC's factual allegations do not support the notion that there was a misrepresentation.

Instead, Defendants have asked the Court to resolve questions of law, and to rule that SEC's factual allegations are not sufficiently supported or are contradicted by documents SEC itself supposedly relies upon. These are wholly appropriate subjects for a Motion to Dismiss, and SEC is disingenuous in its suggestions otherwise.

## C.      SEC's Own Attempts to Show it Stated Claims Demonstrate its FAC Falls Short of the Short and Plain Statement Rule of Rule 8(a)

SEC's own arguments demonstrate the inadequacy of its FAC. SEC's FAC has the hallmarks of a shotgun pleading that violates the "short and plain statement" requirement of Federal Rule of Civil Procedure 8(a). A shotgun pleading is a pleading that is "needlessly prolix and confusing." *See U.S. ex rel. Garst v. Lockheed Martin Corp.*, No. 98 C 5072, 2002 WL 1794004, at *2 (N.D. Ill. Aug. 2, 2002), *aff'd* 328 F.3d 374 (7th Cir. 2003).

Tellingly, SEC's Opposition spends significant amounts of time recasting and reframing its allegations in an attempt to meet the plausibility standard required by the rules. There is no authority for the proposition that a pleading that does not meet the plausibility standard may be

8

rescued by, effectively, re-writing it in a later brief. Further, SEC, when it amended the Complaint and filed the FAC, could have simply done this rewriting then; it did not do so.

For example, with respect to Amiran, SEC argues that it adequately pleaded its claims that the initial valuations of Amiran were overstated and should not have later been referenced. Opposition, p. 21. But in arguing that, SEC reorganizes and restates its claims, citing and recharacterizing, in order, paragraphs 249, 252, 253, 350, 390, 350, 351, 390, 350, 381, 388, 396, 411, 391, and 399, to argue that the FAC state a claim as to this matter. Opposition, pp. 22-23. SEC asks the Court to find that it pleaded the necessary elements of its claims by suggesting they can be divined by reordering facts alleged in disparate paragraphs over a span of 162 such paragraphs, and that the Court and Defendants should engage in that exercise in interpreting the FAC.

Similarly, SEC argues that it adequately pleaded claims that valuations of Amiran did not align with the knowledge in Nohl and Hull's possession. Opposition, p. 23. In attempting to explain the allegations of the FAC, SEC cites and recharacterizes, in order, paragraphs 241, 247, 249, 252-54, 256, 258, 265-75, 295, 315-17, 349, 265-66, 312, 335, 364, 257, 259, 260, 288, 290-91, 309-10, and 331-33. Opposition, pp. 23-25. Again, SEC suggests that if one merely reorders the facts stated over the course of 90 paragraphs and ignores all intervening facts, one can piece together a claim. The FAC as explained in the Opposition is a very different FAC than the one filed.

A complaint "must be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search of…" an understanding of what the claim is. *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990).[2] Yet that is exactly what SEC

---

[2] In another context, the Seventh Circuit Court of Appeals has held that "[j]udges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). That principle is relevant here.

urges the Court to do now, asking the Court to assemble a jigsaw puzzle of claims and allegations. The Court should not do so. SEC should have presented its allegations, whatever they are, clearly. They can then be evaluated to see if they state a claim; even SEC is unable to argue that they do, as currently presented, without rephrasing and jumping back and forth across dozens of pages and hundreds of allegations.

**D.    SEC has not Adequately Supported Allegations of Misrepresentation Made in the FAC by Pleading Facts Showing Representations were False**

Additionally, SEC has not adequately alleged misrepresentations. SEC alleges that numerous representations made by Defendants were false, relating to intended allocations of investments, investment goals, and plans as to how Defendants would accomplish those goals. Defendants have presented two main arguments in relation to these points: (i) that Defendants' statements of intention are not false merely because they did not come true, and (ii) that SEC's allegations of falsity fall short because they do not tend to show the representations were false on their faces.

With respect to the first argument, SEC argues that Defendants are improperly attempting to rely on the safe harbor for forward-looking statements contained in the Private Securities Litigation Reform Act ("PSLRA"). Opposition, pp. 52-53. Defendants do no such thing.

