## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

|  |  |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>       Plaintiff,<br><br>  v.<br><br>BLUEPOINT INVESTMENT COUNSEL, LLC, et al.,<br><br>       Defendants. | Case No. 19-cv-809 |

## MEMORANDUM IN SUPPORT OF MOTION TO COMPEL RESPONSES TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS

Patrick S. Coffey (State Bar No. 1002573)
Robert M. Romashko (State Bar No. 1106485)
HUSCH BLACKWELL, LLP
555 E. Wells Street, Suite 1900
Milwaukee, Wisconsin 53202-3819
(414) 273-2100
(414) 223-5000 (fax)
Robert.Romashko@huschblackwell.com
Patrick.Coffey@huschblackwell.com

*Counsel for Defendants*

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION AND BACKGROUND ............................................................... 1

     A.     Defendants' Discovery Requests and SEC's Responses ......................................... 2

     B.     Meet and Confer Process ........................................................................................ 2

II.     THE SEC SHOULD BE COMPELLED TO PROVIDE FURTHER
     RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS
     AND INTERROGATORIES ................................................................................ 5

     A.     The SEC's Responses to Requests for Production of Documents are
        Inadequate ............................................................................................................... 6

        i.      SEC has Custody and Control of Documents Collected by the
          Department of Justice, a Cooperating Agency ........................................ 6

        ii.     SEC's Privilege Assertions over Interview Notes and Memoranda
          are Inadequately Supported and these Documents are not
          Privileged ................................................................................................ 8

        iii.     SEC's Categorical Privilege Log Entries are Insufficient to Support
          the Asserted Privileges ........................................................................... 18

        iv.     SEC's Boilerplate Objections on Grounds of Burden, Breadth, and
          Proportionality are Unsupported and Waived .......................................... 21

        v.      SEC's Boilerplate Relevance Objections are Unsupported and
          Without Merit .......................................................................................... 22

        vi.     SEC Should be Compelled to Provide Information Regarding the
          Scope of its Search and Production ........................................................ 24

        vii.     SEC Should be Compelled to Itemize Documents Produced in
          Response to Requests Seeking Documents Relevant to Complaint
          Allegations .............................................................................................. 25

        viii.    SEC Should be Compelled to Produce Materials Related to
          Valuations Obtained in its Pre-Complaint Investigation, if any .............. 25

     B.     SEC'S RESPONSES TO INTERROGATORIES ARE INADEQUATE ............ 26

        i.      Interrogatory No. 1 ................................................................................ 27

        ii.     Interrogatory No. 2 ................................................................................ 28

iii.    Interrogatories No. 3 and 4 ........................................................................ 30

iv.    Interrogatory No. 5 ..................................................................................... 31

v.    Interrogatory No. 6 ..................................................................................... 33

vi.    Interrogatory No. 7 ..................................................................................... 34

vii.    Interrogatory Nos. 8 and 11 ....................................................................... 35

viii.    Interrogatory No. 10 ................................................................................... 37

ix.    Interrogatory No. 12 ................................................................................... 38

**III.    CONCLUSION** ............................................................................................. **39**

Defendants Bluepoint Investment Counsel, Inc. ("Bluepoint"), Michael G. Hull ("Hull"), Christopher J. Nohl ("Nohl"), Chrysalis Financial, LLC ("Chrysalis"), Greenpoint Asset Management II, LLC ("GAM"), Greenpoint Tactical Income Fund, LLC ("GTIF") and GP Rare Earth Trading Account, LLC ("GPRE") (collectively, "Defendants"), in support of their Motion to Compel Responses to Interrogatories and Production of Documents, state as follows:

## I.      INTRODUCTION AND BACKGROUND

The Securities and Exchange Commission ("SEC") filed this case in September 2019 after spending years investigating Defendants, and after SEC referred the matter to the Department of Justice ("DOJ")[1], which investigated but took no further action. Defendants moved to dismiss in November 2019, arguing that SEC's Complaint obscured or omitted obviously exculpatory facts and was impermissibly vague. *See* Dkt 16. SEC, after the Motion to Dismiss was fully briefed, filed a First Amended Complaint ("FAC") (Dkt. 33) but failed to fix a single problem identified by Defendants, reasserting all of its misleading and vague allegations. This pattern has continued in discovery where, six months after Defendants initially served requests, SEC has failed to provide full and complete answers or adequately support its privilege assertions.

Defendants are mindful of the difficulties imposed on the Court as a result of the pandemic and have taken all available steps to avoid unnecessary motion practice. Unfortunately, SEC has refused to cooperate on even the simplest outstanding discovery matters. That tact is consistent with SEC's improper effort to delay these proceedings and subject Defendants to prejudice through public filings accusing them of fraud. SEC should be compelled to respond fully to discovery so that this case may advance.

---

[1] The investigation by DOJ involved agents of the FBI and attorneys from the United States Attorney's Office ("USAO") for the Western District of Wisconsin, which are instrumentalities of the DOJ; for ease of reference, Defendants refer to these entities collectively as the DOJ where practical.

## A. Defendants' Discovery Requests and SEC's Responses

On January 14, 2020 Defendants served the SEC with Defendants' initial Requests for Production (Ex. 1) and Interrogatories (Ex. 2). On February 13, 2020, SEC responded to the Requests for Production (Ex. 3) and Interrogatories (Ex. 4). SEC produced documents contemporaneously and lodged numerous objections, but did not provide a privilege log. The SEC's first log (Ex. 5) was not produced until May 14, 2020 – seven weeks after Defendants moved to compel production of same. Dkt. 62.

The SEC's privilege log generally identified documents by category rather than individually. After meeting and conferring, SEC revised its privilege log on June 11, 2020, identifying individually only interview notes and memoranda generated by SEC itself. Ex. 6.[2] Per SEC's revised log, all of the interview notes and memoranda, regardless of when the interview took place or what function of SEC conducted it, are withheld on the basis of the following privileges: "Attorney Work Product; Work Product; Attorney Client Privilege; Deliberative Process Privilege." Ex. 6. SEC did not supplement any of its other privilege assertions or make them on a document-by-document basis. Nor did it identify the number of documents in any given category.

## B. Meet and Confer Process

The parties have met and conferred repeatedly and unsuccessfully on SEC's objections, both before and after the production of a privilege log. A timeline follows:

January 14, 2020 – Defendants Bluepoint, Hull, Nohl, Chrysalis, and GAM served Requests for Production of Documents and Interrogatories on SEC. Exs. 1, 2.

February 13, 2020 – SEC served its discovery responses. Exs. 3, 4.

---

[2] Subsequent references herein to SEC's privilege log, unless otherwise indicated, are to the June 11, 2020 privilege log, which is the operative version of the document.

<u>February 14, 2020</u> – Defendants raised numerous discovery issues. Ex. 7.

<u>February 18, 2020</u> – SEC responded via email. Ex. 8.

<u>February 25, 2020</u> – Defendants sent a letter to SEC on further discovery issues. Ex. 9.

<u>February 26, 2020</u> – The parties held a telephonic meet and confer on issues raised by both parties with respect to the initial round of discovery. Declaration of Robert Romashko ("Romashko Dec."), par. 3.

<u>February 28, 2020</u> – Defendants sent a follow-up letter on the February 26, 2020 meet and confer to SEC. Ex. 10.

<u>March 16, 2020</u> – SEC responded via email to the February 28, 2020 letter. Ex. 11.

<u>March 18, 2020</u> – The parties held a second telephonic meet and confer. Romashko Dec., par. 3.

<u>March 19, 2020</u> – Defendants sent a follow-up email on the March 18, 2020 meet and confer. Ex. 12.

<u>March 20, 2020</u> – SEC responded to the March 18, 2020 email. Ex. 13.

<u>March 23, 2020</u> – Defendants emailed SEC requesting information on when a privilege log would be produced. Ex. 14. SEC did not provide any response.

<u>March 25, 2020</u> – Defendants moved to compel production of a privilege log. Dkt. 52.

<u>April 1, 2020</u> – SEC opposed the motion to compel production of a privilege log and stated that it had voluminous documents to log, that it would produce a log by May 14, 2020. SEC also suggested, for the first time, that the parties meet and confer on issues such as the form of logs and the dates of materials to be logged. Dkt. 61.

April 27, 2020 – After SEC counsel made no effort to initiate the meet and confer it suggested was necessary in its April 1, 2020 Opposition, Defendants sent a letter to SEC counsel proposing such a meet and confer. Ex. 15.

May 1, 2020 – The parties agreed to a teleconference on May 7, 2020. Defendants' counsel asked SEC counsel to identify any proposal SEC would like Defendants' counsel to consider in advance. Ex. 16. SEC counsel did not provide any such proposal.