Although the PSLRA does contain a safe harbor, applicable only in investor suits, limiting liability for forward-looking statements, Defendants do not rely on that safe harbor (which would require actual knowledge of falsity of such statements). There is ample authority that predictive statements are not actionable unless false when made, regardless of the identity of the plaintiff. *See, e.g., S.E.C. v. Reynolds*, No. CIV.A.3-08-CV-0384-B, 2008 WL 3850550, at *5 (N.D. Tex. Aug. 19, 2008) (predictive statements not actionable both because they were not alleged to be false when made and even if they had been, would not have been material, even

where specific rates of return by specific dates were alleged); *see also S.E.C. v. Ustian,* 229 F. Supp. 3d 739, 767 (N.D. Ill. 2017) (citing *Reynolds*); *S.E.C. v. Revolutions Med. Corp.*, No. 1:12-CV-3298-LMM, 2015 WL 11199068, at *4 (N.D. Ga. Apr. 3, 2015) (discussing criteria for materiality of forward-looking statements in SEC action); *S.E.C. v. Gane*, No. 03-61553-CIV-SEITZ, 2005 WL 90154, at *14 (S.D. Fla. Jan. 4, 2005) (applying principle that "forward-looking statements… are not material unless they are worded as guarantees" against SEC). If a forward-looking statement is not false or unreasonable when made, it is still not actionable, quite apart from whether the statutory safe harbor of the PSLRA applies.

As argued in the Memorandum, numerous statements raised in the FAC are forward-looking statements and are thus not actionable unless they were not believed to be true by the maker, or were unreasonable when made. SEC has not alleged sufficient facts to plausibly show that either of these is the case; rather, SEC seems to rely on the notion that subsequent performance is the marker of whether a statement is true when the statement speaks to a goal. In support of its argument that GTIF falsely held itself out as an "income fund," SEC cites to asset allocations as of 2018 and to the failure to realize gains. SEC asserts "it is axiomatic that the Fund having $0 in realized gain" means that GTIF was "invested in non-income generating and illiquid assets and not generating income." Opposition, p. 46. Of course, there is another obvious explanation – some investments did not succeed as intended. That is one of the risks inherent in investing: from 2007 to 2009, most funds with "Growth" or "Income" in their names did not experience growth or return meaningful income; but this did not result in a wave of SEC suits alleging their names were misrepresentations.

Nor do the factual allegations that SEC argues support its claim that Defendants made misrepresentations show that. SEC cites, for example, to static asset allocations at specific points

in time to claim that statements about intended asset allocations were false. FAC, ¶ 73. But asset allocations at specific points in time do not show what was purchased, only what remained on those dates – assets that were sold (whether or not they resulted in gains) or written down are not reflected. The facts SEC alleges simply do not show the subject representations were false.

SEC also argues that certain statements are framed in the present tense and thus are not forward-looking statements at all. Opposition, p. 53. This is preposterous. The specific statement that SEC raises this argument in relation to is "the Company's goal is to achieve a high level of current income…" Opposition, p. 53. Grammatically, this statement is in the present tense. But the statement that one's "goal is" something self-evidently speaks of what is intended to be accomplished in the future. SEC seems to be suggesting that the case law applying to forward-looking statements would apply to a statement that a fund "will achieve a high level of current income," but not to the statement that "the Fund's goal is to achieve a high level of current income." Both statements refer to the future and their meaning is the same, verb tense aside.

E.    **SEC has Failed to Plead its Claims with the Specificity Required for Fraud Claims by Rule 9(b)**

SEC has not met the fraud pleading standard of Federal Rule of Civil Procedure 9(b) throughout the FAC, and for that reason, its claims for fraud must be dismissed as stated in the Motion to Dismiss and Memorandum. SEC attempts to argue that the fraud pleading standard is met, and that, to the extent that Defendants argue that SEC must allege some information about the true value of assets in order to meet the fraud pleading standard, that is somehow a requirement of the PSLRA and not applicable here. Opposition, p. 31. It is not.

(i)      *SEC's Claims Cannot Survive SEC's Failure to Plead Asset Valuations*

Defendants have cited *In re Allied Capital Corp. Securities Litigation*, Fed Sec. L. Rep. P. 92,411, 2003 WL 1964184, at *4 (S.D.N.Y. 2003) for the proposition that in order to plead fraud with particularity, a plaintiff must allege specific facts showing an overvaluation and the specific extent thereof. Where assets are illiquid and multiple factors may be taken into account in valuing them, alleging disagreement with a valuation does not equate to alleging fraud. *Id.*

SEC is correct that *Allied* is a PSLRA case. But that does not matter. The PSLRA requires pleading with particularity, but so does Rule 9(b). There is no dispute that Rule 9(b) applies to SEC's fraud claims. *Allied* analyzed the pleading requirements under Rule 9(b), not with respect to any provision where the PSLRA differed from Rule 9(b). *See Allied,* at *3. *See also Greebel v. FTP Software, Inc.*, 194 F.3d 185, 188 (1st Cir. 1999) (PSLRA particularity requirements consistent with requirements imposed by Rule 9(b)). Allied stands for the proposition that as a matter of pleading fraud in valuation cases, some allegation of true value must be made. SEC has not done this.