May 7, 2020 – SEC counsel and Defendants' counsel held a telephone conference on the form of privilege logs SEC would be producing. SEC's only suggestion was that it intended to log documents by category. Romashko Dec., par. 3.

May 13, 2020 – Defendants' counsel sent SEC counsel an email identifying problems related to the SEC's proposal for categorical logs. Ex. 17. SEC responded via email later on May 13, 2020. Ex. 18.

May 14, 2020 – SEC produced its first privilege log. Ex. 5. Defendants subsequently withdrew their Motion to Compel Production of Privilege Log. Dkt. 67.

May 19, 2020 – Defendants sent a letter to SEC counsel identifying defects in SEC's privilege log and responding to the May 13, 2020 email from SEC counsel. Ex. 19.

June 11, 2020 – SEC counsel sent a letter defending its privilege assertions and providing a revised privilege log. Exs. 6 (privilege log) and 20 (letter).

June 22, 2020 – The parties held a telephone conference regarding, among other issues, the adequacy of SEC's privilege assertions. Romashko Dec., par. 3.

June 25, 2020 – Defendants' counsel sent a follow-up letter to SEC counsel after the June 22, 2020 meet and confer, reiterating the defects in SEC's privilege assertions and its other objections. Ex. 21.

July 2, 2020 – SEC counsel responded by letter, reiterating SEC's position on the privilege assertions and objections. Ex. 22.

July 9, 2020 – Defendants' counsel sent a follow-up email to SEC counsel indicating that Defendants believed the parties were at an impasse. Defendants requested that SEC inform Defendants' counsel if any further meet and confer call was desired by July 10, 2020; SEC did not do so. Ex. 23.

Defendants have discharged their meet and confer obligations. SEC has refused to address the matters in dispute and has generally taken steps that will delay resolution of this litigation and add expense. This conduct is contrary to the Court's Order that the parties "reasonably accommodate each other in all matters so as to secure the just, speedy, and inexpensive resolution of" the matter. Dkt. 23, p. 1.

## II.   THE SEC SHOULD BE COMPELLED TO PROVIDE FURTHER RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES

Federal Rule of Civil Procedure 26(b)(1) provides:

> "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."

SEC has objected to Interrogatories and Requests for Production of Documents on numerous unsupported grounds and failed to provide complete or responsive answers to same. Similarly, SEC's production of documents is not in compliance with the Federal Rules of Civil Procedure, and SEC has raised issues that call into question the scope or extent of its search. The relevant issues are addressed below.

5

### A.     The SEC's Responses to Requests for Production of Documents are Inadequate

Defendants' Requests for Production of Documents seek information relevant to this case. The SEC responded with various objections, most of which were unsupported boilerplate. SEC also asserts that requested materials are privileged, but has failed to justify those assertions with an adequate privilege log, instead withholding an unspecified number of documents on the basis of a categorical privilege log. The SEC has produced several hundred thousand pages of documents; however, the bulk of these were simply documents that were obtained under subpoenas to Defendants in SEC's pre-Complaint investigation. The remainder consists mostly of subpoena responses received by SEC to its investigative subpoenas, or testimony transcripts from witnesses who gave formal testimonies. SEC has withheld an unspecified number of documents on the basis of its categorical privilege log, which was produced months after the initial service of SEC's objections. Defendants address these requests, SEC's objections, and the other inadequacies in SEC's production as follows:

### i.     SEC has Custody and Control of Documents Collected by the Department of Justice, a Cooperating Agency

SEC has objected to numerous Requests for Production of Documents (see Request Nos. 14, 15, 16, 17) which seek documents gathered or generated by DOJ, because SEC claims they call for documents outside SEC's "control, custody, or possession." This objection is without merit – DOJ documents are within SEC's control and SEC's search for responsive documents or information must include DOJ documents.

SEC is in possession, custody, or control of any information DOJ physically holds. Where there is privity of knowledge between criminal and civil law enforcement agencies, and where one agency has access to another's documents, one agency is in possession, custody, and control of the documents of the other. *See U.S.A. v. Elizabeth A. Holmes et al.*, Case No.

5:18-cr-00258-EJD-1, (Cal N.D., November 5, 2019), Order Granting Motion to Compel, Dkt. 67, p. 3. An agency is in possession of discoverable material "where they have knowledge of and access to the documents, even if those documents are physically held by other government agencies." *United States v. Santiago*, 46 F.3d 885, 893-94 (9th Cir. 1995). Participation in another agency's investigation is sufficient, but not necessary, to establish that the agencies have access to each other's information. *Id.* at 893.

Here, the DOJ investigation was a direct result of a request by SEC – it was referred by SEC to DOJ and covered the same topics. *See* Affidavit of Alan Pettigrew, Ex. 24.[3] Further, SEC's privilege log discloses that there was ongoing communication between SEC and DOJ regarding Defendants over May 2016 to May 31, 2019. SEC's privilege log fails to disclose the precise number of such communications but reveals that ten SEC employees corresponded with an unspecified number of DOJ employees over that period. Ex. 6, Log No. 64. SEC further claims that such communications included "non-grand jury information regarding the DOJ's separate criminal investigation," and the "identity of sources, witnesses… and/or subjects of investigation." SEC then asserts attorney-client privilege, work-product doctrine, law enforcement privilege, and deliberative process privilege with respect to *every* communication it had with DOJ. *Id.* SEC cannot argue that it shared information subject to these privileges and protections with FBI for three years, but that the agencies did not conduct a joint investigation or otherwise cooperate sufficiently to bring them into privity. SEC should be ordered to obtain and produce (or log as appropriate) responsive documents physically held by its cooperating agency, the DOJ.

---

[3] Exhibit 24, indicates that FBI, on SEC's referral, was investigating the valuation practices of GTIF and its managers, distributions to the managers, and their representations to investors – all issues identified in the FAC.

Further, to the extent that any documents were conveyed by DOJ to the SEC, they are actually physically in the custody or control of SEC. SEC's privilege log contains insufficient information to determine whether that is the case; all communications with DOJ are lumped into a single log entry, with no detail at all as to what was provided to SEC by DOJ. Ex. 6, Log No. 64. But if SEC received responsive documents from DOJ, it cannot withhold them on the basis that they are not in SEC's possession.

ii.    **SEC's Privilege Assertions over Interview Notes and Memoranda are Inadequately Supported and these Documents are not Privileged**

SEC's privilege log contains two types of privilege assertions: assertions with respect to individual documents (for interview notes and memoranda) and assertions of privilege over broad document categories. None of these assertions of privilege is sufficiently supported, but Defendants address the two categories of assertion separately. First, Defendants address SEC's assertion of privilege as to individual interview notes and memoranda.

Witness interview notes and memoranda are responsive to several requests for production, but primarily Request No. 5 (calling for all memoranda, recordings, or transcripts of witness interviews taken during SEC's pre-Complaint investigation). SEC has identified the following interview notes and memoranda as being withheld in its privilege log:

- Log No. 1 – April 2017 notes of interview of Norm Monteau.

- Log No. 2 – April 2017 notes of interview of James Zigras.

- Log Nos. 3, 19, and 20 – May 2017 and February 2018 notes and memorandum of interview of Bruce Pietrantonio.

- Log Nos. 4 and 5 – July 2017 notes and memorandum of interview of Nicholas Stolowitz.

- Log No. 6 – November 2017 notes of interview of John Hoffman.

- Log Nos. 7, 8, and 9 – December 2017 notes and memoranda of interview of George Elling.

- Log Nos. 10-14 – December 2017 notes of interview of Chris Burke.

- Log Nos. 15 and 16 – January 2018 notes and memorandum of interview of Susan Ewens.

- Log Nos. 17 and 18 – January 2018 notes and memorandum of interview of Kent Loehrke.

- Log Nos. 21, 22, 25-27, and 31 – February and April 2018 notes and memoranda of interview of Glen Mills.

- Log Nos. 23 and 24 – February and March 2018 notes and memorandum of interview of Erick Hallick.

- Log Nos. 28-30 – March 2018 notes and memorandum of interview of William Tumler.

- Log Nos. 32-37 and 44 – May and June 2018 notes and memorandum of interview of Tierney Sharif.

- Log Nos. 38 and 39 – June 2018 notes and memorandum of interview of Pamela Kirchen.

- Log Nos. 40 and 41 – October and November 2018 notes and memorandum of interview of Ariana Amplo.

- Log Nos. 42 and 43 – October and November 2018 notes and memorandum of interview of Dean Voeks.

- Log No. 45 – May 2019 notes of interview of Phil Skrade.

9

- Log No. 61 – February 2016 notes or memoranda of interviews related to Bluepoint and Hull.