(ii)     *SEC Fails to Meet the Fraud Pleading Standard as to Verbal Representations by Michael Hull*

SEC's FAC falls short of the fraud pleading standard in numerous other ways, as indicated in Defendants' Motion to Dismiss and Memorandum in Support. The most egregious such failures are with respect to supposed verbal representations by Michael Hull.

The law on pleading fraudulent misrepresentations under Rule 9(b) is clear and it is settled. The "newspaper rule" provides that a plaintiff must describe the "who, what, when, where and how of the fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.,* 631 F.3d 436, 441-42 (7th Cir. 2011). The FAC accuses Michael Hull of making misleading verbal representations to his advisory clients, but does not state with particularity to

13

whom or when the misrepresentations were made. This is an obvious and clear violation of the "newspaper rule."

In response to being confronted with this fact, SEC states that the representations were made to "Bluepoint's individual clients." Opposition, p. 48. SEC then cites an irrelevant case for the proposition that it does not have to demonstrate reliance or identify individual investors who *relied on* supposed misrepresentations. *See S.E.C. v. Trabulse*, 526 F.Supp. 2d 1001, 1005 (N.D. Cal. 2007). But that is not the issue. Rather, the issue is that SEC needs to identify the particulars, including the "who," and "when," as to the alleged misrepresentations themselves, and has not done so.

SEC suggests it should be excused from those requirements because it has identified that supposed verbal representations were made by Hull "to Bluepoint's individual clients," and that they were not "a one time or isolated event." Opposition, pp. 48-49. This is contrary to the law. It may be that SEC's contention is that Hull repeatedly made such verbal representations to substantially all of Bluepoint's investment clients, but that is unclear from the FAC. And even if it were, SEC should be able to allege *some* specific example of such a communication. There is no authority saying that the newspaper rule can be evaded by saying "there were a lot of misrepresentations" and providing no detail. SEC suggests that there were dozens, if not hundreds, of conversations containing these alleged verbal misrepresentations, but it fails to plead with particularity a single one. SEC's argument makes its claims less believable, not more.

## IV.   SEC HAS NOT ALLEGED SUFFICIENT FACTS TO DEMONSTRATE THAT ALLEGED RELATED PARTY TRANSACTIONS COULD BE MATERIAL

Nor has SEC adequately alleged facts that would tend to show materiality of the matters pleaded in the FAC. SEC suggests that it does not have to, arguing that materiality is often a question of fact that it is "rarely appropriate" to resolve on a Motion to Dismiss. Opposition,

p. 20 (citing *SEC v. Ustian*, 229 F.Supp. 3d at 765). That principle is not relevant here because of SEC's inadequate pleading.

SEC cites *S.E.C. v. Buntrock*, No. 02 C 2180, 2004 WL 1169423, at *5 (N.D. Ill. May 25, 2004), for the proposition that, in deciding materiality, the Court need not separately adjudicate each and every claimed misrepresentation in the FAC. But *Buntrock* does not say that; rather, in that case, the court declined to resolve questions of materiality where the case concerned numerous representations all related to a single large alleged valuation fraud. Here, SEC has identified numerous alleged misrepresentations, some of which bear on the valuation of a single asset, some of which bear on the valuation of a wholly different class of assets, and some (such as representations about deviations from valuation practices or improperly formed allegations of "false contracts") that do not appear to be connected to misvaluations at all.

SEC suggests that *Buntrock* requires aggregating its claims to determine materiality. But few, if any, of SEC's claims are well-pleaded *even apart from* materiality. Instead, most of SEC's claims are supported only by conclusory allegations and the intentional misreading of documents. Once those are eliminated, if anything at all is left, the amounts are far smaller than aggregating all of SEC's claims would suggest.

Further, SEC attempts to save the FAC using improperly pleaded allegations. Defendants have cited authority for the proposition that small amounts may be held to be immaterial as a matter of law even if subject to a misrepresentation. Defendants argue that related-party transactions cited by SEC are immaterial under this authority, in light of their small value as a percentage of GTIF's $135 million in assets and alleged management fees. Memorandum, p. 36. In response, SEC says that this entire argument is based on a "fictitious number." Opposition, p. 19. SEC's support for this claim, though, is its allegation that gains "are largely fictitious." *Id.*,

p. 19. This is a conclusory statement, not well-pleaded, and should be disregarded. SEC insists that it does not have to plead any facts as to what the true values of assets are, but without such facts, sufficient information to allege materiality has not been pleaded, because the Court cannot evaluate what portion of alleged fund assets the transactions in question constitute.