- Log No. 62 – March 2016 memorandum of interview of Mary Pat Dixon of Department of Labor.

### a.      The Requested Interview Notes and Memoranda are Relevant

During the meet and confer process, the SEC disputed that these interview notes and memoranda were relevant. Such an argument is meritless – it is also waived. SEC did not raise this objection in response to Request for Production No. 5. *See, e.g., Buonauro v. City of Berwyn, No. 08 C 6687,* 2011 WL 116870, at *4 (N.D. Ill. Jan. 10, 2011), on reconsideration in part, No. 08 C 6687, 2011 WL 2110133 (N.D. Ill. May 25, 2011) (collecting cases).

Further, notes and memoranda of interviews of these witnesses are relevant to the claims stated in the FAC. The FAC alleges lack of disclosure or misrepresentations to investors of financial matters, appraisal practices, and the use of investor funds. The witnesses are (or are employees of) appraisers, dealers of minerals who did business with GPRE and GTIF, investors in GTIF, a manager of another Greenpoint fund, former employees of Defendants, employees of Amiran Technologies, LLC, a former outside accountant of Defendant, and a Department of Labor auditor who audited Bluepoint. Except for Mr. Mills, Mr. Pietrantonio, and Ms. Dixon, all of the above witnesses were identified by name or category as individuals who may have relevant information in SEC's initial disclosures. SEC Initial Disclosures, Ex. 25, pp. 2-11. Notes and memoranda of interviews of these witnesses will contain information related to party claims or defenses. Rule 26(b)(1).

**b.      The SEC's Interview Memoranda and Notes are not Exempt from Disclosure Under Any Asserted Privilege**

The SEC has asserted work product (identified both as "Attorney Work Product" and "Work Product"), attorney-client privilege, and deliberative process privilege over all of the interview notes and memoranda at issue, except that Log No. 62 (memorandum of witness interview of Mary Pat Dixon) does not assert attorney-client privilege. None of these privilege assertions is adequately supported, nor are they applicable to the documents at issue, as follows:

**(1)      Work Product Protection does not Apply**

The work product doctrine provides for qualified protection of documents and tangible things prepared in anticipation of litigation. *See* Fed. R. Civ. P. 26(b)(3)(A); *United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975); *Am. Family Mut. Ins. Co. v. Electrolux Home Prod., Inc.*, No. 11-CV-678-SLC, 2014 WL 3513243, at *2 (W.D. Wis. July 14, 2014). In order to come within the work product doctrine, material must be: (i) documents and tangible things otherwise discoverable; (ii) prepared by or for another party or by or for that other party's representative, and (iii) in anticipation of litigation or for trial. *Am. Family Mut. Ins. Co.*, 2014 WL 3513234, at *2. That litigation ultimately ensues does not cloak materials in privilege by itself; rather, the work has to be prepared *because of* the litigation or some claim likely to lead to litigation. *Id.*

Interviews, witness statements and memoranda may be work product if they were prepared because of the prospect of litigation. *See Hickman v. Taylor*, 329 U.S. 495, 511 (1947). But not all documents connected with a federal investigation are prepared in anticipation of litigation. *General Electric Co. v. Johnson,* 2006 WL 2616187, *11 (D.D.C.2006) ("documents that relate only generally to a broad agency program that is investigatory or adversarial in nature are not properly considered to have been 'prepared in anticipation of litigation'"); *Reich v. Great*

11

*Lakes Collection Bureau, Inc.,* 172 F.R.D. 58, 61 (W.D.N.Y.1997) (investigations of employee complaints are undertaken in the ordinary course of the Department of Labor's activities, not conducted by attorneys, and do not automatically lead to litigation); *Securities and Exchange Commission v. National Student Marketing Corp.,* 1974 WL 415, *8 (D.D.C.1974) (papers prepared by SEC during investigative phase—"when the agency accumulates and evaluates factual material"—are not necessarily work product).[4]

The SEC has not established that its withheld materials were prepared in anticipation of litigation. Courts have reached different conclusions, based on the facts before them, as to when SEC "investigative activity blossomed into litigation or trial preparation." *National Student Marketing Corp.*, 1974 WL 415, at *9. In that case, only materials created after the preparation of a draft memorandum recommending an injunction action were held to be prepared in anticipation of litigation. *Id.* Materials prepared by SEC, even those that may suggest violations of the law, that are "exploratory in nature" are not clearly prepared in anticipation of litigation. *National Student Marketing Corp.*, 1974 WL 415, at *9. In another case, certain materials prepared even before the issuance of an SEC formal order of investigation were held to be prepared in anticipation of litigation – but there, SEC was able to support its contention with the contents of an internal memorandum reviewed by the Court. *S.E.C. v. Nacchio*, No. CIV.A. 05-CV-00480MS, 2007 WL 219966, at *7 (D. Colo. Jan. 25, 2007).

To establish the applicability of the work-product doctrine, SEC must provide information to "establish the precise purpose of the notes, whether a decision had been made to

---

[4] The work-product protection is qualified and may be overcome by a showing of substantial need and undue hardship. *Hobley v. Burge*, 433 F.3d 946, 949-50 (7th Cir. 2006). It has not been established that any materials are protected by the doctrine; Defendants therefore do not at this time argue substantial need, but reserve the right to bring such an argument at a later time if any documents are held to be work product.

litigate at the time they were created, whether the Commission was contemplating other alternatives at the time, and whether their notes were treated with the requisite confidentiality." *S.E.C. v. Thrasher*, No. 92 CIV. 6987 (JFK), 1995 WL 46681, at *3 (S.D.N.Y. Feb. 7, 1995), *aff'd*, No. 92 CIV. 6987 (JFK), 1995 WL 456402 (S.D.N.Y. Aug. 2, 1995).

SEC has not done that. SEC's privilege log does not demonstrate that any of the documents in question were prepared in anticipation of litigation. Four months after providing its discovery responses, SEC produced a revised privilege log that contains only 65 entries. The log asserts work-product protection for documents prepared as far back as February 2016 by both attorney and non-attorney employees of the SEC Office of Compliance Inspections and Examinations ("OCIE") (Ex. 6, Log No. 61). These documents predate the involvement of the SEC Division of Enforcement in the examination.

The log extends to materials prepared on May 30, 2019, the day before the SEC issued its first Wells notice in this case, whereby it notified Defendants that the SEC staff were recommending litigation (*Id.,* Log No. 45). There is nothing in the privilege log to suggest SEC drafted any memorandum such as the one reviewed in *Nacchio* to determine that litigation was reasonably anticipated, but if it did, the earliest possible date for such a memorandum is August 1, 2018, per Privilege Log Entry No. 48, which identifies, without any sufficient description, an undefined number of "draft memoranda… containing legal recommendation and legal analysis of SEC attorneys…"

The vague and categorical nature of SEC's privilege log makes evaluation of SEC's claims of work-product protection impossible. Rule 26(b)(5) requires a party asserting claims of privilege to provide detailed information that "will enable other parties to assess the claim." SEC has not done so, and to the extent that it may now seek to provide that information to the Court

after providing an inadequate log, that step would be too little, too late. At best, one can speculate, based on SEC's categorical and overly general privilege log, about when litigation was reasonably anticipated by SEC. Speculation is not a sufficient basis to uphold privilege assertions. *Thrasher*, 1995 WL 46681 at *4.

Further, SEC's own conduct in the investigation demonstrates that witness interviews were not conducted *because* of litigation – even the one of Philip Skrade in May 2019, immediately before SEC sent its first Wells Notice. On May 10, 2019, SEC sent to Mr. Skrade a subpoena seeking documents, as well as his formal testimony (taken in June 2019). The cover letter stated:

> *Has the Commission determined that anyone has done anything wrong?*
>
> This investigation is a non-public, fact-finding inquiry. We are trying to determine whether there have been any violations of the federal securities laws. The investigation does not mean that we have concluded that anyone has violated the law. Also, the investigation does not mean that we have a negative opinion of any person, entity or security.

Ex. 26, p. SEC-SEC-E-0013515. In order to induce Mr. Skrade's cooperation, SEC affirmatively represented that it was conducting a "fact-finding inquiry," and had not reached any conclusions. SEC should not be allowed to, on the one hand, induce witness cooperation by claiming it is engaged in a mere investigation and then turn around and claim that materials collected through those assertions were generated *because of* anticipated litigation. SEC consistently issued letters containing such statements over the course of its investigation, per the documents produced by SEC in discovery. Romashko Dec., par. 4.