Nor is SEC's reliance on *S.E.C. v. Conrad*, 354 F.Supp. 3d 1330, 1358-59 (N.D. Ga. 2019), well-placed. In that case, the transactions in question were alleged to violate fiduciary duties and were arguably unauthorized by the relevant organizing documents, in addition to being undisclosed. *Id*. at 1359-60. Here, SEC has not alleged that most of the undisclosed transactions constitute such violations – its contention is that these transactions should have been disclosed regardless of their legality.[3] But absent allegations of illegality, some sort of contractual violation, or at least some evidence that transactions were for anything but market rates, SEC has alleged no fact that would support any possible conclusion that related party transactions of immaterial amounts would nonetheless need to be disclosed.

SEC does seek, at this stage, to recast its arguments about loans, alleging that short-term high interest rate loans to related parties are indicative of cashflow problems that were inadequately disclosed to investors. The problem with this is that this is not the theory stated in the FAC – rather, the theory was that the transactions themselves were the item requiring disclosure. If SEC wished to allege that cash flow problems of GTIF itself were concealed from investors, that is a different allegation than it has thus far pleaded; it could easily have been raised in the FAC.

---

[3] The exception is a transaction with a mineral appraiser, which SEC alleges violated an operating agreement provision that was adopted *after* the transaction was entered into. See p. 9, *supra*.

In addition, SEC fails to adequately plead materiality as to its claims as to valuation procedures, as SEC has not alleged any correct valuations.[4] As argued at Memorandum, p. 42, SEC alleges supposed deviations from the valuation procedures adopted by Defendants[5] and that certain matters were omitted from valuation reports or otherwise not disclosed to investors. But absent some sort of allegation as to value, there is simply nothing in the FAC to support the materiality of these matters – if a deviation in valuation procedure did not result in any change in value, how could it possibly be material to an investor? Similarly, a valuation report will never capture all information about the company or other assets being valued – without some information about the effect of an omission on value, how can it be determined to be material? Materiality is a low bar at the pleading stage, but it is an element of SEC's claims, and SEC must plead some facts sufficient to plausibly state that element. It has not done so.

## V.     CONCLUSION

The FAC simply repeats the improperly pleaded allegations of the original Complaint. In spite of being informed where its allegations were insufficient as a matter of law or contained misleading quotations, SEC made no effort to fix these problems. Rather, the FAC contains the exact same needlessly prolix and confusing allegations as the Complaint, fails to allege additional facts regarding materiality, and fixes none of SEC's misleading quotations.

In moving to dismiss the original Complaint, Defendants stated that if the Complaint, as filed, is the best it can do, SEC has no case, and the only possible conclusion is that, knowing it cannot prove a violation of the securities laws, it has decided to abuse the judicial process to harm Defendants and their business prospects. Based on the FAC, it is apparent that the

---

[4] This argument is separate and apart from the requirement, discussed *supra*, that pleading fraud requires pleading valuations.
[5] SEC states in its Opposition, p. 41, that Defendants "seemingly admit" that appraisals did not follow the process represented to investors. For clarity's sake, Defendants admit no such thing.

Complaint, as filed, was, in fact, the best SEC could do. Defendants respectfully request that this matter be dismissed with prejudice.

Dated this 16th day of April, 2020.

                                        HUSCH BLACKWELL LLP
                                        Attorneys for Defendants


                                        By:   /s/ Patrick S. Coffey
                                              Patrick S. Coffey
                                              State Bar No. 1002573
                                              Robert M. Romashko
                                              State Bar No. 1106485

555 E. Wells Street, Suite 1900
Milwaukee, Wisconsin 53202-3819
(414) 273-2100
(414) 223-5000 (fax)
Patrick.Coffey@huschblackwell.com
Robert.Romashko@huschblackwell.com


## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of April, 2020, a true and correct copy of the foregoing **Defendants' Reply to Memorandum of Law in Opposition to Defendants' Motion to Dismiss First Amended Complaint** was filed and served via the CM/ECF system, to all parties receiving CM/ECF notices in this Chapter 11 case.

                                        /s/ Patrick S. Coffey
                                        Patrick S. Coffey