Nor has SEC established that it kept materials confidential, which is also fatal to its assertions of privilege. *See Thrasher*, 1995 WL 46681, * 3; *see also Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prod., LLC,* No. 09-C-0916, 2011 WL 5828039, at *2 (E.D. Wis. Nov. 18, 2011) (disclosure of work product extinguishes protection unless there is reason to

think that the receiving party will keep the work product confidential). SEC's privilege log does not identify at all the recipients of the memoranda or participants in the interviews in question. In fact, Log No. 54 references only "[t]housands of Emails regarding investigation strategy and enforcement recommendations containing confidential communications, mental impressions and opinions of SEC Division of Enforcement Attorneys." Ex. 6.[5] There is no specificity as to with whom any such materials were shared.

Further still, SEC has waived privilege with respect to interview notes and memoranda. SEC disclosed transcripts of formal testimony taken of various witnesses. One of the reasons that interview notes and memoranda may be work product is that they "reflect the questions counsel chose to ask," and that simply deciding what questions to ask could reveal attorney mental impressions. *See Cicel (Beijing) Sci. & Tech. Co. v. Misonix, Inc.,* 331 F.R.D. 218, 232 (E.D.N.Y. 2019). That reasoning applies with equal force to verbatim transcripts; SEC has therefore disclosed transcripts of witnesses including an appraiser, Amiran employees, and third-party accountants. SEC has chosen to disclose some of what it might claim is work product. Such selective disclosure is not allowed. Federal Rule of Evidence 502 provides that disclosure of a matter covered by work-product protection waives protection over undisclosed communications or information concerning the same subject matter that ought to in fairness be considered with the disclosed materials. SEC therefore waived protection with respect to the subjects of testimony of witnesses whose transcripts it disclosed; the interview notes, both of those witnesses and other witnesses concerning similar topics, should therefore be disclosed.

---

[5] SEC represented in its July 2, 2020 letter (Ex. 21, p. 4) that it does not have a full count of those emails – that Chris White's inbox contained at least 8,000 responsive emails, and that SEC would not go to the effort of identifying the total number of emails in the inboxes of other individuals. Based on SEC's unwillingness to identify even the number of such emails, it is unclear if SEC has even reviewed the communications of its staff and attorney to determine whether materials were kept confidential.

Finally, interview notes and memoranda should be disclosed because they are *Brady* material.[6] In criminal cases, prosecutors are required to disclose material exculpatory evidence. *Brady v. Maryland*, 373 U.S. 83, 86-87 (1963). The Court held that "[s]ociety wins not only when the guilty are convicted but when criminal trials are fair." *Id.* at 87. This principle is equally true with respect to civil cases – it is without question that society is harmed if the government obtains civil remedies by means of an unfair trial. SEC proceedings are in part, punitive in nature, *see Kokesh v. SEC,* 137 S.Ct. 810 (2017), making them more analogous to criminal cases than many other kinds of civil litigation.

Several courts have held that *Brady* may apply in civil proceedings related to agency actions. *See Demjanjuk v. Petrovsky,* 10 F.3d 338 (6th Cir. 1993)*; Sperry & Hutchinson Co. v. FTC,* 256 F.Supp. 136 (S.D.N.Y.1966); *see also Equal Employment Opportunity Commission v. Los Alamos Constructors, Inc.,* 382 F. Supp. 1373 (D. New Mexico 1974) ("A defendant in a civil case brought by the government should be afforded no less due process of law" than allowed by *Brady*). Although some other courts have been reluctant to extend *Brady* to civil cases, the question is not settled.

Further, the SEC, presumably, agrees as a matter of policy that *Brady* rights should be afforded in its enforcement actions. It has adopted a civil analogue to the *Brady* doctrine in its administrative proceedings. *See* 17 C.F.R. sec. 201.230(b)(3) (SEC may not withhold material exculpatory information as privileged). While this rule does not bind this Court, and Defendants have identified no case discussing its applicability to District Court proceedings instituted by the SEC, it is incongruous that SEC may not withhold *Brady* material on privilege grounds if it chooses to bring its action in an administrative forum, but that it could do so by instead filing

---

[6] It is significant that SEC did not seek formal testimony of most of the witnesses it interviewed, suggesting strongly that the information they provided was not helpful to SEC's allegations.

litigation in District Court. It cannot be that the forum in which SEC chooses to enforce the law should allow it to hide material exculpatory evidence.

### (2)   Deliberative Process Privilege does not Apply

Deliberative process privilege protects documents "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). In order for the privilege to apply, however, the documents must be both "'predecisional'—generated before the adoption of an agency policy—and 'deliberative'— reflecting the give and take of the consultative process." *Holmes v. Hernandez*, 221 F. Supp. 3d 1011, 1016 (N.D. Ill. 2016) (citations omitted). This means that the privilege does not extend to "factual or objective material," or to documents that "an agency adopts ... as its position on an issue." *Id.; see also SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 416 (S.D.N.Y. 2009). Interview memoranda and notes are not in any sense deliberative. They are factual material not protected by the doctrine.

### (3)   Attorney-Client Privilege does not Apply

The attorney-client privilege protects communication made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice. *Sandra T.E. v. South Berwyn School Dist. 100,* 600 F.3d 612, 618 (7th Cir. 2010). The analysis is "(1) whether 'legal advice of any kind [was] sought ... from a professional legal adviser in his capacity as such'; and (2) whether the communication was 'relat[ed] to that purpose' and 'made in confidence ... by the client.'" *Id* (internal citation omitted).

The SEC has no basis for asserting attorney-client privilege for interview memoranda and notes. The witnesses in these interviews were not giving statements to the SEC attorneys for the purpose of obtaining legal advice. The SEC's privilege log does not reflect any communication

17

of these statements among persons at SEC at all, or that any legal advice was reflected in any memoranda or interview.

### iii. SEC's Categorical Privilege Log Entries are Insufficient to Support the Asserted Privileges

With respect to documents and communications other than interview notes and memoranda, SEC has refused to log documents individually, instead grouping documents into broad categories without indication of how many documents are in said categories, supported only by bare assertions that various privileges apply to all such documents. Categories of documents so identified include, among others: "compilations of documents by SEC Division of Enforcement Attorneys," (Ex. 6, Log No. 53), "thousands of emails regarding investigation strategy and enforcement recommendations containing confidential communications, mental impressions, and opinions of SEC Division of Enforcement Attorneys and accounts," (*Id.,* Log No. 54), and internal emails between SEC OCIE (not Enforcement) staff (*Id.,* Log No. 58). With respect to every such category, SEC's log lacks specificity and its claims of privilege should be deemed waived.[7]

As stated above, a party claiming protection for work product or privilege must provide sufficient information for other parties and the Court to assess the claim. Rule 26(b)(5). This language is ordinarily understood to require an itemized privilege log. *See S.E.C. v. Thrasher,* No. 92 CIV. 6987 (JFK), 1996 WL 125661, at *1 (S.D.N.Y. Mar. 20, 1996) ("Typically, a privilege log must identify each document being withheld … and provide basic information, including the author, recipient, date and general nature of the document."). Less detailed disclosure may be made in "appropriate" cases; in *Thrasher,* the court suggested that this was appropriate where (a) a document-by-document listing would be unduly burdensome and (b) the

---

[7] Defendants do not seek production of documents identified in Log No. 46, referencing Bank Secrecy Act reports.

additional information to be gleaned from a more detailed log would be of no benefit to the discovering party in assessing whether the privilege claim is well grounded. Where courts have allowed the use of categorical logs, they have made clear that such logs "must justify… assertion of privilege with regard to each category, and the description of each category must provide sufficient information… to assess any potential objections to the assertions of attorney-client privilege." *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 255 F.R.D. 98, 109 (S.D.N.Y. 2008).

SEC has failed to meet this standard. SEC has claimed item-by-item logging of documents is unduly burdensome, but it has failed to identify the number of documents it would be required to log in anything but the vaguest terms. SEC asserts that logging documents individually would not allow Defendants or the Court to assess potential objections to the SEC's claims of privilege, but that is simply false where SEC has failed to disclose even the general subjects of any communications or with whom they were shared.

For example, SEC asserts that the FBI shared with it "non-grand jury information regarding the DOJ's criminal investigation."[8] Ex. 6, Log No. 64. SEC asserts that this information is protected by the "Law Enforcement Privilege, Deliberative Process Privilege, Attorney Work Product, Work Product, and Attorney-Client Privilege." No specific senders or recipients are identified – rather, "email chain participants" including ten SEC employees as well as unspecified DOJ personnel are listed. No subject matter of any communication is disclosed, no file names of documents shared (or even whether documents were shared), and there is no factual information to support the elements of any of the privileges identified.

The asserted privileges cannot be adequately supported by the log provided. As described with respect to interview memoranda, the SEC has failed to support its assertions of

---

[8] Defendants do not address every single one of SEC's categorical entries; they all suffer the same problems as the example entry, identifying the materials withheld by broad assertions of the elements of the privileges asserted, without any underlying factual information allowing the evaluation of whether those elements are actually met.

work-product doctrine, attorney-client privilege, and deliberative process privilege generally. It is simply not possible that all of these privileges apply to *every single* communication with the Department of Justice. For example, if DOJ shared with SEC a document it obtained from a witness, even if the communication transmitting the document contained information subject to any of the above privileges, it is unclear how the document itself could be cloaked in privilege. Similarly, if an email received from a witness was forwarded by DOJ to SEC, there is no reason to think the witness's own email would be privileged.

That leaves only the law enforcement privilege, not addressed above, as a possible source of protection, but again, that privilege's elements have not been supported and are not met. "The purpose of the law enforcement privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation. *MacNamara v. City of New York*, 249 F.R.D. 70, 78 (S.D.N.Y. 2008). The D.C. Circuit has defined the elements as follows: "[t]o sustain the claim, three requirements must be met: (1) there must be a formal claim of privilege by the head of the department having control over the requested information; (2) assertion of the privilege must be based on actual personal consideration by that official; and (3) the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege." *In re United Telecommunications, Inc. Sec. Litig.*, 799 F. Supp. 1206, 1208 (D.D.C. 1992). If the privilege is asserted, it is qualified, and can be overcome via a showing of substantial need, to be weighed against numerous factors. *Id.*

SEC's categorical log cannot establish the above elements or provide any information against which any factors could be weighed. Without some indication of what the subjects of

communications are, and some factual support for why *all such communications* fall within the scope of the privilege, the test cannot be met. It is highly unlikely that every communication would, for example, disclose law enforcement techniques and procedures; and to the extent SEC itself has disclosed the names of potential witnesses in this case in its initial disclosure, it is unclear how the privacy of such individuals now needs to be safeguarded.

SEC's log, produced after months of back and forth between the parties, contains a scant 65 entries, none of which does more than assert the bare elements of privileges identified. This log is wholly insufficient, and SEC has not voluntarily remedied it. The Court should hold that SEC has waived its privilege assertions and order that the underlying documents be produced, or, in the alternative, compel the prompt production of an item-by-item log.

### iv. SEC's Boilerplate Objections on Grounds of Burden, Breadth, and Proportionality are Unsupported and Waived

Rule 34 provides that objections must "state with specificity the ground for objecting." That means more than just stating the objections, but also providing some supporting detail. *See Encap, LLC v. Scotts Co., LLC*, No. 11-C-685, 2014 WL 4072111, at *4 (E.D. Wis. Aug. 14, 2014) (deeming inadequate objections that interrogatories were "vague, ambiguous, overly broad, unduly burdensome, and seeks information that is not relevant to the issues in this case nor reasonably calculated to lead to the discovery of admissible evidence").

The SEC has raised a generic, usupoorted objection that requests are "overbroad, unduly burdensome, and disproportionate to the needs of this case." This boilerplate objection is stated 15 times in SEC's Response. First as to the definition of "Plaintiff" stated in the Requests for Production and then in response to requests 1, 3, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 19, and 20.

In the fourteen instances where SEC makes this objection as to specific discovery requests, only once is *any* explanation provided. In response to Request No. 3, SEC identifies

that the request is overly broad, unduly burdensome, and disproportionate "in that it requests documents 'quoted, referenced, or otherwise cited by SEC in any filing in any other court case relevant to Defendants.'" SEC counsel is fully aware that SEC filed multiple pleadings in the United States Bankruptcy Court for the Eastern District of Wisconsin; those documents would be responsive to this request. There is no other pending SEC litigation concerning Defendants or their affairs.

SEC has offered no other support for the notion that the requests are otherwise "overbroad, unduly burdensome, and disproportionate to the needs of this case." SEC's FAC is over 100 pages long, and alleges an over $100-million fraud. SEC offers no indication of the burdens of responding to any of these requests, or how they are otherwise overbroad, and the unsupported objection is therefore waived in every instance.

> **v.    SEC's Boilerplate Relevance Objections are Unsupported and Without Merit**

SEC also objects to numerous Requests for Production as irrelevant. The relevance objections are stated as to the following Requests:

- Request No. 3: "All documents quoted, referenced, or otherwise cited by SEC in any filing in any other court case relevant to Defendants, including, without limitation, any bankruptcy proceeding presently pending in the United States Bankruptcy Court for the Eastern District of Wisconsin."

- Request No. 8: "All material shared with SEC by any other state or federal agency in relation to this case including, without limitation, any material obtained from the United States Department of Justice ("DOJ")."

- Request No. 9: "All referrals made by SEC to the DOJ, Federal Bureau of Investigation ("FBI"), any United States Attorney Office ("USAO") or any other state or federal agency in relation to this case, including any materials attached thereto or provided to those agencies in furtherance thereof."

- Request No. 10: "All notes, memoranda, correspondence, and instructions between the SEC and DOJ, FBI, or any USAO regarding, relating to, or in any way involving Defendants."

22

- Request No. 11: "All information received from DOJ or any other state or federal agency in relation to this case and any decision to decline to prosecute any Defendant as to any matter, and any documents reflecting or relating to such information."

- Request No. 14: "All documents provided to SEC, FBI, DOJ, or any USAO in relation to any investigation of any Defendant in this matter by Pamela Kirchen, as well as any written correspondence or documents provided to, or exchanged with, Ms. Kirchen."

- Request No. 15: "All FBI, DOJ, or USAO witness interview transcripts, '302' memoranda, or other memoranda relative to Defendants."

- Request No. 16: "All FBI, DOJ, or USAO documents, including, but not limited to, 302s, memoranda of interview, records, testimony, or statements regarding Defendants."

- Request No. 17: "All information obtained by FBI, DOJ, or USAO from any party other than relative to the SEC or other investigations relating to Defendants."

The relevance of each of these requests is obvious.

With respect to Request No. 3, SEC has made numerous filings in the related bankruptcy case before the Eastern District of Wisconsin, alleging substantially the same facts it alleges in this case. *See, e.g., In re Greenpoint Tactical Income Fund LLC,* No. 19-bk-29613 (Bankr. E.D. Wis.), Dkt. 17. Further, SEC has filed an adversary proceeding in that matter, regarding the relief it hopes to obtain in this case. *SEC v. Greenpoint Tactical Income Fund LLC et al.,* No. 20-ap-2005 (Bankr. E.D. Wis.). The matters obviously share the same factual nexus and what is relevant in one is relevant in another.

SEC has maintained in the meet and confer process that any document not in SEC's investigative file and/or not relied upon by the SEC is not relevant. That position is flatly contrary to the legal definition of relevance. A party may have discovery "on any matter relevant to any party's claim or defense and proportional to the needs of the case." FRCP 26(b)(1). SEC

asserts, for example, that communications between it and the DOJ are not relevant, but if those communications reveal information relevant to any claim or defense, they would be relevant. SEC made a referral to the DOJ, and information about that referral and its subjects made was eventually included in a search warrant affidavit filed by FBI Special Agent Pettigrew. Ex. 24. The affidavit makes clear that the subjects of the DOJ investigation were the same as the subjects of SEC's Complaint. SEC has lodged other objections to production of these materials, but the relevance of materials generated in the DOJ investigation is not seriously in question.

### vi.   SEC Should be Compelled to Provide Information Regarding the Scope of its Search and Production

SEC's failure to cooperate in discovery extends to matters that should be straightforward. Defendants requested, in their very first Request for Production, "[a]ll portions of the SEC's investigative file relevant to any issue identified in the Complaint" SEC responded to the First Request for Production by stating, in part, "[t]he SEC's document production includes *what we regard* as the staff's investigative file in this matter…" (emphasis added). The SEC then repeated that phrasing in response to Requests for Production Nos. 2, 3, 6, 8, 13, 14, 18, 19, and 20.

During the meet and confer process, Defendants' counsel asked SEC what the phrase "what we regard as the staff's investigative file…" meant. Defendants' counsel advised that it meant the investigative file defined by SEC in its own published materials, citing Section 3.2.9 of the SEC Enforcement Manual, and the Office of Administrative Law Judges' published "Instructions for Respondents." SEC counsel nevertheless refuses to identify what SEC is internally "regarding" as its investigative file in this case, making it impossible to determine if the scope of SEC's search is reasonable or appropriate. SEC should be compelled to provide information regarding what exactly is within – and what is outside of – the scope of what it regards as its investigative file.

### vii.    SEC Should be Compelled to Itemize Documents Produced in Response to Requests Seeking Documents Relevant to Complaint Allegations

Rule 34(b)(2)(E)(i) provides that "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." SEC asserts that it has produced documents in the usual course of its business in that it has produced documents as they were produced to SEC and maintained. *See, e.g.* Ex. 3, pp. 2-3. In this context, SEC's reliance on an "usual course" production alternative is improper. That production alternative is not available for SEC investigative files. The SEC's "conducting an investigation—which is by its very nature not routine or repetitive—cannot fall within the scope of the 'usual course of business.'" *S.E.C. v. Collins & Aikman Corp.*, 256 F.R.D. 403, 412–13 (S.D.N.Y. 2009) (rejecting that SEC could rely on usual course production and requiring responses to be itemized accordingly); *see also SEC v. Kovzan*, No. 2:11-cv-02017, Memorandum Opinion and Order [Dkt. 89] (D. Kan., July 31, 2012) (declining to follow *Collins & Aikman Corp.* but nonetheless ordering SEC to identify documents responsive to specific requests). Thus, SEC should be ordered to organize its responses by the categories requested.[9]

### viii.    SEC Should be Compelled to Produce Materials Related to Valuations Obtained in its Pre-Complaint Investigation, if any

Defendants' Request No. 12 seeks production of valuation information as follows:

> All valuations, appraisals, or opinions obtained as to the value of any asset or company referenced in the Complaint or held by the Greenpoint Funds, and:
> a.    All contracts with any person requested to issue such an opinion or report;
> b.    Any materials furnished to or received from said person.

---

[9] This is especially important with respect to Requests No. 2, 3, 18, 19, and 20, which request documents support Complaint allegations; the Complaint (and FAC) do not contain specific information allowing Defendants to be sure which version of any given document SEC relies upon.

SEC objects on grounds of privilege, and on two other grounds. SEC objects to the Request "to the extent it seeks information or documents protected by [FRCP] 26(b)(4). The SEC will comply with the expert discovery schedule as outlined in the Preliminary Pretrial Conference Order. The SEC will comply with [FRCP] 26(a)(2)." Rule 26(b)(4) protects draft expert reports and, to an extent, communications with experts. Rule 26(a)(2) provides the rules for expert disclosures.

If such materials were generated by SEC in an investigative capacity rather than because of the prospect of litigation, or before litigation was anticipated, then they are by their very nature not materials intended for use in litigation and are outside the scope of the cited rule. Further, SEC has not logged any such materials in its privilege log. *See* Ex. 6. Rule 26(b)(5) provides that when a party "withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must…" provide sufficient information about what is being withheld to allow other parties and the Court to assess the claim. In fact, SEC has not even identified, as required by Rule 34(b)(2)(B), whether such materials have been withheld or not. If they have, SEC has failed to address them in a privilege log, and privilege protection is waived.

### B.   SEC'S RESPONSES TO INTERROGATORIES ARE INADEQUATE

SEC responded to Defendants' initial 12 interrogatories with a 99-page response. Ex 4. SEC has asserted repeatedly in the meet and confer process that the voluminous nature of this response demonstrates its adequacy. But the Responses to Interrogatories provided by SEC are inadequate because, aside from the assertion of meritless objections, SEC has not responded to

the actual interrogatories themselves, for the most part copying and pasting relevant paragraphs of the Complaint[10] into the response, and omitting the specific information requested.

SEC objects on privilege grounds to all of the interrogatories. To the extent that these privilege objections are supported by SEC's privilege log, the log is, again, inadequate for the reasons stated above. However, as addressed below, SEC has also waived privilege assertions to the extent that information responsive to the interrogatories is not identified in the log.

### i.    Interrogatory No. 1

Defendants' first Interrogatory states:

> Identify all communications with any persons interviewed or contacted in relation to: the above-captioned case; any related litigation; the SEC's examination of Bluepoint Investment Counsel, LLC, number C-8024; its pre-complaint investigation of Bluepoint Investment Counsel, number C-8331; or the parallel investigation of Defendants conducted by the United States Department of Justice ("DOJ"); and identify the substance of those communications. Persons with whom communications should be identified include, without limitation: Defendants and the Greenpoint Funds; their current or former employees; current or former employees of any company in which Defendants or the Greenpoint Funds invested; independent contractors used by Defendants or the Greenpoint Funds; persons who engaged in or contemplated transactions with Defendants or the Greenpoint Funds; vendors used by Defendants or the Greenpoint Funds; Defendants' or the Greenpoint Funds' investors or clients; and any other person from whom information relevant to the Complaint in the above-captioned case (the "Complaint") was received or developed.

SEC objected as follows:

> The SEC objects to the interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of this case because it requests the identification of communications and substance thereof with any persons interviewed or contacted beyond those communications with respect to the above-captioned litigation and related investigation under the title Bluepoint Investment Counsel, LLC (C-8331). The SEC objects to this interrogatory as seeking information beyond the scope of Federal Rule of Civil Procedure 26(b) because it requests identification of any communications and the substance of those communications with any persons interviewed or contacted in relation to the "SEC's examination of Bluepoint Investment Counsel, LLC, number C-8024;" "any related litigation;"

---

[10] The Response to Interrogatories was served prior to the filing of the FAC.

or "the parallel investigation of Defendants conducted by the United States Department of Justice ("DOJ")."

The SEC further objects to this interrogatory as calling for the production of information subject to the attorney-client privilege, law enforcement privilege, deliberative process privilege, and/or work product privilege.

Subject to and without waiving these objections, pursuant to Federal Rule of Civil Procedure 33(d), the SEC directs Defendants to the testimony transcripts identified in the SEC's initial disclosures.

First, SEC's objection that the interrogatory is "overbroad, unduly burdensome, and disproportionate" is an unsupported boilerplate objection for the reasons described above. Second, SEC's privilege objections are not supported and waived given the inadequacies in SEC's log. Moreover, the request seeks identification of "communications." SEC logged only written communications and documents; SEC did not log any telephonic, in-person, or similar communications. The fact of such communications is not privileged, and even if it was, no privilege log entry even hints at the existence of such communications. SEC has waived privilege with respect to any such communications and should be ordered to disclose them.

### ii.       Interrogatory No. 2

Defendants' second Interrogatory states

Identify all communications with persons interviewed or contacted by the Federal Bureau of Investigation ("FBI"), DOJ, or any United States Attorney's Office ("USAO") in relation to any investigation of Defendants or the Greenpoint Funds. Persons with whom communications should be identified include, without limitation: Defendants and the Greenpoint Funds; their current or former employees; current or former employees of any company in which Defendants or the Greenpoint Funds invested; independent contractors used by Defendants or the Greenpoint Funds; persons who engaged in or contemplated transactions with Defendants or the Greenpoint Funds; vendors used by Defendants or the Greenpoint Funds; Defendants' or the Greenpoint Funds' investors or clients; and any other person from whom information relevant to the Complaint in the above-captioned case (the "Complaint") was received or developed.

SEC's objected as follows:

The SEC objects to this interrogatory as seeking information beyond the scope of Federal Rule of Civil Procedure 26(b).

28

The SEC objects to this interrogatory as seeking information that is not in its custody, control, or possession.

The SEC further objects to this interrogatory as calling for the production of information subject to the attorney-client privilege, law enforcement privilege, deliberative process privilege, and/or work product privilege.

These objections do not withstand scrutiny. SEC's citation to Rule 26(b), without some explanation, is an invalid, boilerplate objection. And again, SEC argues that information held by DOJ is not in SEC's possession. For the reasons stated above, it is.

However, even if it were not, SEC fails to adequately disclose information that its attorneys were specifically aware of. The request calls for identification of all communications with persons interviewed or contacted by DOJ. Such information was conveyed to SEC attorneys, and SEC has such information directly within its knowledge.[11] A document produced by SEC indicates that at least one witness, Pamela Kirchen, informed SEC counsel (through her counsel) that she was first interviewed by the USAO before being interviewed by SEC. See Ex. 27, p. SEC-SEC-E-0010603. Yet this interview was not identified. Defendants instead learned of it reviewing SEC's document production. To the extent that DOJ or a witness similarly informed SEC, SEC has that knowledge without even asking DOJ, and it should have been disclosed notwithstanding SEC's objection.

Further, the request calls for identification of all communications, not just documents; SEC asserted privilege and provided a log identifying only documents (and only SEC's communications with FBI and DOJ). To the extent that SEC was aware of communications between DOJ and witnesses and asserts privilege over their contents, those communications with witnesses had to be logged regardless of whether they were in document form. SEC has waived these objections as to such communications not identified in its log.

---

[11] SEC's privilege log fails to log any such communications, and privilege with respect to any such communications is now waived.

### iii.  Interrogatories No. 3 and 4

Defendants' third Interrogatory states:

Identify all communications with the FBI, DOJ, or any USAO, including but not limited to communications with Assistant United States Attorneys Darren Halverson and Meredith Duchemin and FBI Special Agent Allen J. Pettigrew, in relation to any referral by SEC for investigation of Defendants or the Greenpoint Funds, including, but not limited to: the application for search warrants filed in the Eastern District and Western District of Wisconsin in or about March 2017; and the seizure and inventories or evaluations of gem and mineral assets of Defendants and the Greenpoint Funds or held in the vault of Greenpoint Tactical Income Fund, LLC or at related premises.

Similarly, Interrogatory No. 4 states:[12]

Identify all communications between SEC and FBI, DOJ, or any USAO, including but not limited to communications with Assistant United States Attorneys Darren Halverson and Meredith Duchemin and FBI Special Agent Allen J. Pettigrew, in relation to any investigation of Defendants. This request includes, without limitation: communications relating to any referrals made by SEC; any grand jury investigation of or declination to prosecute any Defendant; any DOJ or FBI decision to decline prosecution or close any investigation into any party; and identification of the dates on which SEC was advised of any determination by DOJ or FBI to release assets of Defendants of the Greenpoint Funds seized in March 2017, and related information provided to SEC concerning results or outcomes of all DOJ/FBI evaluations of Defendants' seized assets, and identification of any related documents provided to SEC.

SEC responded to both requests as follows:

The SEC objects to this interrogatory as seeking information beyond the scope of Federal Rule of Civil Procedure 26(b).
The SEC further objects to this interrogatory as calling for the production of information subject to the attorney-client privilege, law enforcement privilege, deliberative process privilege, and/or work product privilege.

Again, these objections are not valid.

The Rule 26(b) objection is again unsupported boilerplate. The Pettigrew affidavit makes

clear that the DOJ investigation covered the same subject matter as the Complaint. Ex. 24. Given

---

[12] Interrogatory No. 4 is very similar to No. 3, but focuses on the DOJ investigation, rather than SEC's referral to DOJ.

that DOJ was seeking to gather information relevant to the same matters as SEC has pleaded in its Complaint, communications between DOJ and SEC will contain relevant information.

SEC's other basis for failing to respond was its privilege objections, but again, these are not adequately supported by SEC's log. Moreover, the categorical nature of SEC's privilege log obscures nonprivileged information that should be plainly discoverable; to the extent that DOJ obtained factual documents shared with SEC, those should be disclosed. SEC's privilege log, which fails to identify specific communications, does not reveal if any such facts were actually transmitted to SEC or not, because it cloaks all communications with the DOJ in generic assertions of privilege and does not disclose even the subjects of the communications.

Defendants sought, for example, information concerning when DOJ informed SEC that it was declining to prosecute. Regardless of the claim that the substance of such a communication may be privileged, the fact of the communication is not. That information may be relevant to numerous issues, including the conduct of witnesses (one of the labs whose valuations are cited by the SEC in its FAC worked on DOJ's investigation of Defendants before providing said valuations) and the validity of SEC's privilege assertions with respect to other documents.

### iv.    Interrogatory No. 5

Defendants' fifth Interrogatory states:

Identify all bases for the contention, stated at Paragraph 5 of the Complaint, that "gains are largely fictitious."

SEC responded as follows:

The SEC objects to the interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of this case. The SEC further objects to this contention interrogatory pursuant to Federal Rule of Civil Procedure 33(a)(2).
The SEC will supplement its answer to this interrogatory once fact discovery has progressed.
Subject to and without waiving these objections, pursuant to Federal Rule of Civil Procedure 33(d), the SEC directs Defendants to the financial statements of Greenpoint Tactical Income Fund; the Accountant Compilation

31

>Reports for Greenpoint Tactical Income Fund; the general ledger for Greenpoint Tactical Income Fund; the valuation reports for Amiran Technologies Inc.; the appraisals for the gems and minerals; the testimony transcripts of Michael Hull, Christopher J. Nohl, William Metropolis; the production by BMO Harris.

SEC's objections are without merit and the response provided is inadequate. Again, SEC raises an improper boilerplate objection of burden, which is waived. Nor is it clear how requiring the SEC to explain its own complaint allegation could possibly be overbroad, unduly burdensome, or disproportionate. SEC is required, under Rule 11, to have some basis for the allegation. It should be so identified.

Further, SEC's objection that this is a premature contention interrogatory pursuant to Rule 33(a)(2) and therefore need not be answered yet is baseless. Rule 33(a)(2) states that the Court may order that a premature contention interrogatory need not be responded to until later in discovery. But operation of that rule is not mandatory. One court has noted that an objection that discovery has only just begun, made to a contention interrogatory seeking information about the basis for a complaint allegation, "makes no sense at all." *U.S. ex rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 646, 650 (C.D. Cal. 2007). SEC is entitled to refine and bolster a theory over the course of discovery, but the notion that it should not have to disclose the bases of statements it has already put forward in the Complaint is without merit.

To the extent SEC did respond, that response is inadequate. SEC's response cites to broad sets of documents, constituting thousands of pages, none of which obviously supports on its face the SEC's claims. Unsurprisingly, the testimony transcripts cited do not contain any admission that gains were fictitious; nor do the appraisals cited contain any obvious basis for declaring the gains based on those appraisals fictitious. SEC effectively says, in response to this interrogatory, "review the evidence." But the rules permit interrogatories demanding a party's views of the evidence, and SEC is required to respond to a valid interrogatory on same.

### v.        Interrogatory No. 6

Defendants' sixth Interrogatory states:

Identify each and every instance in which you contend, as stated at Paragraphs 40-41 of the Complaint, that Hull made a false or misleading representation to any of Bluepoint's clients, including the recipient of the representation, the content of the representation, the date of the representation, and the manner of said representation.

SEC objected and responded as follows:

The SEC objects to the interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of this case. The SEC further objects to this contention interrogatory pursuant to Federal Rule of Civil Procedure 33(a)(2). The SEC will supplement its answer to this interrogatory once fact discovery has progressed.

Subject to and without waiving these objections, pursuant to Federal Rule of Civil Procedure 33(d), the SEC directs Defendants to communications from investors requesting redemptions and discussing representations made to them by Bluepoint and Hull.

Subject to and without waiving these objections, the SEC states Bluepoint through Hull recommended to all of Bluepoint's individual clients that they invest in the Greenpoint Funds. Hull made these recommendations without regard for the individual investor's needs and circumstances. Hull recommended to the majority of Bluepoint's individual clients that they invest all assets managed by Bluepoint in the Greenpoint Funds. Hull and, through him, Bluepoint made verbal false and misleading representations to Bluepoint's individual clients. Hull falsely stated that investments in Greenpoint Tactical Income Fund (1) were safe, (2) would generate high returns, and (3) could be withdrawn as needed. These were material misrepresentations and omissions by Hull and Bluepoint because the investments were not safe and the reported returns were inflated. Furthermore, the investors' funds could not be withdrawn as needed. Redemption requests by investors have been delayed or unfulfilled, and when they are fulfilled, it is when funds are received from new investors. Hull also falsely represented to Bluepoint's clients that Greenpoint Tactical Income Fund was actively selling minerals and often had arranged a sale of the mineral before the Fund even committed to purchase the mineral. Greenpoint Tactical Income Fund did not often have sales arranged before even committing to a purchase.

The stated objections fail for the same reasons as the objections to Interrogatory No. 5. They are boilerplate and do not address that SEC was required to have some basis for its Complaint allegations, and there should be no obstacle to disclosure of same.

Nor is SEC's response adequate. Defendants requested that SEC identify the communications containing misrepresentations allegedly made by *Hull*. This identification was to include the recipient, content, date, and manner of communication. SEC directs Defendants to unspecified communications "from investors requesting redemptions and discussing misrepresentations made to them by Hull." Putting aside that SEC's response effectively tells Defendants only that the information is somewhere within their own emails, at best, this identifies investors who were disgruntled. Neither it, nor the following paragraph, identifies with any specificity the time, recipients, or manner of such representations. If SEC intends to at some point prove its case, it will have to come forward with specific communications containing what it alleges are false representations. To the extent it has actually identified any such communications, it should be compelled to disclose them now, with specificity.

### vi.      Interrogatory No. 7

Defendants' seventh Interrogatory states:

> Identify any matter you contend was not but should have been disclosed to investors in any of the Greenpoint Funds, and identify the basis on which you contend a disclosure obligation existed.

SEC asserted the following objections:

> The SEC objects to the interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of this case. The SEC further objects to this contention interrogatory pursuant to Federal Rule of Civil Procedure 33(a)(2). The SEC will supplement its answer to this interrogatory once fact discovery has progressed.

After providing these objections, SEC stated "subject to and without waiving these objections," pursuant to FRCP 33(d), certain information was being provided, and then also provided about 20 pages of factual allegations copied and pasted from the Complaint to answer the question. However, the allegations only address what was allegedly not disclosed but should have been. They do not address "the basis on which you contend a disclosure obligation existed."

34

As to the objections stated, again, the boilerplate objection is waived, and with respect to the contention interrogatory objection, Defendants do not dispute that this is a contention interrogatory; however, SEC has volunteered numerous matters which it contends were not disclosed yet and has identified no basis on which Defendants were obligated to disclose such information. In the meet and confer process, SEC counsel suggested only that "the securities laws" require such disclosure. Obviously the "securities laws" as a whole is an unacceptably broad answer to this question.

Nor can SEC claim that it is not required to make disclosure of the legal basis for these contentions. Rule 33(a)(2) provides that an interrogatory may call for "an opinion or contention that relates to fact or the application of law to fact." Here, Defendants are entitled to know the legal basis on which SEC asserts any given matter should have been disclosed; is SEC alleging a specific statute or regulation requires such disclosure, or that it is required by reference to a case, or to some accounting standard? None of this is answered by SEC.

### vii. Interrogatory Nos. 8 and 11

Defendants' eighth Interrogatory states:

> Identify each asset of any of the Greenpoint Funds or any other affiliate of the Defendants you contend was overvalued, the extent of the alleged overvaluation, and the basis for this contention.

SEC responded as follows:

> The SEC objects to the interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of this case. The SEC further objects to this contention interrogatory pursuant to Federal Rule of Civil Procedure 33(a)(2). The SEC will supplement its answer to this interrogatory once fact discovery and expert discovery have progressed.
>
> Subject to and without waiving these objections, pursuant to Federal Rule of Civil Procedure 33(d), the SEC directs Defendants to quarterly valuation reports for Amiran Technologies, Inc.; the appraisals of gems and minerals that were conducted within the year they were purchased; the Amended and Restated Operating Agreement of Greenpoint Tactical Income Fund, LLC that became effective on November 7, 2013; the financial statements of Greenpoint Tactical

35

Income Fund; the transactions records for sales, trades, and purchases of gems and minerals.

Subject to and without waiving these objections, the SEC states:

The SEC then provided 12 pages of factual allegations, again copied from the Complaint, containing general allegations of overvaluation of assets.

Similarly, Defendants' eleventh Interrogatory requests similar information specifically with respect to valuations of Amiran Technologies, LLC:

Identify all bases for your contentions that any valuations of Amiran Technologies, LLC were false or misleading, including the extent of any alleged overvaluation.

SEC responded similarly:

The SEC objects to the interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of this case. The SEC further objects to this contention interrogatory pursuant to Federal Rule of Civil Procedure 33(a)(2). The SEC will supplement its answer to this interrogatory once fact discovery and expert discovery has progressed.

Subject to and without waiving these objections, pursuant to Federal Rule of Civil Procedure 33(d), the SEC directs Defendants to the financial statements of Greenpoint Tactical Income Fund; the valuation reports for Amiran Technologies, Inc.; the production by BMO Harris; the testimony transcripts of Hull and Nohl.

Subject to and without waiving these objections, the SEC states:

SEC then copied 29 pages of Complaint allegations. Again, SEC's objections have no merit for the reasons stated above. And again, SEC's voluminous responses fail to address the requests as written. These responses fail to identify each asset that was overvalued (with respect to gem and mineral assets), the extent of the overvaluation, and the basis for that contention.

For example, SEC did identify that it asserts that in 2014, Defendants caused 22 minerals to be revalued early, and in 2015, 175 mineral specimens were revalued early. But SEC does not identify the specific specimens (except by reference to the purchase contract for three of these 197 specimens). Defendants can review their records and determine whether they believe such revaluation took place (never mind the propriety of same), but have no way of knowing, absent

36

SEC disclosing which specific minerals it is talking about, whether and to what extent SEC's claims are provable or disprovable.

Similarly, SEC further identifies that it disputes the valuations of Amiran Technologies, LLC. See pp. 29-30. But SEC offers no indication whether it has any contention as to what the correct valuation should have been. If SEC has any such contention, it should so state. The magnitude of any financial discrepancy is unquestionably a fact relevant to whether lack of disclosure is material. *See, e.g., ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.,* 553 F.3d 187, 202 (2d Cir. 2009). SEC has not disclosed what it contends the correct valuations were, merely that it contends they were wrong. Defendants should be provided this information so that they may prepare their defenses accordingly.

### viii.   Interrogatory No. 10

Defendants' tenth interrogatory states:

> Identify all matters you contend were misrepresented to investors or auditors relative to the Greenpoint Funds, including, without limitation, the specific representations and the basis for your contention that the representation was false.

SEC responded as follows:

> The SEC objects to the interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of this case. The SEC further objects to this contention interrogatory pursuant to Federal Rule of Civil Procedure 33(a)(2). The SEC will supplement its answer to this interrogatory once fact discovery has progressed.
>
> Subject to and without waiving these objections, pursuant to Federal Rule of Civil Procedure 33(d), the SEC directs Defendants to the financial statements of Greenpoint Tactical Income Fund; the transactions records for sales, trades, and purchases of gems and minerals; the agreements for loans between Greenpoint Tactical Income Fund, other Greenpoint Funds, managers of Greenpoint Tactical Income Fund, and investors in Greenpoint Tactical Income Fund; the Confidential Investment Letters for Greenpoint Tactical Income Fund; updates and letters to investors; individual communications with investors; offering materials for Greenpoint Tactical Income Fund.
>
> Subject to and without waiving these objections, the SEC states:

SEC then follows with approximately 20 pages of allegations copied from the Complaint.

With respect to the objections, again, these are the same objections that Defendants have repeatedly argued are meritless.

With respect to the categories of documents cited under Rule 33(d), it is unclear how the identified documents are responsive. No specific misrepresentations in these documents are identified. If SEC contends these documents evidence misrepresentations other than those stated in the copied Complaint allegations, it should be ordered to identify those misrepresentations.

ix.     **Interrogatory No. 12**

Defendants' twelfth interrogatory states:

> Identify all bases for the contention, stated in Paragraph 63 of the Complaint, that the "false" contract identified did not accurately state the terms of the subject agreement, and identify any instance in which the "false" contract was held out to any party as a true and correct contract.

SEC's response is as follows:

> The SEC objects to the interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of this case. The SEC further objects to this contention interrogatory pursuant to Federal Rule of Civil Procedure 33(a)(2). The SEC will supplement its answer to this interrogatory once fact discovery has progressed.
> Subject to and without waiving these objections, pursuant to Federal Rule of Civil Procedure 33(d), the SEC directs Defendants to the contract with Marcus Budil, the copy of the contract in Baker Tilly's work papers, Greenpoint Tactical Income Fund's financial statements and general ledger.

These responses are, again, inadequate and the reasons they are have been explained above. With respect to the substantive response provided, SEC was asked to provide information on the basis for its claim that this contract was false and identification of any instance where it was held out as a true and correct copy of the contract. SEC's response is to cite to two copies of the contract (without reference to any specific Bates number or other identifier, which is problematic because there are five copies of the contract in SEC's production), GTIF's financial

statements *en masse*, and GTIF's general ledger. SEC offers no explanation whatsoever as to how any of that supports its contention that there was a false contract. Accordingly, the answer is far from adequate and SEC should be ordered to supplement it.

## III.    CONCLUSION

It has now been six months since Defendants first sought documents and information from SEC. SEC has provided nothing but a document dump, copied and pasted allegations from the Complaint, and a privilege log that is devoid of specificity. None of these disputes were resolved in the meet and confer process, and now Defendants respectfully request that the Court put SEC's dilatory conduct to an end so that the parties may move this case forward.

Defendants therefore respectfully request that this Court grant their Motion to Compel Responses to Interrogatories and Production of Documents.

Dated this 23rd day of July, 2020.

                                    HUSCH BLACKWELL LLP
                                    Attorneys for Defendants


                          By:    */s/ Robert Romashko*
                                    Patrick S. Coffey
                                    State Bar No. 1002573
                                    Robert M. Romashko
                                    State Bar No. 1106485

555 E. Wells Street, Suite 1900
Milwaukee, Wisconsin 53202-3819
(414) 273-2100
(414) 223-5000 (fax)
Robert.Romashko@huschblackwell.com
Patrick.Coffey@huschblackwell.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 23rd day of July, 2020, a true and correct copy of the foregoing was filed and served via the CM/ECF system, to all parties receiving CM/ECF notices in this case.

/s/*Robert Romashko*

Robert Romashko