**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

_____

|  |  |  |
|---|---|---|
| | ) | |
| UNITED STATES SECURITIES | ) | |
| AND EXCHANGE COMMISSION, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.  19-cv-809-wmc** |
| | ) | |
| BLUEPOINT INVESTMENT COUNSEL, | ) | |
| LLC, ET AL., | ) | |
| | ) | |
| **Defendants.** | ) | |

**U.S. SECURITIES AND EXCHANGE COMMISSION'S**
**OPPOSITION TO DEFENDANTS' MOTION TO COMPEL**

## TABLE OF CONTENTS                                                     PAGE

I.      **INTRODUCTION**                                                      1

II.     **ARGUMENT**                                                          1
        A.      **The SEC's Responses to Requests for Production of Documents are     2
                Appropriate**

                1.      **SEC Does Not Have Custody, Possession, or Control of DOJ     2
                        Documents**

                2.      **The SEC's Objections to Requests for Production 1, 3, 13,     7
                        and 18-20 Are Proper**

                3.      **Defendants' Request for Production 12 Improperly Asks for    11
                        Premature Disclosure of Expert Opinions**

                4.      **SEC's Objections to Requests for Production 8-11 and 14-17   12
                        (Related to the DOJ) Are Appropriate**

                        a.      **The Requested Documents Are Irrelevant**            13

                        b.      **The Requests are Overly Broad, Burdensome, and      16
                                Disproportionate to the Needs of the Case**

                5.      **In Compliance with Rule 34(b)(2)(E)(ii), the SEC Produced   17
                        the ESI in the Form in Which It Is Ordinarily Maintained**

        B.      **The SEC Has Properly Asserted Privileges through the Categorical    20
                Logging of Documents**

                1.      **The SEC Properly Logged Documents by Category**             20

                2.      **The SEC Properly Asserts Applicable Privileges as to its    24
                        Internal Documents**

                        a.      *Attorney-Client Privilege*                           24

                        b.      *Work Product Privilege*                             25

                        c.      *Deliberative Process Privilege*                     27

                        d.      *Law Enforcement Privilege*                          28

        C.      **Interview Notes are Work Product**                                 29

|  |  | 1. | Background | 30 |
|  |  | 2. | Argument | 33 |
|  |  |  | a. The notes were prepared in anticipation of litigation | 33 |
|  |  |  | b. Defendants' remaining arguments are meritless | 37 |
|  | D. | The SEC's Answers to Interrogatories are Appropriate |  | 39 |
|  |  | 1. The SEC's Answer to Interrogatory 1 |  | 39 |
|  |  | 2. The SEC's Answer to Interrogatory 2 |  | 42 |
|  |  | 3. The SEC's Answers to Interrogatories 3 and 4 |  | 43 |
|  |  | 4. The SEC's Answers to the Contention Interrogatories |  | 44 |
|  |  |  | a. The SEC's Answer to Interrogatory 5 | 44 |
|  |  |  | b. The SEC's Answer to Interrogatory 6 | 45 |
|  |  |  | c. The SEC's Answer to Interrogatory 7 | 47 |
|  |  |  | d. The SEC's Answer to Interrogatory 8 | 48 |
|  |  |  | e. The SEC's Answer to Interrogatory 10 | 51 |
|  |  |  | f. The SEC's Answer to Interrogatory 11 | 52 |
|  |  |  | g. The SEC's Answer to Interrogatory 12 | 53 |
| III. | **CONCLUSION** |  |  | 55 |

# Table of Authorities

**Federal Cases**

*Aikens v. Deluxe Fin. Servs.*,
  Inc., 217 F.R.D. 533 (D. Kan. 2003) ................................................................................ 9-10, 16, 52

*Am. Fam. Mut. Ins. Co. v. Electrolux Home Prods., Inc.*
  2014 WL 3513243 (W.D. Wis. July 14, 2014) ................................................................ 30

*Anderson Living Trust v. WPX Energy Production, LLC*,
  298 F.R.D. 514 (D.N.M. 2014) ...................................................................................... 18

*Brady v. Maryland*,
  373 U.S. 83 (1963) ......................................................................................................... 38

*Chartraw v. City of Shawano*,
  2017 WL 5462187 (E.D. Wis. Nov. 14, 2017) ............................................................... 34

*Cotracom Commodity Trading Co. v. Seaboard Corp.*,
  189 F.R.D. 655 (D. Kan. 1999) ................................................................................... 10, 16-17

*Demjanjuk v. Petrovsky*,
  10 F.3d 338 (6th Cir. 1993) ............................................................................................ 38

*Dinler v. City of New York*,
  607 F.3d 923 (2d Cir. 2010) ........................................................................................... 28

*Donahue v. United States*,
  870 F. Supp. 2d 97 (D.D.C. 2012) ................................................................................. 15

*Fed. Deposit Ins. Corp. for Valley Bank v. Crowe Horwath LLP*,
  2018 WL 3105987 (N.D. Ill. June 25, 2018) ................................................................. 21

*Ferruza v. MTI Tech.*,
  2002 WL 32344347 (C.D. Cal. June 13, 2002) .............................................................. 41

*Finn v. Schiller*,
  72 F.3d 1182 (4th Cir. 1996) .......................................................................................... 16

*Gavin v. SEC*,
  2007 WL 2454156 (D. Minn. Aug. 23, 2007) ................................................................ 26

*General Electric Co. v. Johnson*,
  2006 WL 2616187 (D.D.C. 2006) ............................................................................... 36, 37

*Harper & Row Publishers*, Inc. *v. Decker*,
  423 F.2d 487 (7th Cir. 1970) ....................................................................................... 29-30

*Hickman v. Taylor*,
  329 U.S. 495 (1947) .................................................................................................... 25, 41

*Humphrey's Executor v. United States*,
  295 U.S. 602 (1935) ......................................................................................................... 3

iv

*LaPorta v. City of Chicago*,
   1998 WL 89130 (N.D. Ill. Feb. 13, 1998) ............................................................. 41

*Logan v. Commercial Union Ins. Co.*,
   96 F.3d 971 (7th Cir. 1996) ................................................................................. 34

*Manufacturers Collection Co., LLC v. Precision Airmotive, LLC*,
   2014 WL 2558888 (N.D. Tex. June 6, 2014) ....................................................... 21

*Menard v. Chrysler Group, LLC*,
   2015 WL 5472724 (S.D.N.Y. July 2, 2015) ......................................................... 19

*Moye, O'Brien, Hogan, & Pickert v. Nat'l R.R. Passenger Corp.*,
   376 F.3d 1270 (11th Cir. 2004) .......................................................................... 27

*Nat'l Immigrant Justice Ctr. v. U.S. Dep't of Justice*,
   2020 WL 1329660 (7th Cir. Mar. 23, 2020) ....................................................... 27

*Perez v. Mueller*,
   2016 WL 6882851 (E.D. Wisc. Nov. 22, 2016) ................................................... 28

*Reich v. Great Lakes Collection Bureau, Inc.*
   172 F.R.D. 58 (W.D.N.Y. 1997) ........................................................................... 36

*SafeCard Services, Inc. v SEC*,
   926 F.2d 1197 (D.D.C. 1991) ....................................................................... 26, 35

*Sandra TE v. S. Berwyn Sch. Dist. 100*,
   600 F.3d 612 (7th Cir. 2010) ....................................................................... *passim*

*SEC v. Cavanagh*,
   1998 WL 132842 (S.D.N.Y. Mar. 23, 1998) ....................................................... 36

*SEC v. Collins & Aikman Corp.*,
   256 F.R.D. 403 (S.D.N.Y. 2009) ......................................................................... 19

*SEC v. Downe*,
   1994 WL 23141 (S.D.N.Y. Jan. 27, 1994) ..................................................... 34, 38

*SEC v. Dresser Industries, Inc.*,
   628 F.2d 1368 (D.C. Cir. 1980) ............................................................................ 5

*SEC v. First Financial Group of Texas, Inc.*,
   659 F.2d 660 (5th Cir. 1981) ................................................................................ 5

*SEC v. Goldstone*,
   301 F.R.D. 593 (D.N.M. 2014) ............................................................................ 34

*SEC v. Nacchio*,
   2007 WL 219966 (D. Colo. Jan. 25, 2007) ....................................... 22, 26, 35, 37

*SEC v. Nadel*,
   2013 WL 1092144 (E.D.N.Y. Mar. 15, 2013) ................................................ 30, 34

*SEC v. National Student Marketing Corp.*,
  1974 WL 415 (D.D.C. 1974) ................................................................. 34

*SEC v. Navarre*,
  1993 WL 267295 (S.D.N.Y. July 13, 1993) ........................................ 26

*SEC v. Neil*,
  2014 WL 2931096 (N.D. Cal. June 27, 2014) ............................... 34, 35, 37

*SEC v. NIR Group*,
  283 F.R.D. 127 (E.D.N.Y. 2012) ......................................................... 25

*SEC v. Rosenfeld*,
  1997 WL 576021 (S.D.N.Y. Sept. 16, 1997) ...................................... 29

*SEC v. Sells*,
  2012 WL 12921346 (N.D. Cal. Aug. 31, 2012) .................................. 38

*SEC v. Sentinel Management Group, Inc.*,
  2010 WL 4977220 (N.D. Ill. Dec. 2, 2010) ........................................ 40

*SEC v. Somers*,
  2013 WL 4045295 (W.D. Ky. Aug. 8, 2013)........................................ 21

*SEC v. Stanard*,
  2007 WL 1834709 (S.D.N.Y. June 26, 2007) ............................... 3, 4, 36

*SEC v. Strauss*,
  2009 WL 3459204 (S.D.N.Y. Oct. 28, 2009) .................................. 35, 36

*SEC v. Talbot*,
  2005 WL 1213797 (C.D. Cal. Apr. 21, 2005) ..................................... 34

*SEC v. Thrasher*,
  1996 WL 125661 (S.D.N.Y. Mar. 20, 1996) ....................................... 22

*SEC v. Thrasher*,
  1995 WL 46681 (S.D.N.Y. Feb. 7, 1995) ....................................... 35, 36

*SEC v. Treadway*,
  229 F.R.D. 454 (S.D.N.Y. 2005) ...................................................... 34, 36

*SolarCity Corp. v. Doria*,
  2018 WL 467898 (S.D. Cal. Jan. 18, 2018) .................................... 18, 19

*Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Eng'gs, Inc.*,
  755 F.3d 832 (7th Cir. 2014) ............................................................... 6

*Trustees of Boston Univ. v. Everlight Elecs. Co., Ltd.*
  2014 WL 5786492 (D. Mass., Sept. 24, 2014) ............................. 9, 16, 51

*United States v. American Optical Co.*,
  37 F.R.D. 239 (E.D. Wisc. 1965) ..................................................... 2, 41

*United States v. AT&T*,
   461 F. Supp. 1314 (D.D.C. 1978) .................................................................. 5

*United States v. Atrium Village Assoc.*,
   1988 WL 2778 (N.D. Ill. Jan. 12, 1988) ...................................................... 3

*United States v. Bautista*,
   252 F.3d 141 (2d Cir. 2001) ........................................................................ 15

*United States v. Blaszczak*,
   308 F. Supp. 3d 736 (S.D.N.Y. 2018) ........................................................ 4

*United States v. Collins*,
   409 F. Supp. 3d 228 (S.D.N.Y. 2019) ........................................................ 4

*United States v. Farley*,
   11 F.3d 1385 (1993) ............................................................................. 14, 23

*United States v. Finnerty*,
   411 F. Supp. 2d 428 (S.D.N.Y. 2006) .................................................... 4, 6

*United States v. Gericare*,
   2000 WL 33156442 (S.D. Ala. Dec. 11, 2000) .......................................... 23

*United States v. Int'l Union of Petroleum & Indus. Wkrs.*,
   870 F.2d 1450 (9th Cir. 1989) .................................................................... 3

*United States v. Kordel*,
   397 U.S. 1 (1970) ......................................................................................... 5

*United States v. Morris*,
   80 F.3d 1151 (7th Cir. 1996) ...................................................................... 4

*United States v. Munson*,
   2004 WL 1672880 (N.D. Ill. July 28, 2004) ........................................... 4-5

*United States v. Navistar*,
   236 F. Supp. 3d 1049 (N.D. Ill. 2017) .................................................. 14, 23

*United States v. Owens*,
   2019 WL 6896144 (E.D. Wisc. Dec. 18, 2019) ........................................ 28

*United States v. Rigas*,
   583 F.3d 108 (2d Cir. 2009) ........................................................................ 4

*United States v. Rigas*,
   2008 WL 144824 (S.D.N.Y. Jan. 15, 2008) ................................................ 4

*United States v. Santiago*,
   46 F.3d 885 (9th Cir. 1995) ........................................................................ 6

*Upjohn Co. v. United States*,
   449 U.S. 383 (1981) ............................................................................. 25, 29

*Varelas v. Crown Equip. Corp.,*
    2018 WL 1307961 (E.D. Wis. Mar. 13, 2018) ............................................................ 8, 13

*Vasudevan Software, Inc. v. Microstrategy Inc.,*
    2012 WL 5637611 (N.D. Cal. Nov. 15, 2012) ............................................................. 21

*Western Resources v. Union Pacific R.R.,*
    2001 WL 1718368 (D. Kan. Dec. 5, 2001) ............................................................. 10, 17

*Williams v. Angie's List, Inc.,*
    2017 WL 1318419 (S.D. Ind. Apr. 10, 2017) ............................................................. 3

*Worrell Newspapers of Indiana, Inc. v. Westhafer,*
    739 F.2d 1219 (7th Cir. 1984) ............................................................. 16

**Federal Statutes**

15 U.S.C. § 77q(a)(1), (2), and (3) ............................................................. 48

15 U.S.C. § 78j(b) ............................................................. 48

15 U.S.C. § 80b-6(1), (2), and (4) ............................................................. 48

15 U.S.C. § 80b-9(f) ............................................................. 48

**Other**

17 C.F.R. § 240.10b-5(a), (b), and (c) ............................................................. 31, 48

17 C.F.R. § 201.230 ............................................................. 38

17 C.F.R. § 275.206(4)-8 ............................................................. 48

Fed. R. Civ. P. 26 ............................................................. *passim*

Fed. R. Civ. P. 33 ............................................................. *passim*

Fed. R. Civ. P. 34 ............................................................. *passim*

Fed. R. Crim. P. 6(e) ............................................................. 6, 15, 16

## I.      **INTRODUCTION**

The SEC has provided detailed, substantive responses to the Defendants' discovery requests in this case.  The SEC has produced over 59,700 non-privileged documents obtained during its investigation, and provided 100 pages of detailed, substantive interrogatory responses. The SEC has also identified the witnesses it interviewed during the course of its investigation, giving Defendants an opportunity to contact those same witnesses.  Defendants' motion to compel seeks documents that are privileged, irrelevant, or not in the SEC's possession, custody, or control.  Defendants also seek to impose onerous burdens on the SEC by seeking a document-by-document log of thousands of clearly privileged documents.  The SEC's responses and objections to the Defendants' requests are proper, and the motion to compel should be denied.

## II.     **ARGUMENT**

The SEC's objections and responses to Defendants' unwieldy and mostly irrelevant requests for production of documents and interrogatories are proper.  When appropriate, the SEC has lodged specific and justified objections based on burden, breadth, proportionality, and relevance.  Many requests seek information regarding the U.S. Department of Justice's parallel criminal investigation of Defendants.  Not only is this information irrelevant to the claims in this case, but the requests call for documents and other information within the sole possession of the U.S. Department of Justice and not within the SEC's possession, custody, or control.  Regardless, the SEC produced over 59,000 documents to Defendants in response to their requests for documents.  As to the interrogatories, the SEC provided almost 100 pages of narrative responses.  Defendants' repeated complaint that they do not believe the answers establish sufficient evidence of their wrongdoing does not make the SEC's responses "inadequate."

1

Finally, the SEC has properly withheld its internal documents and its correspondence with the U.S. Department of Justice based on privilege. The SEC's privilege log includes categorical entries where a document-by-document listing is unduly burdensome and additional information would be of no material benefit to Defendants. Defendants' continued requests for, among other things, the SEC's internal interview notes, which constitute work product, and its internal back-and-forth deliberative discussions regarding the investigation, are wholly improper and should be denied.

### A. The SEC's Responses to Requests for Production of Documents are Appropriate

#### 1. The SEC Does Not Have Custody, Possession, or Control of DOJ Documents

Defendants argue that the SEC has custody and control of documents collected by the U.S. Department of Justice ("DOJ"). By doing so, Defendants demonstrate an ulterior motive for bringing this motion – to obtain documents DOJ gathered during its separate and distinct criminal investigation that Defendants know they likely cannot obtain directly from DOJ. *See, e.g., United States v. American Optical Co.*, 37 F.R.D. 239 (E.D. Wisc. 1965) (defendants in civil antitrust case brought by DOJ not entitled to production of grand jury transcripts from parallel DOJ criminal case against defendants where their sole purpose was discovery in the civil action). Strikingly absent from Defendants' motion is any indication that they have even attempted to obtain documents from the DOJ. Instead, Defendants attempt an end-around the normal methods of discovery – a third party subpoena to DOJ – by asking for these materials from the SEC. Given the irrelevant nature of any of the DOJ's documents or its communications with the SEC, it can only be assumed that Defendants are seeking these documents to support their pending *Bivens* action against an FBI agent and Assistant U.S. Attorney arising from the

2

execution of a search warrant. *See Greenpoint Tactical Income Fund, LLC, et al. v. Alan Pettrigrew and Darren Halverson*, Case No. 20-cv-00444 (E.D. Wisc.).

Regardless of Defendants' motives, the law is clear that the SEC does not have possession, custody or control over documents gathered or generated by DOJ that were not otherwise provided to the SEC. The burden is on the party seeking discovery to show that the non-movant has control over the documents sought. *United States v. Int'l Union of Petroleum & Indus. Wkrs.*, 870 F.2d 1450, 1452 (9th Cir. 1989); *Williams v. Angie's List, Inc.*, 2017 WL 1318419, at *2 (S.D. Ind. Apr. 10, 2017). Defendants cannot make this showing.

First, the DOJ is not part of the SEC. The DOJ is part of the executive branch, while the SEC is an independent agency and "cannot in any proper sense be characterized as an arm or an eye of the executive." *See Humphrey's Executor v. United States*, 295 U.S. 602, 628 (1935) (discussing Federal Trade Commission); *United States v. Atrium Village Assoc.,* 1988 WL 2778 at *1 (N.D. Ill. Jan. 12, 1988) (independent commissions are not properly viewed as part of the executive branch and are not required to respond to discovery directed at executive branch agencies).

Under comparable circumstances, the court in *SEC v. Stanard*, 2007 WL 1834709 (S.D.N.Y. June 26, 2007) denied the same motion Defendants have made. There, the defendants moved to compel the SEC to produce documents in the DOJ's possession. *Id*. at *2-3. The defendants argued that the DOJ and the SEC conducted a joint investigation because they worked together, and the SEC was able to access and review FBI interview memoranda at the DOJ. The court rejected the argument and found that "[t]he SEC is an independent agency from the USAO" and that "[t]he facts of this case make clear that the investigations, while they may

3

have overlapped, were not conducted jointly, and that the SEC has neither possession, custody, nor control of the FBI's notes." *Id.* at *3.

Similarly, in *United States v. Rigas*, 583 F.3d 108, 126 (2d Cir. 2009), the Second Circuit affirmed a district court's decision not to require the DOJ to produce documents in the SEC's custody because "the United States Attorney's Office was not in possession of notes from SEC interviews with [Adelphia's former securities lawyer] or other witnesses, and did not have an obligation to disclose what they did not possess." *United States v. Rigas*, 583 F.3d 108, 126 (2d Cir. 2009). The district court explained that the DOJ was not obligated to produce documents that were not within its possession, custody, or control and that "there was no joint investigation with the SEC." *United States v. Rigas*, 2008 WL 144824, at *2 (S.D.N.Y. Jan. 15, 2008), *aff'd*, 583 F.3d 108 (2d Cir. 2009).

In *United States v. Morris,* 80 F.3d 1151, 1169-70 (7th Cir. 1996), the Seventh Circuit held that in a criminal prosecution, the DOJ had no duty to disclose information possessed by, *inter alia,* the SEC because the SEC's investigation was separate from the underlying criminal investigation. *See also United States v. Collins*, 409 F. Supp. 3d 228, 241-42 (S.D.N.Y. 2019) (denying defense motion to compel and finding that the DOJ and the SEC did not conduct a joint investigation of an insider trading scheme even though the two agencies both participated in certain witness interviews and coordinated other aspects of their parallel investigations); *United States v. Blaszczak*, 308 F. Supp. 3d 736, 741-43 (S.D.N.Y. 2018) (same); *United States v. Finnerty*, 411 F. Supp. 2d 428, 433 (S.D.N.Y. 2006) (holding that the DOJ did not have to produce documents in the possession of the New York Stock Exchange just given "[t]he mere fact that the Government may have requested and received documents from the NYSE in the course of its investigation"); *United States v. Munson,* 2004 WL 1672880, at *2 (N.D. Ill. July

4

28, 2004) (rejecting criminal defendant's request for production of allegedly *Brady* material because the materials in question belonged to the SEC rather than the prosecution; "Since it does not appear to me that the SEC is or was part of the government's prosecutorial team, I am denying Munson's request."); *United States v. AT&T*, 461 F. Supp. 1314, 1335-36 (D.D.C. 1978) (denying defendant's motion to compel the DOJ to produce document contained in the files of the Federal Communications Commission).

The DOJ and the SEC conducted parallel, but separate and independent investigations.[1] As evidenced by the Declaration submitted in support of this Opposition by SEC Assistant Regional Director Charles J. Kerstetter ("Kerstetter Decl."), the SEC did not act on behalf or under the control of the DOJ, or vice versa.  (Kerstetter Decl. at ¶ 16)  The DOJ and SEC did not work as part of the same "prosecutorial" team.  Indeed, the DOJ and the SEC never conducted any joint interviews, (Kerstetter Decl. at ¶ 16), and the DOJ even refused one witness's request to conduct a joint interview with the SEC during its criminal investigation, (*see* Dkt. No. 74-27 at 2 (email chain between SEC and witness's attorney)).  The DOJ and the SEC had different purposes during their investigations and separately evaluated different evidence to make independent investigatory and charging decisions.  (Kerstetter Decl. at ¶ 17)  During the course of the parallel investigations, the SEC did not act on behalf of or under the control of DOJ. (Kerstetter Decl. ¶ 16)  Therefore one agency does not possess documents of the other.

---

[1] Courts have routinely concluded that parallel criminal and civil investigations are appropriate absent any findings of bad faith. *See, e.g., United States v. Kordel,* 397 U.S. 1, 11 (1970); *SEC v. First Financial Group of Texas, Inc.,* 659 F.2d 660, 666-67 (5th Cir. 1981) (not improper for SEC and DOJ to simultaneously investigate the same transactions).  In fact, "[e]ffective enforcement of the securities laws requires that the SEC and [DOJ] be able to investigate possible violations simultaneously." *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368, 1377 (D.C. Cir. 1980).

Although the DOJ and the SEC shared certain information as set forth in the SEC privilege log, sharing information does not convert independent investigations into a joint one. *Finnerty*, 411 F. Supp. 2d at 432.  Indeed, the DOJ obtained substantial evidence in the course of its investigation that it did not share with the SEC.  For example, the DOJ did not share any grand jury material with the SEC.  (Kerstetter Decl. at ¶ 19).  In fact, by law, the SEC is not even allowed access to grand jury material in the possession of DOJ absent a court order.  While Federal Rule of Criminal Procedure 6(e)(3) permits disclosure of a "grand jury matter" (other than the grand jury's deliberations or any grand juror's vote) to certain persons, these exceptions do not include the SEC for use in its civil enforcement proceedings.[2]  (*See* Kerstetter Decl. ¶ 20). Generally, the SEC can only receive grand jury material pursuant to a court order under Rule 6(e)(3)(E).  No such court order exists in this case.

Finally, the Seventh Circuit's interpretation of "possession, custody, and control" in the context of civil discovery is narrower than that of the Ninth Circuit – the only cases cited by Defendants – in the context of the production of *Brady* material in criminal discovery.  *See, e.g., United States v. Santiago*, 46 F.3d 885, 893-94 (9th Cir. 1995) ("[I]nformation is 'in the possession of the government' if the prosecutor 'has knowledge of and access to the documents sought by the defendant.'") (citations omitted); *compare Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Eng'gs, Inc.*, 755 F.3d 832, 838-39 (7th Cir. 2014) (for purposes of Rule 34, "control" means "a legal right to obtain") (quoting *Dexia Credit Local v. Rogan*, 231 F.R.D. 538, 542 (N.D. Ill. 2004)).  Even under *Santiago's* broader standard, Defendants cannot establish that the SEC has control over the DOJ's documents.  In *Santiago*,

---

[2] While one exception permits disclosure of grand jury matters to "government personnel" whom "the government considers necessary to assist" in enforcing federal criminal law (Fed. R. Crim. P. 6(e)(3)(A)(ii)), as a practical matter that does not include SEC attorneys merely because they are working on a parallel civil investigation or case.

the court held that the U.S. Attorney had "possession and control" of Bureau of Prisons files for purposes of criminal discovery because the U.S. Attorney "had knowledge of and access to the inmate files held by the Bureau of Prisons," in part because the U.S. Attorney was able to obtain the pertinent prison file from the Bureau of Prisons. *Id.* The fact that the Bureau of Prisons and the U.S. Attorney are both branches of the DOJ "would facilitate access by federal prosecutors to prison files." *Id.* Here, the SEC is an independent regulatory agency, not part of the executive branch of government, without access to the DOJ's files.

In recognition of these important considerations, courts routinely deny defense motions, like this one, that seek to combine the DOJ and the SEC for discovery purposes simply because the two agencies coordinated some aspects of their separate, parallel proceedings. The SEC is an independent regulatory agency, not part of the executive branch of government. As such, the SEC does not have possession, custody, or control of documents held by other government departments or agencies, including the DOJ.

## 2. The SEC's Objections to Requests for Production 1, 3, 13, and 18-20 Are Proper

The SEC properly objected to Document Request 3 because it requested documents that are not relevant to Plaintiff's claims or Defendants' defenses. Also, the SEC properly objected to Document Requests 1, 3, 13, 18, 19, and 20 because they are overly broad and thus unduly burdensome and disproportionate to the needs of this case.

Defendants' Document Request Number 3 asked the SEC to produce:

All documents quoted, referenced, or otherwise cited by SEC ***in any filing in any other court case relevant to Defendants***, including, without limitation, any bankruptcy proceeding presently pending in the United States Bankruptcy Court for the Eastern District of Wisconsin.

(emphasis added). (Dkt. No. 74-1 at ECF p. 3). The SEC properly objected that:

7

The SEC objects to the request as calling for information that is not relevant to any party's claims or defenses and is overbroad, unduly burdensome, and disproportionate to the needs of this case in that it requests "documents quoted, referenced, or otherwise cited by SEC in any filing **in any other court case relevant to Defendants**."

(Dkt. No. 74-3 at Response to Document Request Number 3)  "[T]he burden of demonstrating relevance is on the party seeking discovery . . ."  *Varelas v. Crown Equip. Corp.,* No. 17-CV-869-JPS-JPS, 2018 WL 1307961, at *1 (E.D. Wis. Mar. 13, 2018).  Defendants have utterly failed to meet their burden of showing that the unspecified documents requested are relevant to the SEC's claims or their defenses.  Defendants state the bare conclusions that the "relevance of these requests is obvious" and "what is relevant in one is relevant in another."  (Dkt. No. 74 at ECF p. 26)  Bare conclusions do not meet Defendants' burden.

Furthermore, the request is overbroad, unduly burdensome, and disproportionate to the needs of this case as the SEC would have to determine every single case "***relevant to Defendants***" and then find and produce "all documents quoted, referenced, or otherwise cited by SEC."  This request is not even limited to cases where these Defendants are also defendants.  The actual language of the request is "***any other court case relevant to Defendants***."  Request 3 is a textbook example of a request that is overly broad, unduly burdensome, and disproportionate to the needs of the case.  Defendants now try to pretend that they meant only the Bankruptcy Proceeding, but the plain, actual language of Defendants' request belies their current assertion.  Having propounded an overbroad, unduly burdensome request they cannot now try to rewrite it in their motion to compel.

Defendants' Document Request Number 13 sought:

***All*** correspondence with any person ***in relation to*** this case, including, without limitation: Defendants or the Greenpoint Funds; their current or former employees; current or former employees of any company in which Defendants or the Greenpoint Funds invested; independent contractors used by Defendants or

the Greenpoint Funds; persons who engaged in or contemplated transactions with Defendants or the Greenpoint Funds; Defendants' or the Greenpoint Funds' investors or clients; and any other person from whom information relevant to the Complaint was received or developed.

(emphasis added).  (Dkt. No. 74-1 at ECF pp. 4-5).

Request 18 sought:

**All** documents ***relating to*** the allegation stated in Paragraph 5 of the Complaint that "gains are largely fictitious.

(emphasis added).  (Dkt. No. 74-1 at ECF p. 5).

Request 19 sought:

**All** documents ***relating*** to the allegation stated in Paragraph 63 of the Complaint that Christopher Nohl created a "false contract."

(emphasis added).  (Dkt. No. 74-1 at ECF p. 5).

Request 20 sought:

**All** documents ***related to*** the email referenced in Paragraph 221 of the Complaint.

(emphasis added).  (Dkt. No. 74-1 at ECF p. 6).

Request 13 is overbroad, unduly burdensome, and disproportionate to the needs of this case because it seeks "***all*** correspondence with any person ***in relation to*** this case."  Requests 18, 19, and 20 are overbroad, unduly burdensome, and disproportionate to the needs of this case because they seek "all" documents "related to" various topics.  "[D]iscovery requests seeking information 'related to' a particular topic are overly broad because they do not provide a basis upon which an individual or entity can reasonably determine what information may or may not be responsive." *Trustees of Boston Univ. v. Everlight Elecs. Co. Ltd.*, 2014 WL 5786492, at *3 (D. Mass., Sept. 24, 2014).  "The use of such omnibus terms [relating to or regarding] also requires the answering party to engage in mental gymnastics to determine what information may or may not be remotely responsive." *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 538 (D.

9

Kan. 2003) (citation and omitted). *See also Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 665 (D. Kan. 1999) (citation omitted) (finding requests seeking "all documents relating to" and "all documents reflecting" "overly broad and unduly burdensome on their face." "[The Court] finds Request 17 facially overly broad, due to its use of the omnibus phrase 'relating to.' The phrase does not modify a specific type of document, but rather all documents. Its use thus makes the request overly broad. That defendants may provide insufficient support for the objection does not matter. A party resisting facially overbroad or unduly burdensome discovery need not provide specific, detailed support.").

In *Western Resources v. Union Pacific R.R.*, No. 00–2043–CM, 2001 WL 1718368, at *3 (D. Kan. Dec. 5, 2001) (citations omitted), the Court found:

> the five requests at issue are overly broad and unduly burdensome on their face to the extent that they utilize the omnibus phrase "relate to." The federal rules provide that "request[s] shall set forth, either by individual item or by category, the items to be inspected, and describe each with reasonable particularity." Fed.R.Civ.P. 34(b). Use of all-encompassing language violates Rule 34. Requests should be reasonably specific, allowing the respondent to readily identify what is wanted. [] Courts may find requests overly broad when they are "couched in such broad language as to make arduous the task of deciding which of numerous documents may conceivably fall within [their] scope." [] Use of a broad term such as 'relate to' provides no basis upon which a party can reasonably determine what documents may or may not be responsive.

Here, by using "all documents related to" the requests are facially overbroad and provide no basis upon which the SEC can reasonably determine what may be responsive. A party resisting facially overbroad or unduly burdensome discovery need not provide specific, detailed support. Nevertheless, the SEC searched for and produced the non-privileged, responsive documents that were in the possession or control of those staff members involved in the investigation and litigation of this matter. The objections and responses are proper.

Request 1 sought "All portions of the SEC's investigative file relevant to any issue

identified in the Complaint filed in the above-captioned action (the "Complaint")." Defendants seeking all portions of the undefined "investigative file" relevant to any unspecified issue identified in the Complaint is overbroad, unduly burdensome, and disproportionate to the needs of this case. The SEC produced the non-privileged, responsive documents that are in the possession or control of those staff members involved in the investigation and litigation of this matter. The SEC's document production includes what we regard as the staff's investigative file in this matter withholding only those materials that are subject to the SEC's claims of work-product protection or privilege including attorney-client privilege, government deliberative process privilege, and/or law enforcement privilege. What the staff regards as the investigative file includes the documents produced by Defendants and third parties during the investigation, testimony transcripts and exhibits, subpoenas, and non-privileged communications.

Accordingly, the SEC properly objected to these overly broad and unduly burdensome requests and searched for and produced documents in response to all of them. Defendant's motion to compel as to Document Requests 1, 3, 13, 18, 19, and 20 should be denied.

### 3.     Defendants' Request for Production 12 Improperly Asks for Premature Disclosure of Expert Opinions

Request for Production 12 sought:

All valuations, appraisals, or opinions obtained as to the value of any asset or company referenced in the Complaint or held by the Greenpoint Funds, and:

   a.     All contracts with any person requested to issue such an opinion or report;
   b.     Any materials furnished to or received from said person.

Request 12 is a premature and improper attempt to obtain disclosure of expert opinions before they are due. As stated in its response, the SEC will comply with the expert discovery schedule as outlined in the Preliminary Pretrial Conference Order. Expert disclosures are not due until December 11, 2020. (Dkt. No. 23 at 3). The SEC will also comply with Federal Rule

of Civil Procedure 26(a)(2).  The SEC also objected on the basis that Request 12 seeks

information or documents protected by Federal Rule of Civil Procedure 26(b)(4).  Lastly, the

SEC objected to this request as calling for the production of information subject to the attorney-

client privilege, deliberative process privilege, and/or work product privilege.  Defendants have

not and cannot state any basis for compelling production of expert opinions now.  Accordingly,

their motion to compel as to Request for Production 12 should be denied.

> ### 4.     The SEC's Objections to Requests for Production 8-11 and 14-17 (Related to the DOJ) Are Appropriate

The SEC properly objected to Document Requests 8-11 and 14-17 because they call for

irrelevant information and are overly broad and thus unduly burdensome and disproportionate to

the needs of this case.

Defendants' Document Requests 8-11 ask for various materials and correspondence

exchanged between the SEC and DOJ and other state or federal agencies.  In particular, they ask

for "[a]ll material shared with SEC by any other state or federal agency in relation to this case"

(Request 8); "[a]ll referrals made by SEC" to the DOJ in relation to this case (Request 9); "[a]ll

notes, memoranda, correspondence, and instructions between the SEC and DOJ… regarding,

relating to, or in any way involving Defendants" (Request 10); and "[a]ll information received

from DOJ or any other state or federal agency in relation to this case and any decision to decline

to prosecute any Defendant as to any matter, and any documents reflecting or relating to such

information" (Request 11).  (Dkt. No. 74.1 at ECF pp. 3-4).

The SEC properly objected to Requests 8 through 11 as follows:  "The SEC objects to

this request as calling for information that is not relevant to any party's claims or defenses and is

overbroad, unduly burdensome, and disproportionate to the needs of this case."  The SEC further

objected given the requests call for the production of information subject to numerous privileges,

including the law enforcement privilege and work product privilege.  (Dkt. No. 74.3 at ECF pp. 7-9)

Defendants' Document Request 14 asks for documents "[a]ll documents provided to SEC, FBI, DOJ, or any USAO in relation to any investigation of any Defendant in this matter by Pamela Kirchen, as well as any written correspondence or documents provided to, or exchanged with, Ms. Kirchen."  Document Requests 15-17 seek information of the DOJ, whether or not it was actually provided to the SEC, including all "witness interviews transcripts, '302' memoranda, or other memoranda relative to Defendants" (Request 15); "[a]ll FBI, DOJ, or USAO documents … regarding Defendants" (Request 16); and "[a]ll information obtained by FBI, DOJ, or USAO from any party other than Defendants, relative to the SEC or other investigations relating to Defendants" (Request 17).  (Dkt. No. 74.1 at ECF p. 5)

The SEC reasserted its same objections as it asserted in response to Requests 8 through 11, and further objected on the grounds that the information "calls for documents or information that is not within the custody, custody, or possession, of the SEC."  (Dkt. No. 74.3 at ECF pp. 11-14)  The SEC also indicated that as to Request 14 related to documents provided to the SEC from Pamela Kirchen, the SEC would produce non-privileged and responsive documents in its possession.  (Dkt. No. 74.3 at ECF p. 11)

### a.    The Requested Documents Are Irrelevant

The SEC properly objected on relevance grounds as to the above requests.  "[T]he burden of demonstrating relevance is on the party seeking discovery . . . ."  *Varelas v. Crown Equip. Corp.,* No. 17-CV-869-JPS-JPS, 2018 WL 1307961, at *1 (E.D. Wis. Mar. 13, 2018). Defendants have failed to meet their burden of showing that the unspecified documents requested are relevant to the SEC's claims or their defenses.  Defendants state the bare

conclusions that because the SEC made a referral to the DOJ, and the subjects of the DOJ investigation "were the same as the subjects of SEC's Complaint," the "relevance of materials generated in the DOJ investigation is not seriously in question."  (Dkt. No. 74 at ECF p. 27)  But bare conclusions do not meet Defendants' burden.

Regardless, any communications or material shared between the SEC and the DOJ have no bearing on whether Defendants violated the federal securities laws as outlined in the Amended Complaint.  The SEC does not allege that Defendants misled the DOJ regarding its investments, including its asset valuation practices, but rather that Defendants mislead investors. Any exchanges between the DOJ and SEC regarding referrals, the results of the investigations, or other views regarding their respective investigations is not only protected work-product, but also irrelevant. *See, e.g., U.S. v. Farley*, 11 F.3d 1385 (1993) (internal FTC documents expressing views of FTC staff are protected by the work-product doctrine and deliberative process privilege and not relevant to defendant's claims or defenses); *United States v. Navistar*, 236 F. Supp. 3d 1049, 1055-1056 (N.D. Ill. 2017) (rejecting defendant's efforts to obtain EPA internal communications as not being relevant to the claims or defenses).  Defendants' overbroad and irrelevant DOJ-related requests appear to be an attempt to seek discovery for their unrelated *Bivens* action.

Additionally, the investigative strategy, techniques, and steps of both the DOJ and the SEC are not relevant to this case. *See, e.g., SEC v. True North Finance Corp.*, 10-3995, Dkt. 323, at 7[3] (D. Minn. 2013) (precluding evidence and argument as to the SEC's charging decisions); *EEOC v. Evans Fruit Co., Inc.*, 2012 WL 442025, at *3 (E.D. Wash. Feb. 10, 2012) (investigative efforts are not essential to defendants understanding or defense of the claims

---

[3] Opinion attached as Exhibit 1.

against him); *EEOC v. Chicago Miniature Lamp Works,* 526 F. Supp. 974, 975 (N.D. Ill. 1981) (prohibiting inquiry into nature and extent of investigation because that is a matter within the discretion of the agency and "[t]hat line of inquiry would deflect the efforts of both the court and the parties from the main purpose of the litigation: to determine whether [the defendant] has actually violated Title VII"); *United States v. Bautista,* 252 F.3d 141, 145 (2d Cir. 2001) ("[T]he summation arguments at issue amounted to an (improper) invitation for the jury to consider the government's choice of investigative techniques."). "The SEC has discretion to decide both the timing of when it 'make[s] such investigations,' and the manner and scope of how to 'investigate any facts, conditions, practices, or matters.'" *Donahue v. United States*, 870 F. Supp. 2d 97, 105 (D.D.C. 2012) (citations omitted).

　　Further, certain requests ask for information that is seemingly unrelated to even the DOJ's parallel criminal investigation of Defendants.  For example, Request 17 seeks information obtained by DOJ from any third party "relative to the SEC or other investigations relating to Defendants."  If the DOJ obtained some information about one of the Defendants as to misconduct that had nothing to do with violating the securities laws, it would be responsive to this request.  Clearly any such information has no relevance to this case.

　　Although not detailed in their Motion, in meet and confer sessions, Defendants claimed that the SEC's interaction with the DOJ was relevant because it may establish that the DOJ violated Defendants' constitutional rights, or the DOJ's violation of grand jury secrecy rules. (Dkt. No. 74-19 at ECF p. 4; Dkt. No. 74-21 at ECF pp. 2-3)  If Defendants are still pursuing this line of relevancy, they have failed to articulate any basis for their belief that the SEC received any grand jury material.  Regardless, the SEC informed Defendants that they have no reason to believe the SEC received any Rule 6(e) material from any criminal authorities.  (Dkt. No. 74-20

at ECF p. 2; Dkt. No. 74-22 at ECF pp. 2-3) (Kerstetter Decl. at ¶ 19).[4]  Defendants' inquiries

into unsubstantiated Rule 6(e) violations are the epitome of a fishing expedition and are

improper.

        **b.**     **The Requests are Overly Broad, Burdensome, and**
                  **Disproportionate to the Needs of the Case**

Furthermore, the requests are overbroad, unduly burdensome, and disproportionate to the

needs of this case.  Defendants' requests seek "all" documents "relative to," "regarding," or "in

relation to" Defendants, the SEC, or the SEC's case.  For example, Requests 16 and 17 seek

"[a]ll FBI, DOJ, or USAO documents … regarding Defendants" and "[a]ll information obtained

by FBI, DOJ, or USAO from any party other than Defendants, relative to the SEC or other

investigations relating to Defendants."  These requests are not qualified or limited in any way in

order to provide the SEC with a basis to determine what may or may not be responsive.

Defendants' other requests are similar.

"[D]iscovery requests seeking information 'related to' a particular topic are overly broad

because they do not provide a basis upon which an individual or entity can reasonably determine

what information may or may not be responsive." *Trustees of Boston Univ. v. Everlight Elecs.*

*Co. Ltd.*, 2014 WL 5786492, at *3 (D. Mass., Sept. 24, 2014).  "The use of such omnibus terms

[relating to or regarding] also requires the answering party to engage in mental gymnastics to

determine what information may or may not be remotely responsive."  *Aikens v. Deluxe Fin.*

*Servs., Inc.*, 217 F.R.D. 533, 538 (D. Kan. 2003) (citation and omitted). *See also Cotracom*

---

[4] Any potential violation of Rule 6(e) has no bearing on this case. Under Rule 6(e)(7), a violation of grand jury
secrecy may be punished as a contempt of court by the court overseeing the grand jury.  Defendants also have no
private right of action to pursue a potential violation of Rule 6(e).  *See, e.g., Finn v. Schiller*, 72 F.3d 1182 (4th Cir.
1996).  Finally, there is no authority for the proposition that the SEC can be held in contempt or sanctioned for the
receipt of Rule 6(e) material.  *See Worrell Newspapers of Indiana, Inc. v. Westhafer*, 739 F.2d 1219, 1223 (7th Cir.
1984) ("Rule 6(e) applies ... only to individuals who are privy to the information contained in a sealed document by
virtue of their positions in the criminal justice system.").

*Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 665 (D. Kan. 1999) (citation omitted) (finding requests seeking "all documents relating to" and "all documents reflecting" "overly broad and unduly burdensome on their face." "[The Court] finds Request 17 facially overly broad, due to its use of the omnibus phrase 'relating to.' The phrase does not modify a specific type of document, but rather all documents. Its use thus makes the request overly broad. That defendants may provide insufficient support for the objection does not matter. A party resisting facially overbroad or unduly burdensome discovery need not provide specific, detailed support."); *Western Resources, Inc. v. Union Pacific R.R.,* No. 00–2043–CM, 2001 WL 1718368, at *3 (D. Kan. Dec. 5, 2001) (finding that "the five requests at issue are overly broad and unduly burdensome on their face to the extent that they utilize the omnibus phrase 'relate to'"; such "all-encompassing language violates Rule 34") (citations omitted).

Here, by using omnibus terms the requests are facially overbroad and provide no basis upon which the SEC can reasonably determine what may be responsive. A party resisting facially overbroad or unduly burdensome discovery need not provide specific, detailed support. The objections and responses are proper.

### 5.   In Compliance with Rule 34(b)(2)(E)(ii), the SEC Produced the ESI in the Form in Which It Is Ordinarily Maintained

Defendants' Motion to Compel seeks to impose upon the SEC production requirements that are beyond those required by the Federal Rules of Civil Procedure. Defendants ask the Court to order the SEC "to organize its responses by the categories requested." (Dkt. No. 74 at ECF p. 28) Defendants' request is contrary to Rule 34(b)(2)(E).

Rule 34(b)(2)(E)(ii) provides:

If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

As permitted by Rule 34(b)(2)(E)(ii), the SEC produced the electronically stored information ("ESI") in the manner in which it is ordinarily maintained.  Defendant's Rule 34 Requests sought ESI because their definition of "document" includes "electronic" and incorporates the definition in Fed. R. Civ. P. 34(a), which includes "electronically stored information."  (Dkt. No. 74.1 at ECF p. 9).  Moreover, the Committee Notes on Rules - 2006 Amendment state "a Rule 34 request for production of 'documents' should be understood to encompass, and the response should include, electronically stored information . . ."

"Rule 34(b)(2)(E)(i) governs hard copy documents, and (E)(ii) governs ESI, with no overlap between." *SolarCity Corp. v. Doria*, 16 cv 3085, 2018 WL 467898, at *5 (S.D. Cal. Jan. 18, 2018) (citations omitted); *Anderson Living Trust v. WPX Energy Production, LLC*, 298 F.R.D. 514, 527 (D.N.M. 2014).  "Requesting parties are entitled to the guarantees of (E)(i) or (E)(ii), but not both." *SolarCity Corp.*, 2018 WL 467898, at *5 (citations omitted)  Moreover, Rule 34(b)(2)(E)(iii) provides "[a] party need not produce the same electronically stored information in more than one form."

The SEC complied with Rule 34(b)(2)(E)(ii) by producing the ESI in the manner in which it is ordinarily maintained, which is a fully searchable electronic database.  The SEC produced native files where available.  The database allows Defendants to search by key word, producing party, document date, recipient, sender, document type, and numerous other fields. The SEC produced all of the metadata that was provided to it by the producing parties.

Defendants ask this Court to shift the burden from them to the SEC to find the specific documents they want to use in their defense.  This is not what the Federal Rules of Civil Procedure require, particularly where Defendants sought all "portions of the SEC's investigative file relevant to any issue identified in the Complaint."  (Request for Production No. 1, Dkt. No.

18

74-1 at ECF p.2)  *See SolarCity Corp.* 2018 WL 467898, at *5-6 (rejecting argument that party

producing the ESI had the burden of identifying specific documents).  "By casting a wide

discovery net, [Defendants] may not now complain about the burden of 'sifting through' the

produced ESI for the documents [they] seek[]."  *SolarCity Corp.*, 2018 WL 467898, at *6.

> The drafters of 34(b)(2)(E) contemplated that parties requesting ESI would be
> able to organize it themselves—in their own way, to their own satisfactory level
> of thoroughness, and at their own expense—through the use of text-searching
> technologies like filtering, grouping, and ordering.

*Id.* at *5 (quotations omitted and citing, *inter alia,* 7 James Wm. Moore et al., Moore's Federal

Practice § 34.14[3], at 34-92.1 ("[T]he searchability of ESI makes such organization

unnecessary."))  The "imposition of traditional production requirements on ESI was not intended

by the amendments to Rule 34(b), which specifically added ESI to the things that must be

produced."  *Id.* (citations omitted)

Defendants' reliance on *SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 412-13

(S.D.N.Y. 2009) is misplaced.  There the Court interpreted "usual course of business" in Rule

34(b)(2)(E)(i).  Here, the SEC's ESI production complies with Rule 34(b)(2)(E)(ii), which does

not contain "usual course of business."  Furthermore, the reasoning in *Collins & Aikman Corp.*

was rejected by *Menard v. Chrysler Group, LLC*, 14 cv 6325, 2015 WL 5472724, at *1-2

(S.D.N.Y. 2015 July 2, 2015)(relying on the plain language of Rule 34 to reject the reasoning

from *SEC v. Collins & Aikman Corp.* that only commercial enterprises keeping records that are

the result of regularly conducted activity can produce records as they are kept in the "usual

course of business").  To the extent the Court determines that Rule 34(b)(2)(E)(i) applies, the

production complies with Rule 34(b)(2)(E)(i), because the SEC produced the documents as they

are kept in the usual course of business.

19

**B.      The SEC Has Properly Asserted Privileges through the Categorical Logging of Documents**

As to the SEC's privilege claims, the SEC already has produced the facts it obtained during its investigation, including over 59,700 documents, including the transcripts of 8 sworn investigative testimonies, over 150 testimony exhibits, and tens of thousands of documents produced by Defendants' entities and other third-parties. (Kerstetter Decl. at ¶ 9).  Still, Defendants seek, among other things, the internal back-and-forth email exchanges and other documents created and shared between the SEC's attorneys and staff during its investigation. Defendants offer no compelling justification for this demand, and no legal support. This stands to reason, since courts in SEC enforcement actions have rejected similar efforts given the obviously privileged nature of such documents.

**1.      The SEC Properly Logged Documents by Category**

Defendants first complain about the SEC's categorical logging of thousands of internal documents.  They claim that the SEC has numerous categorical entries on its privilege log covering all of the intra-SEC documents; the entries are legally deficient; and thus the SEC has waived any privilege and must now produce all of the documents, to include thousands of internal emails.

First, not every privilege log entry is a categorical entry.  In fact, the vast majority of the entries are of individual documents, such as privilege log entries 1-45, 62, and 65, which log handwritten and typed notes of witness interviews.  (Dkt. No. 74-6)  The rest of the SEC's privilege log complies with Rule 26(b)(5)(A) because it "describe[s] the nature of the documents, communications, or tangible things not produced or disclosed--and … in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."

Contrary to Defendants' complaints, courts retain discretion to permit less detailed privilege log disclosure in appropriate cases involving voluminous productions.

A party may log items categorically where a document-by-document listing is unduly burdensome and "additional information to be gleaned from a more detailed log would be of no material benefit to the discovering party in assessing whether the privilege claim is well grounded." *SEC v. Somers*, 2013 WL 4045295, at *2 n. 2 (W.D. Ky. Aug. 8, 2013) (quoting *SEC v. Thrasher*, 1996 WL 125661, at *1 (S.D.N.Y. March 20, 1996)). *See also Fed. Deposit Ins. Corp. for Valley Bank v. Crowe Horwath LLP*, 2018 WL 3105987, at *6 (N.D. Ill. June 25, 2018) (permitting categorical log of documents that "make[s] clear that the documents at issue— internal work papers and notes, and internal communications—constitute the kinds of materials that at least some courts have held are 'clearly protect[ed] from disclosure'"); *Manufacturers Collection Co., LLC v. Precision Airmotive, LLC*, 2014 WL 2558888, at *3 (N.D. Tex. June 6, 2014) (holding a document-by-document listing to be unduly burdensome and of no material benefit where party was asserting the work-product, attorney-client, and joint-deference privileges); *Vasudevan Software, Inc. v. Microstrategy Inc.*, 2012 WL 5637611, at *7 (N.D. Cal. Nov. 15, 2012) (allowing party asserting attorney-client and work-product privileges over requested communications between it and its counsel to "provide categorical logs, essentially grouping documents by type and indicating how each of those categories is privileged").

Indeed, the Federal Rules of Civil Procedure explicitly contemplate categorical privilege logs in exactly this type of situation. A 1993 Advisory Committee Note to Rule 26(b)(5) states that "[t]he rule does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection. Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be

21

unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories." Notably, in *SEC v. Thrasher*, 1996 WL 125661, at *1-2 (S.D.N.Y. Mar. 20, 1996), the court held a categorical privilege log was sufficient particular where, as here, the large number of documents clearly subject to an established privilege make a document-by-document listing unduly burdensome and of no material benefit to the discovering party in assessing the privilege claim. *See also SEC v. Nacchio*, 2007 WL 219966, at *9-10 (D. Colo. Jan. 25, 2007) (permitting SEC to provide a categorical listing of internal notes, memoranda, and correspondence withheld based on the work-product doctrine, as opposed to requiring a document-by-document privilege log).

The SEC's categorical privilege log entries are proper given that the volume of the SEC's internal documents and communications is massive, with over 8,700 emails (inclusive of email chains) generated just by the primary SEC lawyer responsible for the Bluepoint investigation. (Kerstetter Decl. at ¶ 22). This does not even include additional notes, memoranda, drafts, and other documents, or emails from other SEC staff involved in the investigation. (*Id*. at ¶ 23). Defendants' demand that the SEC individually list each of the thousands of documents it has withheld on the basis of privilege will impose a burden on the SEC that is not justified by the irrelevant and wholly cumulative nature of the documents being withheld. For example, as to privilege log entry 54, the SEC would have to individually list well over 8,700 emails. The SEC would have to re-review and log several times that number of emails because more than one person is on each email and, therefore, each person's emails would have to be re-reviewed in preparing the email-by-email listing. (*Id*. at ¶ 23).

The SEC's privilege log lists obviously privileged documents by category thereby complying with Rule 26(b)(5)(A). Defendants fail to articulate how a communication-by-

communication listing would aid their assessment of privilege.  For example, Defendants cannot explain how the SEC's categorical privilege log entry impaired their ability to test the claims of work product, which rise or fall as a unit.  *See United States v. Gericare*, 2000 WL 33156442, at *4 (S.D. Ala. Dec. 11, 2000).  The SEC's log does not make blanket claims of privileges, but rather lists specific categories of documents that are clearly privileged.  The descriptions, including date ranges, authors/recipients, and their positions, allows Defendants to fully assess the claims that internal documents, such as emails, amongst SEC attorneys and staff are protected by the applicable privileges.  A more detailed description would only serve to divulge the actual privileged information being withheld.[5]

Further, the SEC's internal dialogue, including its investigative strategy, interpretation of facts, and views of the investigation, are simply not relevant or proportional to the needs of the case.  *See, e.g., U.S. v. Farley*, 11 F.3d 1385 (1993) (internal FTC documents expressing views of FTC staff are protected by the work-product doctrine and deliberative process privilege and not relevant to defendant's claims or defenses); *United States v. Navistar*, 236 F. Supp. 3d 1049, 1055-1056 (N.D. Ill. 2017) (rejecting defendant's efforts to obtain EPA internal communications as not being relevant to the claims or defenses).  Defendants have made no showing whatsoever of the relevance of these internal documents or their need to see them.  It is an unreasonable and disproportionate burden on the SEC to log thousands of documents that are clearly privileged and irrelevant.  Consistent with the SEC's responses and objections to the Defendants' various requests, and as referenced in the SEC's privilege log, the SEC is not conceding that any of its

---

[5] Further, Defendants ignore that the SEC's log provides just as much, if not more, information than Defendants' log.  For example, Defendants' the second entry on Defendants' log states: "Email thread including and discussing attorney work product of Howon Lee, Korean counsel, for review."  (Exhibit 2).  This entry merely states the conclusion that it is attorney work product.  Mr. Lee is not even listed as an author or recipient of the email.  Given Defendants' log, they cannot seriously claim that the SEC's log is insufficient.

privilege log entries are either responsive or relevant to the Defendants' requests. Many are, in fact, neither responsive nor relevant, but the SEC is logging them out of an abundance of caution.

### 2. The SEC Properly Asserts Applicable Privileges as to its Internal Documents

The SEC properly asserts privilege over several thousand internal emails by, between, and amongst the core Division of Enforcement and Office of Compliance Inspections and Examinations ("OCIE") and staff who worked on the investigation and potential litigation, notes, memoranda, compilations, schedules, outlines, draft correspondence, and draft subpoenas prepared by the staff.  Utterly missing from Defendants' motion is any explanation of why they have any need to see the SEC's privileged communications and documents.  Defendants fall far short of establishing the "substantial need" required under Rule 26(b)(3) or the proportionality standard of Rule 26(b)(1).  The SEC has provided Defendants with the documents containing all of the underlying facts at the SEC's disposal. They are not entitled to more.

#### a.    Attorney-Client Privilege

With respect to the attorney-client privilege, the SEC's internal documents were authored and received by attorneys handling the SEC's examination and/or investigation, and accountants, paralegals, and other staff working with the attorneys and at their direction and control.  In conducting the investigation that led to the filing of this case, the Commission was seeking legal advice about whether there had been violations of the federal securities laws.  (Kerstetter Decl. at ¶ 24).  To obtain this legal advice, it tasked its examination and investigative staff with conducting thorough legal and factual investigations to determine whether there had been violations of the federal securities laws and what remedies may be appropriate for those violations.  (Kerstetter Decl. at ¶ 25-26)  These communications by and among the Commission

and its employees to provide legal advice have been maintained confidentially and not disclosed

to any person outside the SEC. (Kerstetter Decl. at ¶ 27)  They are thus fully protected by the

attorney-client privilege.  *See, e.g., Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981) (in

house counsel's investigatory materials and communications were protected by corporation's

attorney client privilege when they were made by corporate employees to corporate counsel so

that the corporation could obtain legal advice).

<div align="center">

b.      *Work Product Doctrine*

</div>

The SEC's internal documents regarding its investigation are also protected by the work

product doctrine, which protects "documents and tangible things that are prepared in anticipation

of litigation or for trial by or for another party or its representative (including the other party's

attorney, consultant, surety, indemnitor, insurer or agent)."  Fed. R. Civ. P. 26(b)(3)(A).  The

doctrine focuses on documents, like the SEC's documents here, that "lawyers typically prepare

for the purpose of litigating cases" and properly protects documents prepared by a lawyer as he

"assemble[s] information, sift[s] through what he considers to be the relevant from the irrelevant

facts, prepare[s] his legal theories and plan[s] his strategy."  *Hickman v. Taylor*, 329 U.S. 495,

511 (1947).  The documents in these categories represent exactly that – the work of the attorneys

preparing their analyses in anticipation of litigating this case.  Documents authored by non-

attorneys created at the behest of the SEC's attorneys also enjoy work product protection.  *See,

e.g., SEC v. NIR Group*, 283 F.R.D. 127, 134 (E.D.N.Y. 2012).[6]

As to the SEC's claims of work product, courts have long held that when the SEC

launches an investigation into suspected violations of the securities laws, it does so with a view

---

[6] The SEC is withdrawing its work-product claims as to internal documents generated during OCIE's examination of Bluepoint.  These documents are still covered by applicable deliberative process and attorney-client privileges.  A revised log is attached as Exhibit 3 and has been provided to Defendants.

<div align="center">25</div>

towards litigation. *See, e.g., Gavin v. SEC,* 2007 WL 2454156, at \*9 (D. Minn. Aug. 23, 2007) ("SEC attorneys prepared these documents in the course of active investigations focusing on specific actions and possible securities law violations… As such, the documents were prepared in anticipation of litigation and qualify as attorney work product."); *SEC v. Nacchio*, 2007 WL 219966, at \*6-8 (D. Colo. Jan. 25, 2007) (holding that internal SEC staff communications regarding Enforcement investigation constituted work product); *SEC v. Navarre*, 1993 WL 267295, at \*1 (S.D.N.Y. July 13, 1993) ("The Enforcement Division's purpose in conducting these interviews was to determine whether there were violations. If such violations were found, the next step would be either litigation or administrative sanctions. It is not merely that future litigation was a possibility; the preparation for such future litigation was a principal motivation of the interviews."); *SafeCard Services, Inc. v SEC*, 926 F.2d 1197, 1202 (D.D.C. 1991) ("The existence of an active investigation, therefore, is strong circumstantial evidence that the agency lawyer prepared the document with future 'litigation in mind.'").

As set forth in the Kerstetter Declaration, beginning in late 2015, the SEC began an examination of Bluepoint Investment Counsel, LLC, a Registered Investment Adviser, and related entities. (Kerstetter Decl. at ¶ 5)  Shortly thereafter, in April 2016, OCIE made a referral to the Enforcement Division. (Kerstetter Decl. at ¶ 6)  Based on the referral the Enforcement Division opened an inquiry on April 28, 2016, and an Enforcement Division attorney and an accountant were assigned to look into the referral. (Kerstetter Decl. at ¶ 7)  A formal investigation was opened on July 1, 2016. (Kerstetter Decl. at ¶ 7)  At the same time the formal investigation was opened, the SEC issued a litigation hold to preserve all documents and ESI relating to the investigation. (Kerstetter Decl. at ¶ 7)  And in November 2016, the Commission issued a Formal Order empowering SEC staff members to, among other things, subpoena

26

witnesses for investigative testimony and require that parties produce documents.  (Kerstetter Decl. at ¶ 8).  The Formal Order identified the valuation of assets in private investment funds and the taking of fees based on inflated or misvalued assets as some of the bases for these possible violations.  (Kerstetter Decl. at ¶ 8)  The SEC conducted the investigation to obtain evidence confirming whether Defendants had violated the federal securities laws, and the SEC conducted the investigation in anticipation of litigation.  (Kerstetter Decl. at ¶¶ 8-9, 26)  Defendants cannot overcome these facts.

> c.     *Deliberative Process Privilege*

SEC properly asserts the deliberative process privilege.  It is significant to note that most of the documents over which the SEC has asserted privilege are internal communications between and among the attorneys examining and investigating the case, and the other members of the SEC's staff working at their direction and control.  (Kerstetter Decl. at ¶ 25)  The deliberative process privilege "allow[s] agencies to freely explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny . . . [and ensures] that agencies are not forced to operate in a fish bowl."  *Moye, O'Brien, Hogan, & Pickert v. Nat'l R.R. Passenger Corp.*, 376 F.3d 1270, 1277-1278 (11th Cir. 2004) (holding that an agency's audit reports, internal memoranda, notes and work papers were protected by the deliberative process privilege).  To qualify for this privilege, a document must be pre-decisional, meaning that it must be generated before the adoption of an agency policy or decision, and it must contain deliberative communications reflecting the give-and-take or internal dialogue of the consultative process. *Nat'l Immigrant Justice Ctr. v. U.S. Dep't of Justice*, No. 19-2088, 2020 WL 1329660, at *3-4 (7th Cir. Mar. 23, 2020) (citing *Tax Analysts v. I.R.S.*, 117 F.3d 607, 616 (D.C. Cir. 1997)).

27

The SEC's internal communications about the examination, investigation, and anticipated litigation are "predecisional" in that they preceded major decision-making, such as OCIE's decision to refer their examination to the Enforcement Division, the Enforcement Division's decision to recommend action be taken against the Defendants, and the Commission's decision to authorize litigation.  (Kerstetter Decl. at ¶ 28)  They are also "deliberative" as the documents reflect the SEC's internal considerations and dialogue regarding those considerations. (Kerstetter Decl. at ¶ 28)  These internal communications reflect the SEC's decision-making process and, thus, are protected from disclosure by the deliberative process privilege.

### d.    Law Enforcement Privilege

Finally, the SEC properly asserts the law enforcement privilege as to its communications with the DOJ regarding the SEC's and DOJ's parallel, but separate investigations.  "The purpose of this privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation."  *United States v. Owens*, 2019 WL 6896144, at *1 (E.D. Wisc. Dec. 18, 2019) (quoting *In re Dept. of Inv. of City of N.Y.*, 856 F.2d 481, 484 (2d Cir. 1988)).  "The interests that underlie the privilege are 'rooted in common sense as well as common law' and, like other common law privileges, the law enforcement privilege is subject to 'pragmatic adjustment to the needs of sound government.'" *Perez v. Mueller*, 2016 WL 6882851, at *4 (E.D. Wisc. Nov. 22, 2016) (quoting *Black v. Sheraton Corp. of Am.*, 564 F.2d 531, 542 (D.C. Cir. 1977)).  The privilege is not limited to ongoing investigations; information about past investigations might seriously imperil an agency's ability to conduct future investigations.  *Id*. (citing *Dinler v. City of New York*, 607 F.3d 923, 942 fn. 18 (2d Cir. 2010)).

28

The applicable documents are listed by category as permitted given the nature of the documents – communications between the SEC and criminal law enforcement agencies regarding respective investigations and which are indisputably privileged.[7]  Disclosure of these communications would "implicate the SEC's law enforcement privilege since it might reveal the SEC's techniques and procedures and how it develops relationships with informants, and strategies for eliciting information from individuals who provide it with information."  *SEC v. Rosenfeld*, 1997 WL 576021, at *3 (S.D.N.Y. Sept. 16, 1997); (Kerstetter Decl. at ¶ 18).  And as discussed in Section II.A.4.a above, these documents are wholly irrelevant to the allegations in the Amended Complaint.  Defendants appear to seek these privileged documents for the sole purpose of bolstering their unrelated *Bivens* action.

### C.    Interview Notes are Work Product

As the Seventh Circuit has recognized, the work product doctrine serves two purposes: "(1) to protect an attorney's thought process and mental impressions against disclosure; and (2) to limit the circumstances in which attorneys may piggyback on the fact-finding investigation of their more diligent counterparts."  *Sandra TE v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 621-22 (7th Cir. 2010) (citing *Hickman v. Taylor*, 329 U.S. 495 (1947)).  Defendants are not entitled to intrude on the mental impressions of the SEC's counsel by reviewing interview notes taken by or at the direction of SEC attorneys in anticipation of this litigation.  *See Upjohn Co. v. United States*, 449 U.S. 383, 398-99 (1981) ("Forcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes . . ."); *Harper & Row Publishers, Inc. v. Decker*, 423 F.2d 487, 492 (7th Cir.

---

[7] The SEC's publicly available Enforcement Manual includes policies and procedures regarding parallel investigations, including limitations on documents that may be shared between SEC and DOJ.  (Kerstetter Decl. ¶ 20).

1970) (work product doctrine extends to documents prepared by non-lawyers under an attorney's supervision).

Federal Rule of Civil Procedure 26(b)(3) protects against the disclosure of documents otherwise discoverable prepared by or for another party or its representative in anticipation of litigation or for trial.  *See Am. Fam. Mut. Ins. Co. v. Electrolux Home Prods., Inc.*, 2014 WL 3513243 at *2 (W.D. Wis. July 14, 2014).  The rule provides a narrow exception if the party seeking discovery has substantial need of the materials and is unable without undue hardship to obtain the substantial equivalent of the materials by other means.  Fed. R. Civ. P. 26(b)(3).  Defendants concede that they are not claiming a substantial need for the SEC's interview notes.  (Dkt. No. 74.0 at p. 12 n.4).  Indeed, the SEC has already disclosed to the defendants the identities of the witnesses whom it interviewed during its investigation that preceded the filing of this litigation.  Defendants are free to interview or depose those same individuals, and—if they wish—can ask the witnesses about their discussions with the SEC.[8]

### 1.  Background

As set forth in the Kerstetter Declaration, beginning in late 2015, the SEC began an examination of Bluepoint Investment Counsel, LLC, a Registered Investment Adviser, and related entities.  (Kerstetter Decl. at ¶ 5)  Shortly thereafter, in April 2016, OCIE made a referral to the Enforcement Division.  (Kerstetter Decl. at ¶ 6)  Based on the referral the Enforcement Division opened an inquiry on April 28, 2016, and an Enforcement Division attorney and an accountant were assigned to look into the referral.  (Kerstetter Decl. at ¶ 7)  A formal investigation was opened on July 1, 2016.  (Kerstetter Decl. at ¶ 7)  At the same time the formal

---

[8] Ultimately, what the witnesses told the SEC during the interviews is irrelevant.  What is relevant is the factual information recounted by the witnesses.  *See SEC v. Nadel*, 2013 WL 1092144 at *3 (E.D.N.Y. Mar. 15, 2013).  Defendants do not need the SEC's interview notes to ask the witnesses about their underlying factual knowledge.

investigation was opened, the SEC issued a litigation hold to preserve all documents and ESI relating to the investigation.  (Kerstetter Decl. at ¶ 7)  And in November 2016, the Commission issued a Formal Order empowering SEC staff members to, among other things, subpoena witnesses for investigative testimony and require that parties produce documents.  (Kerstetter Decl. at ¶ 8).  The Formal Order identified the valuation of assets in private investment funds and the taking of fees based on inflated or misvalued assets as some of the bases for these possible violations.  (Kerstetter Decl. at ¶ 8)  The SEC conducted the investigation to obtain evidence confirming whether Defendants had violated the federal securities laws, and the SEC conducted the investigation in anticipation of litigation.  (Kerstetter Decl. at ¶¶ 8-9, 26).  Attorney Christopher White was the main attorney involved in the investigation, and the investigation was supervised by attorney Charles Kerstetter.  (Kerstetter Decl. ¶¶ 22, 2).

The Bluepoint Formal Order stated that the SEC had information tending to show that Bluepoint and other persons or entities were engaging in possible violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder, Sections 206(1) and 206(2), 206(4) of the Investment Advisers Act of 1940 ("Advisers Act"), and Rule 206(4)-8 thereunder.  The Formal Order identified the valuation of assets in private investment funds and the taking of fees based on inflated or misvalued assets as some of the bases for these possible violations.  (Kerstetter Decl. ¶ 8).  In this litigation, all of the SEC's counts allege violations of the same statutory provisions identified in the Formal Order, (*see* First Am. Compl., Dkt. No. 33 at ¶¶ 24-30), with a factual basis similar to the Formal Order, (*see* First Am. Compl. at ¶¶ 1-11).

The SEC obtained oral statements from witnesses in two different ways during its investigation.  (Kerstetter Decl. ¶ 10).  The Formal Order permits the SEC to subpoena witnesses

31

to testify under oath, and those formal testimonies were transcribed by a court reporter. (Kerstetter Decl. ¶ 10).  The SEC has already produced the transcripts and exhibits for the eight witnesses who sat for formal testimonies in the investigation of this matter. (Kerstetter Decl. ¶ 10).

In other instances, Mr. White, and sometimes other SEC attorneys, informally interviewed witnesses, either in person or over the phone.  (Kerstetter Decl. ¶ 11).  In some instances, Mr. White took his own notes of these interviews.  In other instances, notes were taken by a paralegal or accountant, whom were staffed on the investigation and working at the direction of Mr. White and/or the other SEC attorneys.  (Kerstetter Decl. ¶ 11).  The non-attorney staff sometimes prepared typewritten memoranda summarizing their notes after the interview was complete.  (Kerstetter Decl. ¶ 11).  The notes were taken in furtherance of the staff's investigation, the purpose of which was to determine whether to recommend that the SEC initiate litigation against Defendants.  (Kerstetter Decl. ¶ 11).  In addition to taking notes during interviews, these non-attorney staff members participated in the investigation in other ways, including assisting Mr. White and other SEC attorneys with reviewing evidence and developing investigative strategy.  (Kerstetter Decl. ¶ 11).

The interview notes are not verbatim transcripts of the witnesses' statements, but rather are summaries of the facts the note taker deemed most significant or the attorney(s) told the note taker were most significant.  (Kerstetter Decl. ¶ 12).  The selection of topics, the amount of focus given to each one, and the areas of follow-up reveal the attorney's mental impressions regarding the witness's role.  Likewise, the determination of which parts of the interview warrant being written down also reflects the attorney's mental impressions as to the significance of particular facts.  Additionally, not every set of interview notes prepared by a paralegal or accountant was

written up as a memorandum.  (Kerstetter Decl. ¶ 11).  The determination of whether to prepare a memorandum and what information to include in the memorandum reflects the attorney's mental impression as to the significance of particular witnesses or particular facts.

None of the SEC's interview notes or memoranda have been shared with anyone outside of the SEC.  (Kerstetter Decl. ¶ 13).

## 2.  Argument

### a.  The notes were prepared in anticipation of litigation

During the enforcement investigation, Mr. White or non-attorney staff working at his direction prepared 45 sets of interview notes or interview memorandum, which are identified on the SEC's privilege log as entries 1-45.  (Dkt. No. 74-6).  The interviews discussed in those notes took place between April 25, 2017 and May 30, 2019.  By the time those interviews commenced, the SEC had already opened a formal investigation and implemented a litigation hold on all records relating to the investigation.  (Kerstetter Decl. ¶ 7)  The SEC staff had also obtained a Formal Order, which summarized the potential securities law violations. (Kerstetter Decl. ¶ 8)  The interview notes were all prepared in furtherance of the SEC attorneys' investigation, the purpose of which was to determine whether to recommend initiating litigation.[9] (Kerstetter Decl. ¶¶ 11, 24-26)

The Seventh Circuit recognizes that "[w]ork product protection applies to attorney-led investigations when the documents at issue can fairly be said to have been prepared or obtained because of the prospect of litigation."  *Sandra TE*, 600 F.3d at 622 (internal citation and quotation omitted).  Rule 26(b)(3) distinguishes between "fact" work product and "opinion" work product.  Opinion work product reveals the mental impressions, conclusions, opinions, or

---

[9] The SEC is withdrawing its work-product assertions as to OCIE's interview notes.  The SEC is attaching a revised privilege log reflecting this.

legal theories of counsel and is entitled to "even greater protection against disclosure." *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976 n.4 (7th Cir. 1996); *see also Chartraw v. City of Shawano*, 2017 WL 5462187 at *4 (E.D. Wis. Nov. 14, 2017) (protection of opinion work product is "for all intents and purposes absolute") (internal citation and quotation omitted). Attorney interview notes are opinion work product entitled to this heightened level of protection. *Chartraw*, 2017 WL 5462187 at *5.

Consistent with the Seventh Circuit's standard, the overwhelming majority of courts to address this issue have held that interview notes prepared by or at the direction of SEC attorneys during an SEC investigation are work product and protected from disclosure. *See, e.g., SEC v. Goldstone*, 301 F.R.D. 593, 660-63 (D.N.M. 2014); *SEC v. Neil*, 2014 WL 2931096 at *4 (N.D. Cal. June 27, 2014) (notes and memoranda prepared to aid the Commission's decision on bringing an action are protected work product); *SEC v. Nadel*, 2013 WL 1092144 at *1 (E.D.N.Y. Mar. 15, 2013) (notes taken by non-attorney SEC staff during investigation were opinion work product entitled to "almost absolute protection from discovery" requiring party seeking discovery to show "extraordinary justification") (internal citations and quotations omitted); *SEC v. Talbot*, 2005 WL 1213797 at *1 (C.D. Cal. Apr. 21, 2005); *SEC v. Treadway*, 229 F.R.D. 454, 455-56 (S.D.N.Y. 2005); *SEC v. Downe*, 1994 WL 23141 at *2 (S.D.N.Y. Jan. 27, 1994) ("notes of an attorney concerning witness interviews are precisely the type of materials that the Supreme Court identified in *Upjohn* as deserving of special protection").

Defendants rely primarily on *SEC v. National Student Marketing Corp.*, 1974 WL 415 (D.D.C. 1974), which is no longer good law. The court in that case stated that under the "new" Rule 26(3)—which codified the work product doctrine in 1970—it was unclear at what point during its investigation the SEC anticipated litigation. *Id.* at *9. But the D.C. Circuit

34

subsequently clarified that documents are prepared in anticipation of litigation when they "have been prepared with a specific claim supported by concrete facts which would likely lead to litigation in mind." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1202 (D.C. Cir. 1991) (internal citation and quotation omitted). "A law enforcement agency may meet this standard by demonstrating that one of its lawyers prepared a document in the course of an investigation that was undertaken with litigation in mind. Such an investigation would have to be, and typically would be, based upon a suspicion of specific wrongdoing and to build a case against the suspected wrongdoer. *The existence of an active investigation, therefore, is strong circumstantial evidence that the agency lawyer prepared the document with future 'litigation in mind.'" Id.* (emphasis added). All of the interviews in the Enforcement investigation were conducted after the SEC had opened an investigation and obtained a Formal Order summarizing the potential charges for which it was contemplating litigation. *See SEC v. Nacchio*, 2007 WL 219966 at *7 (D. Colo. 2007) (by the time a Formal Order was issued, "the Enforcement Division had embarked on a process that clearly reflected an adversarial perspective and a particularized focus"); *Neil*, 2014 WL 2931096 at *4 (notes taken after Formal Order was issued were in anticipation of litigation).

The other primary case on which Defendants rely, *SEC v. Thrasher*, 1995 WL 46681 (S.D.N.Y. Feb. 7, 1995), is also no longer good law with respect to the work product issue. *See SEC v. Strauss*, 2009 WL 3459204 at **6-7 (S.D.N.Y. Oct. 28, 2009) ("Since the [Second Circuit] subsequently rejected one of the limitations on the work-product doctrine that was central to the decision in *Thrasher*, I respectfully submit that *Thrasher* no longer reflects the current state of the law."). Since *Thrasher* was decided, other courts in the Southern District of New York have repeatedly held that SEC interview notes are non-discoverable work product.

*See Strauss*, 2009 WL 3459204 at **4-7; *SEC v. Stanard*, 2007 WL 1834709 at **1-2 (S.D.N.Y.

Jun. 26, 2007); *Treadway*, 229 F.R.D. at 455-56; *SEC v. Cavanagh*, 1998 WL 132842 at *2

(S.D.N.Y. Mar. 23, 1998) (interview notes taken by SEC attorneys "in order to provide the

Commission with information so it could make the determination whether to proceed with

litigation in this matter" fell "squarely within the protections of the work product

doctrine")(internal citation and quotation omitted).  Moreover, in *Thrasher*, the witnesses were

unavailable—one was dead, one fled the country, several had disappeared, and others were

invoking the Fifth Amendment and refusing to testify. *Thrasher*, 1995 WL 46681 at *8.  Here,

Defendants do not even attempt to argue they have substantial need for the SEC's interview

notes—and for good reason, as Defendants are free themselves to interview or depose the same

witnesses the SEC interviewed. There is no suggestion by the Defendants that any of the

witnesses at issue here are unavailable.

Defendants' other cases are readily distinguishable.  *Reich v. Great Lakes Collection*

*Bureau, Inc.*, 172 F.R.D. 58, 61 (W.D.N.Y. 1997), involved a Department of Labor investigation

of an employee wage and overtime complaint.  Those DOL investigations "*are not conducted by*

*attorneys* and do not automatically lead to litigation." *Id.* (emphasis added).  Because the

investigations were not conducted by attorneys, the documents at issue could not have been

prepared by or at the direction of counsel.  Finally, in *General Electric Co. v. Johnson*, 2006 WL

2616187 (D.D.C. 2006), GE claimed the EPA was unconstitutionally enforcing particular

provisions of the environmental laws.  The court held the EPA could not withhold broad general

training manuals, guidelines, and documents relating only to broad programs or policies.  *Id.* at

*13.  In contrast, "documents that were created with a particular site, PRP, investigation, event,

or violation in mind are generally protected because they possess a reasonable nexus to the

36

anticipation of foreseeable and specific litigation." *Id.* (citing *SafeCard Servs.* 926 F.2d at 1202-03). Here, all of the interview notes were prepared in connection with the particular investigation that led directly to this litigation.

                      **b.**      *Defendants' remaining arguments are meritless*

Defendants argue that a form cover letter accompanying a subpoena to one witness, Phil Skrade, somehow was intended to "induce witness cooperation by claiming [the SEC] is engaged in a mere investigation and then turn around and claim that materials collected through those assertions were generated because of anticipated litigation." (Dkt. 74 at 14). This argument is nonsensical. First, Mr. Skrade was subpoenaed for formal testimony, and the SEC has produced the transcript of that testimony to Defendants. Second, a subpoena is not an invitation to a witness to cooperate; it is a command to produce documents and/or appear for testimony. Finally, the SEC was engaged in an investigation with a specific focus, and the work product doctrine protects documents generated to aid the SEC's decision about whether to litigate. *See Sandra TE*, 600 F.3d at 622; *Neil*, 2014 WL 2931096 at *4. One court rejected a similar argument based on the same form cover letter, observing that the defendants' position "would limit the work product doctrine to those material prepared after the SEC made its decision to commence actual litigation . . . That view is contrary to the weight of established precedents." *Nacchio*, 2007 WL 219966 at *8.

Next, Defendants argue the SEC waived the work product protection over its interview notes because it produced transcripts of the formal testimonies it took. The testimony transcripts do not fall within the scope of the work product doctrine because they were not prepared by or at the direction of SEC attorneys. The transcripts were prepared by court reporters and are simply verbatim records of everything said during each testimony. (Kerstetter Decl. ¶ 10). They are not

notes prepared through the filter of an attorney's mental impressions.  *See Downe*, 1994 WL

23141 at *3 ("Transcripts, unlike notes, are not likely to reveal the mental impressions of an

attorney.")  The SEC did not waive the work product protections for its interview notes by

producing the testimony transcripts that are not work product in the first place.

Finally, Defendants argue that *Brady v. Maryland*, 373 U.S. 83 (1963) permits them to

rummage through the SEC's work product in search of evidence that may be helpful to them.[10]

*Brady* involves a due process right in criminal cases.  It has no application to the civil discovery

process.  *See SEC v. Sells*, 2012 WL 12921346 at *4 (N.D. Cal. Aug. 31, 2012) ("the *Brady*

doctrine is not controlling in civil cases").  The Seventh Circuit has "been extremely reluctant to

allow discovery of attorney work product simply as impeachment evidence."  *Sandra T.E.*, 600

F.3d at 622-23.  The most recent case Defendants cite involved the denaturalization and

deportation of an alleged Nazi war criminal and has no applicability here.  *See Demjanjuk v.*

*Petrovsky*, 10 F.3d 338, 353 (6th Cir. 1993) (applying *Brady* where denaturalization or

extradition "based on proof of alleged criminal activities").  Defendants also observe that in SEC

administrative proceedings, the Enforcement Division may not withhold *Brady* material.  *See* 17

C.F.R. § 201.230(b).  But discovery in administrative proceedings is different from, and limited

when compared with, discovery under the Federal Rules of Civil Procedures, and the

Commission's *Brady* rule forms an element of the different discovery procedures provided under

the Commission's Rules of Practice.  *See* 17 C.F.R. § 201.230.  In contrast, *Brady* is inapplicable

---

[10] Defendants' footnote 6 speculates that the fact the SEC interviewed more witnesses than it took testimony from somehow means the interviewed witnesses provided unhelpful information.  There are many reasons why an informal interview might be preferable in some circumstances. A formal testimony requires substantial time to schedule, prepare for and take.  The SEC also incurs costs for the court reporter, transcript, and travel.  In contrast, informal interviews can be arranged and conducted quickly at minimal or no expense and with little imposition on the witness.

in this case because Defendants have access to the full set of discovery devices available under the Federal Rules of Civil Procedure.

### D.     The SEC's Answers to Interrogatories are Appropriate

#### 1.     The SEC's Answer to Interrogatory 1

Defendants' Interrogatory 1 states "Identify all communications with any persons interviewed or contacted in relation to: the above-captioned case; any related litigation; the SEC's examination of Bluepoint Investment Counsel, LLC, number C-8024; its pre-complaint investigation of Bluepoint Investment Counsel, number C-8331; or the parallel investigation of Defendants conducted by the United States Department of Justice ("DOJ"); and identify the substance of those communications…." (Dkt. No. 74-4 at ECF p.3).  In response to Interrogatory 1, the SEC properly objected that the interrogatory was "overbroad, unduly burdensome, and disproportionate to the needs of the case because it requests the identification of communications and substance thereof with any persons interviewed or contacted beyond those communications with respect to the above-captioned litigation and related investigation…." (Dkt. No. 74-4 at ECF p.4).  The SEC also objected because the interrogatory sought "information beyond the scope of [Rule 26] because it requests identification of any communications and the substance of those communications with any persons interviewed or contacted in relation to" the SEC's examination of Bluepoint, "any related litigation," and the DOJ's parallel criminal investigation.  (Dkt. No. 74-4 at ECF p.4).  The SEC further objected because the interrogatory asked for "the production of information subject to the attorney-client privilege, law enforcement privilege, deliberative process privilege, and/or work product privilege."  (Dkt. No. 74-4 at ECF p.4).  Regardless, the SEC provided a response that directed

39

the Defendants to the testimony transcripts identified in the SEC's initial disclosures. (Dkt. No. 74-4 at ECF p.4).

First, information regarding interviews or contacts with persons in "any related litigation" and the DOJ's parallel criminal investigation is neither relevant nor proportional to the needs of the case.  The reference to "any related litigation" is so broad and vague that it is improper.  So is Defendants' definition of "[p]ersons with whom communications should be identified," which includes "any other person from whom information relevant to the Complaint in the above-captioned case … was received or developed."  This is so overly broad that it includes the SEC's own staff and intra-Division interactions, including with the Commissioners, and thus calls for clearly privileged information.  Defendants also fail to establish the relevance of witness interviews conducted by the DOJ or in "any related litigation."  In fact, Defendants fail to provide any argument as to why this information is either relevant or proportional to the needs of the case.

Second, asking the SEC to identify its communications with persons interviewed or contacted during the course of the SEC's examination and investigation – other than on-the-record testimony transcribed by a court reporter – is the equivalent of asking for the SEC's notes and mental impressions of its witness interviews.  *See, e.g., SEC v. Sentinel Management Group, Inc.*, 2010 WL 4977220, at *7 (N.D. Ill. Dec. 2, 2010) (finding that interrogatories seeking "facts, knowledge, and prior statements of witnesses" that were "communicated to the plaintiff in interviews" inappropriately "divulges what counsel learned from interviewing potential witnesses in anticipation of litigation. This is classic attorney work product whether [defendant] seeks the information by means of a document request for existing interview summaries, or an interrogatory requiring the SEC to prepare a written response summarizing those interviews").

*See also Hickman v. Taylor*, 329 U.S. 495, 499-500, (1947) (declining to require response to interrogatory that asked defendant to "set forth in detail the exact provisions of any ... oral statements or reports"); *Ferruza v. MTI Tech.*, 2002 WL 32344347, at *3 (C.D. Cal. June 13, 2002) ("[T]he identity of witnesses interviewed by opposing counsel is protected."); *LaPorta v. City of Chicago*, 1998 WL 89130, at *2-3 (N.D. Ill. Feb. 13, 1998) (setting aside magistrate judge's order granting motion to compel and rejecting interrogatory requesting summary of potential testimony of third parties, where requesting parties could have taken depositions or interviewed the witnesses themselves).  As discussed further in Section II.C above, such information is protected attorney work-product and the SEC's objections are appropriate.

Third, in requesting information about who was interviewed or contacted by the DOJ, the request once again seeks attempt an end-around the normal methods of discovery – a third party subpoena to DOJ – by asking the SEC for information in the possession of the DOJ.   Like with their document requests, Defendants are now using interrogatories to obtain information that the DOJ gathered during its separate and distinct criminal investigation that Defendants know they likely cannot obtain directly from DOJ.  *See, e.g., United States v. American Optical Co.*, 37 F.R.D. 239 (E.D. Wisc. 1965) (defendants in civil antitrust case brought by DOJ not entitled to production of grand jury transcripts from parallel DOJ criminal case against defendants where their sole purpose was discovery in the civil action).

Regardless of Defendants' motives, as discussed in Section II.A.1 above, the law is clear that the SEC does not have possession, custody, or control over information gathered or generated by DOJ that was not otherwise provided to the SEC.  And even if the DOJ provided information to the SEC about who it interviewed and the substance of such interview, such

information is protected from disclosure as discussed in Section II.B.2 above, as it calls for information protected by either the law enforcement privilege or the work-product doctrine.

## 2. The SEC's Answer to Interrogatory 2

Defendants' Interrogatory 2 states "Identify all communications with persons interviewed or contacted by the Federal Bureau of Investigation ("FBI"), DOJ, or any United States Attorney's Office ("USAO") in relation to any investigation of Defendants or the Greenpoint Funds…."  (Dkt. No. 74-4 at ECF p. 4-5).  In response to Interrogatory 2, the SEC properly objected to the interrogatory because it sought irrelevant material that is not proportional to the needs of the case, because it sought information not in the possession, custody or control of the SEC, and because it calls for the production of information subject to the attorney-client privilege, law enforcement privilege, deliberative process privilege, and/or work product privilege. (Dkt. No. 74-4 at ECF p. 5).

To be clear, if the SEC had non-privileged and relevant communications with witnesses, those communications were produced in discovery.  But that is not what the interrogatory asks for.  Instead, it seeks to learn (1) what persons were interviewed or contacted by the DOJ, and (2) for the SEC to identify all communications with those persons.  Significantly, the request does not limit the "communications" to just those between the witness and the DOJ.  Instead, the request is broad enough to also include the SEC's communications with those persons (whether or not related in any way to the DOJ's interview or contact), as well as communications that seemingly any other person or entity had with those persons about any topics.  As such it is overbroad, irrelevant, and not proportional to the needs of the case.

Like with Interrogatory 1, Defendants improperly ask the SEC for information in the possession of the DOJ that Defendants know they cannot obtain directly from DOJ.   As

42

discussed above, the SEC does not have possession, custody, or control over information gathered or generated by DOJ that was not otherwise provided to the SEC. If information was provided to the SEC, it is covered by an applicable privilege. And again, asking the SEC to identify its communications with persons interviewed or contacted by the DOJ is the equivalent of asking for the SEC's work-product.

Finally, the information sought is neither relevant nor proportional to the needs of the case. Defendants fail to establish the relevance of whether or not a witness was interviewed or contacted by the DOJ, and if they were, the relevance of anyone's communications with those persons. Defendants again utterly fail to provide any argument as to why this information is either relevant or proportional to the needs of the case.

### 3.   The SEC's Answers to Interrogatories 3 and 4

Defendants' Interrogatories 3 and 4 seek the identity of "all communications" with the DOJ, or between the SEC and DOJ, "in relation to any referral by SEC for investigation of Defendants" or "in relation to any investigation of Defendants." (Dkt. No. 74-4 at ECF p. 5-6). In response, the SEC properly objected that the interrogatory sought irrelevant material that is not proportional to the needs of the case, and because it calls for the production of information subject to the attorney-client privilege, law enforcement privilege, deliberative process privilege, and/or work product privilege. (Dkt. No. 74-4 at ECF p. 5-6).

As with the prior interrogatory, this interrogatory seeks privileged communication between the SEC and DOJ regarding the respective parallel investigations. As discussed in detail in Section II.B.2 above, such communications are protected by either the law enforcement privilege or the work-product doctrine. The information is also irrelevant as detailed in Section II.A.4.a above. Defendants fail to establish the relevance of the SEC's and DOJ's

communications.  Defendants' speculation that DOJ may have informed the SEC that it was declining prosecution "may be relevant to numerous issues, including the conduct of witnesses," is insufficient to establish relevancy.

### 4.  The SEC's Answers to the Contention Interrogatories

Defendants' interrogatories 5 through 8 and 10 through 12 are all contention interrogatories.  The SEC provided detailed, substantive answers to all of them.  The SEC also correctly noted that these are contention interrogatories.  Pursuant to Rule 33(a)(2), "the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time."  The SEC stated it will supplement its answer to this interrogatories once fact discovery has progressed.  The point of discovery is obtaining evidence.  The SEC does not have to and indeed could not have obtained all evidence before it filed the litigation.  Defendants' complaints appear to be that they disagree that the SEC's answers and documents referenced prove that they violated the federal securities laws.  This complaint does not render the SEC's responses inadequate.

#### a.    *The SEC's Answer to Interrogatory 5*

Defendants' Interrogatory 5 states "Identify all bases for the contention, stated at Paragraph 5 of the Complaint, that "gains are largely fictitious."  (Dkt. No. 74-4 at ECF p. 6).  In response to Interrogatory 5, the SEC properly objected that it was overbroad, unduly burdensome, and disproportionate to the needs of this case because it asked the SEC to "identify *all* bases."  (Dkt. No. 74-4 at ECF p. 6-7).  The SEC also correctly noted that this is a contention interrogatory pursuant to Rule 33(a)(2), and the SEC will supplement its answer to this interrogatory once fact discovery has progressed.  (Dkt. No. 74-4 at ECF p. 6-7).

In compliance with Rule 33(d), the SEC identified documents, including

- the financial statements of Greenpoint Tactical Income Fund;
- the Accountant Compilation Reports for Greenpoint Tactical Income Fund;
- the general ledger for Greenpoint Tactical Income Fund;
- the valuation reports for Amiran Technologies Inc.;
- the appraisals for the gems and minerals;
- the testimony transcripts of Michael Hull, Christopher J. Nohl, William Metropolis;
- the production by BMO Harris.

(Dkt. No. 74-4 at ECF p. 6-7). Defendants' objection to the SEC's answer to Interrogatory 5 is basically that based on Defendants' review of the documents the SEC listed, Defendants do not think the SEC has proven the contention chosen by Defendants. For example, Defendants state, "the testimony transcripts cited do not contain any *admission* that gains were fictitious; nor do the appraisals cited contain any *obvious basis* for declaring the gains based on those appraisals fictitious." (Dkt. No. 74 at ECF p. 35) Defendants' assertion that evidence against them is insufficient does not make a discovery response "inadequate." As the SEC explained in Paragraph 5 of the First Amended Complaint, which is referenced in the interrogatory, "According to the Fund, as of June 30, 2018, it had a net asset value of $135 million based almost entirely on unrealized gains. Indeed, 95% of the purported gains are unrealized. These gains are largely fictitious." The financial statements show that the gains are unrealized.

### b. The SEC's Answer to Interrogatory 6

Defendants' Interrogatory 6 states, "Identify each and every instance in which you contend, as stated at Paragraphs 40-41 of the Complaint, that Hull made a false or misleading representation to any of Bluepoint's clients. . . ." (Dkt. No. 74-4 at ECF p. 7). In response to Interrogatory 6, the SEC properly objected that it was overbroad, unduly burdensome, and disproportionate to the needs of this case because it asked the SEC to "identify each and every instance." (Dkt. No. 74-4 at ECF p. 7-8). The SEC also correctly noted that this is a contention

interrogatory pursuant to Rule 33(a)(2), and the SEC will supplement its answer to this interrogatory once fact discovery has progressed.  (Dkt. No. 74-4 at ECF p. 7-8).

The SEC provided a narrative response, and in compliance with Rule 33(d), the SEC identified documents, including communications from investors requesting redemptions and discussing representations made to them by Bluepoint and Hull.  (Dkt. No. 74-4 at ECF p. 7-8). Notably, Defendants hampered the SEC's ability to respond to this interrogatory because it refused to produce documents in response to the SEC's Document Request 2 from the Second Set, which asked Defendants to "Produce all documents showing or evidencing all investor requests for redemptions, investor redemptions, and distributions to investors from the inception of the Fund to the present."  (Dkt. No. 63-15 at ECF pp. 3-4). On June 24, 2020, the Court granted the SEC's Motion to Compel Defendants to produce these documents.  (Dkt. No. 78).

In its answer to Interrogatory 6, the SEC states the false and misleading representations made by Hull and, through him, Bluepoint to Bluepoint's individual clients.  The SEC also states why they were false:

> Hull falsely stated that investments in Greenpoint Tactical Income Fund
>
> (1) were safe,
> (2) would generate high returns, and
> (3) could be withdrawn as needed.
>
> These were material misrepresentations and omissions by Hull and Bluepoint because the investments were not safe and the reported returns were inflated.  Furthermore, the investors' funds could not be withdrawn as needed.  Redemption requests by investors have been delayed or unfulfilled, and when they are fulfilled, it is when funds are received from new investors.
>
> Hull also falsely represented to Bluepoint's clients that Greenpoint Tactical Income Fund was actively selling minerals and often had arranged a sale of the mineral before the Fund even committed to purchase the mineral.  Greenpoint Tactical Income Fund did not often have sales arranged before even committing to a purchase.

(Dkt. No. 74-4 at ECF pp. 7-8)

Defendants' complaint is once again that they do not believe the answer establishes the false and misleading representations.  (Dkt. No. 74 at ECF p. 37 stating "if the SEC intends to at some point prove its case, it will have to come forward with specific communications . . .") Defendants' belief that evidence against them is insufficient does not make a discovery response "inadequate."

### c.   The SEC's Answer to Interrogatory 7

Defendants' Interrogatory 7 states, "Identify any matter you contend was not but should have been disclosed to investors in any of the Greenpoint Funds, and identify the basis on which you contend a disclosure obligation existed."  (Dkt. No. 74-4 at ECF p. 8).  In response to Interrogatory 7, the SEC properly objected that it was overbroad, unduly burdensome, and disproportionate to the needs of this case because it asked the SEC to "identify any matter  . . ." (Dkt. No. 74-4 at ECF p. 8-9).  The SEC also correctly noted that this is a contention interrogatory pursuant to Rule 33(a)(2), and the SEC will supplement its answer to this interrogatory once fact discovery has progressed.  (Dkt. No. 74-4 at ECF p. 8).

Over almost 20 pages, the SEC in detail lays out how Hull, Nohl, and their entities have unlawfully enriched themselves at the expense of investors by engaging in ***undisclosed self-dealing and related party transactions*** including charging the Fund triple digit interest on loans. (Dkt. No. 74-4 at ECF p. 9-28).  The SEC also details how Hull, Nohl, and their entities have failed to disclose and misled investors about interference in the appraisal process and how they were valuing the assets of the Fund.  Furthermore, the SEC details myriad negative facts regarding Amiran that Defendants failed to disclose while Hull and Nohl were drastically marking up the value of Amiran and taking increased management fees on these marked up values.

47

Defendants contend that the answer does not identify the basis for the disclosure obligation. That is not the case. It seems Defendants' actual complaint is that they do not believe they had to disclose their self-dealing, their related party transactions, their interference in the appraisal process, how they were valuing the assets of the Fund, or the negative facts about Amiran.

In the Motion to Compel, Defendants contend they are entitled to know the specific statutes. The statutes are detailed in the Complaint. For example, Count 1, violations of Section 17(a)(1) states

> By engaging in the conduct described above ***including engaging in undisclosed self-dealing and related party transactions and misleading investors about the Fund and their investments and about how the fund was being operated and valuing its assets,*** Defendants Hull, Nohl, Greenpoint Management II, Chrysalis, Bluepoint, Greenpoint Tactical Income Fund, and GP Rare Earth in the offer or sale of securities, by use of the means and instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, employed devices, schemes, and artifices to defraud.

(Dkt. No. 33, ₧ 413).

Nevertheless, the SEC restates the statutes:

- 17(a)(1), (2), and (3) of the Securities Act [15 U.S.C. § 77q(a)(1), (2), and (3)];
- Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(a), (b), and (c) thereunder [17 C.F.R. 240.10b-5(a), (b), and (c)];
- Sections 206(1), 206(2), and 206(4) of the Advisers Act [15 U.S.C §§ 80b-6(1), 80b-6(2), 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].
- Pursuant to Section 209(f) of the Advisers Act [15 U.S.C. § 80b-9(f)], Hull also aided and abetted Bluepoint's and Greenpoint Management II's violations of Sections 206(1) and 206(2) of the Advisers Act and Greenpoint Management II's violations of Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder.
- Pursuant to Section 209(f) of the Advisers Act [15 U.S.C. § 80b-9(f)], Nohl also aided and abetted Chrysalis' violations of Sections 206(1), 206(2), and 206(4) of the Advisers Act and Rule 206(4)-8 thereunder.

*d. The SEC's Answer to Interrogatory 8*

Defendants' Interrogatory 8 states, "Identify each asset of any of the Greenpoint Funds or any other affiliate of the Defendants you contend was overvalued, the extent of the alleged overvaluation, and the basis for this contention."  (Dkt. No. 74-4 at ECF p. 28).  In response to Interrogatory 8, the SEC properly objected that it was overbroad, unduly burdensome, and disproportionate to the needs of this case because it asked the SEC to "Identify each asset of *any of the Greenpoint Funds* or *any other affiliate of the Defendants . . .* "  (Dkt. No. 74-4 at ECF p. 28).  Asking the SEC to identify assets of any other affiliate of the Defendants, whatever that means, is over broad, is unduly burdensome, and disproportionate to the needs of the case as it involves assets that are not at issue.

The SEC also correctly noted that this is a contention interrogatory pursuant to Rule 33(a)(2), and the SEC will supplement its answer to this interrogatory once fact discovery has progressed.  (Dkt. No. 74-4 at ECF p. 28).

The SEC provided a 12 page narrative response, (Dkt. No. 74-4 at ECF p. 28-39), and in compliance with Rule 33(d), the SEC identified documents, including

- quarterly valuation reports for Amiran Technologies, Inc.;
- the appraisals of gems and minerals that were conducted within the year they were purchased;
- the Amended and Restated Operating Agreement of Greenpoint Tactical Income Fund, LLC that became effective on November 7, 2013;
- the financial statements of Greenpoint Tactical Income Fund;
- the transactions records for sales, trades, and purchases of gems and minerals.

Defendants' Motion to Compel claims that the SEC did not identify the minerals that were improperly appraised in the year they were purchased rather than being valued at their purchase price. (Dkt. No. at ECF p. 39)  This misses the point.  The minerals at issue as described by the SEC are just those:  the ones that were appraised in the year they were purchased.  For example, in its narrative response, the SEC explained that in violation of the

49

Amended Operating Agreement, "***Hull and Nohl had 22 of the minerals that the Fund***

***purchased in 2014 appraised in 2014*** rather than being valued at the purchase prices as required

by the Amended Operating Agreement." (Dkt. No. 74-4 at ECF p. 29).  It is the 22 minerals that

the Fund purchased in 2014 and had appraised in 2014.  For 2015, it is the 175 minerals that the

Fund purchased in 2015 and had appraised in 2015.  (Dkt. No. 74-4 at ECF p. 29).

> The answer to interrogatory 8 states:
>
> The Amended Operating Agreement defines Fair Market Value as "the value of non-current assets determined by appraisal.  ***Provided, however, the value of any assets shall be its purchase price for the year within which it is acquired.***"
>
> Hull and Nohl as managers of the Fund repeatedly violated and caused the Fund to violate the requirement of its Amended Operating Agreement that the Fund value its gems and minerals at cost during the year the Fund acquired them.  ***Hull and Nohl had 22 of the minerals that the Fund purchased in 2014 appraised in 2014*** rather than being valued at the purchase prices as required by the Amended Operating Agreement.  GP Rare Earth, under the control of Hull and Nohl, had the appraisals conducted.  The appraisals for 21 of the 22 mineral specimens assigned a higher value than the purchase price.  GP Rare Earth, under the control of Hull and Nohl, reported the appraised values to the Fund.  Hull and Nohl, through Chrysalis and Greenpoint Management II, then caused the Fund to report the higher appraised values in the Fund's financial statements.
>
> Using the appraised values rather than the purchase prices in violation of the Amended Operating Agreement resulted in unrealized gains of $4.4 million on the 21 minerals, yielding a reported return on investment of 111.9% through unrealized gains.  Hull and Nohl through Greenpoint Management II and Chrysalis, respectively, received increased ma0nagement fees by using the appraised values rather than the purchase prices as required by the Amended Operating Agreement.
>
> *******
>
> Hull and Nohl's use of the appraised values, rather than the purchase prices, in violation of the Amended Operating Agreement, resulted in unrealized gains of $14.8 million on the 175 minerals, yielding a reported return on investment of 133.8% through unrealized gains on those minerals.

(Dkt. No. 64-4 at ECF pp. 28-30)

With respect to Amiran, Hull, Nohl, and their entities acting through the Fund initially valued the Fund's interest in Amiran at over $4.2 million as of December 31, 2015 and increased the value of the Fund's interest to over $46 million as of June 30, 2018.  Hull, Nohl, and their entities more than doubled the value from the fourth quarter of 2017 to the first quarter of 2018 while knowing that the primary subsidiary of Amiran was in default on a line of credit secured by all of the subsidiary's assets and guaranteed by Amiran.  Amiran is now defunct and worthless. (Dkt. No. 74-4 at ECF pp. 30-39).

The SEC's interrogatory answer detailed how Hull and Nohl's valuations of Amiran were misleading, unreasonable, lacked an objective basis, and ignored significant negative facts. Despite this, Defendants claim that in order to state a claim the SEC has to allege what the correct values were.  The relevant statutes and case law do not require this.  Furthermore, this is a contention interrogatory pursuant to Rule 33(a)(2), and the SEC will supplement its answer to this interrogatory once fact discovery has progressed.

### e.   The SEC's Answer to Interrogatory 10

Defendants' Interrogatory 10 states, "Identify all matters you contend were misrepresented to investors or auditors relative to the Greenpoint Funds, including, without limitation, the specific representations and the basis for your contention that the representation was false."  (Dkt. No. 74-4 at ECF p. 48).  In response to Interrogatory 10, the SEC properly objected that it was overbroad, unduly burdensome, and disproportionate to the needs of this case because it asked the SEC to "Identify *all matters* you contend were misrepresented to investors or auditors *relative to the Greenpoint Funds*.  (Dkt. No. 74-4 at ECF p. 48).  "All matters" and "relative to the Greenpoint Funds" are hopelessly overbroad.  "[D]iscovery requests seeking information 'related to' a particular topic are overly broad because they do not provide a basis

upon which an individual or entity can reasonably determine what information may or may not be responsive." *Trustees of Boston Univ. v. Everlight Elecs. Co. Ltd.*, 2014 WL 5786492, at *3 (D. Mass., Sept. 24, 2014). "The use of such omnibus terms [relating to or regarding] also requires the answering party to engage in mental gymnastics to determine what information may or may not be remotely responsive." *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 538 (D. Kan. 2003) (citation and omitted).

The SEC also correctly noted that this is a contention interrogatory pursuant to Rule 33(a)(2), and the SEC will supplement its answer to this interrogatory once fact discovery has progressed. (Dkt. No. 74-4 at ECF p. 48)

The SEC provided a 20 page narrative response, (Dkt. No. 74-4 at ECF pp. 48-68), and in compliance with Rule 33(d), the SEC identified documents, including

- the financial statements of Greenpoint Tactical Income Fund;
- the transactions records for sales, trades, and purchases of gems and minerals;
- the agreements for loans between Greenpoint Tactical Income Fund, other Greenpoint Funds, managers of Greenpoint Tactical Income Fund, and investors in Greenpoint Tactical Income Fund;
- the Confidential Investment Letters for Greenpoint Tactical Income Fund;
- updates and letters to investors;
- individual communications with investors;
- offering materials for Greenpoint Tactical Income Fund

Defendants' complaint is that "it is unclear how the identified documents are responsive." (Dkt. No. 74 at ECF p. 41) The 20 page narrative response details the misrepresentations. Just because Defendants do not think the documents contain misrepresentations does not mean that the answer is inadequate.

*f.   The SEC's Answer to Interrogatory 11*

Defendants' Interrogatory 11 states, "Identify all bases for your contentions that any valuations of Amiran Technologies, LLC were false or misleading, including the extent of any

alleged overvaluation."  (Dkt. No. 74-4 at ECF p. 68).  In response to Interrogatory 11, the SEC

properly objected that it was overbroad, unduly burdensome, and disproportionate to the needs of

this case because it uses the overbroad "any valuations of Amiran" not the valuations at issue in

this litigation.  (Dkt. No. 74-4 at ECF p. 68).

The SEC also correctly noted that this is a contention interrogatory pursuant to Rule

33(a)(2), and the SEC will supplement its answer to this interrogatory once fact discovery has

progressed.  (Dkt. No. 74-4 at ECF p. 68).

The SEC provided a 30 page narrative response, (Dkt. No. 74-4 at ECF pp. 68-98), and in

compliance with Rule 33(d), the SEC identified documents, including

- financial statements of Greenpoint Tactical Income Fund;
- the valuation reports for Amiran Technologies, Inc.;
- the production by BMO Harris;
- the testimony transcripts of Hull and Nohl

The SEC detailed how Hull and Nohl's valuations of Amiran were misleading,

unreasonable, lacked an objective basis, and ignored significant negative facts.  Despite this,

Defendants claim that in order to state a claim the SEC has to allege what the correct values

were.  (Dkt. No. 74 at ECF p. 40)  The relevant statutes and case law do not require this.

Furthermore, this is a contention interrogatory pursuant to Rule 33(a)(2), and the SEC will

supplement its answer to this interrogatory once fact discovery has progressed.

### g.   The SEC's Answer to Interrogatory 12

Defendants' Interrogatory 12 states, "Identify all bases for the contention, stated in

Paragraph 63 of the Complaint, that the "false" contract identified did not accurately state the

terms of the subject agreement, and identify any instance in which the "false" contract was held

out to any party as a true and correct contract."  (Dkt. No. 74-4 at ECF p. 98).

The SEC correctly noted that this is a contention interrogatory pursuant to Rule 33(a)(2), and the SEC will supplement its answer to this interrogatory once fact discovery has progressed. (Dkt. No. 74-4 at ECF p. 98).

In compliance with Rule 33(d), the SEC identified documents, including

- the contract with Marcus Budil,
- the copy of the contract in Baker Tilly's work papers,
- Greenpoint Tactical Income Fund's financial statements and general ledger.

(Dkt. No. 74-4 at ECF p. 98).  With respect to this false contract, the First Amended Complaint alleges:

> The three most expensive specimens were purchased from a dealer ("Dealer Number 1") for a combined price of $6.8 million.  The written contract with Dealer Number 1 dated February 18, 2015 required the Fund through GP Rare Earth to pay the following installments:
>
> - $1,000,000 due now [February 18, 2015]
> - $1,450,000 due April 15, 2015
> - $1,450,000 due June 15, 2015
> - $1,450,000 due August 15, 2015
> - $1,450,000 due October 15, 2015.
>
> Greenpoint Tactical Income Fund through GP Rare Earth failed to make the required payments to Dealer Number 1.  After the Fund through GP Rare Earth made partial payments, Dealer Number 1 delivered two of the three specimens to the Fund.  After the Fund through GP Rare Earth still had not fully paid Dealer Number 1, Dealer Number 1 threatened to sue.  The Fund then paid most of what it owed Dealer Number 1 plus a $500,000 late fee between December 2018 and February 2019.  The Fund did not take possession of the third piece, which is an emerald named the "Emperor," until February 2019 after it paid most of what it owed.  The Fund still owes $100,000 to Dealer Number 1.
>
> Nohl created a false contract with Dealer Number 1.  The false contract is the same as the actual contract with Dealer Number 1, but has handwritten on it "time is not of the essence and all payments are best efforts."  The false contract also has a signature on it.  Dealer Number 1 did not sign the false contract.
>
> Nohl recorded large, unrealized gains on the three specimens even though the Fund through GP Rare Earth did not make the payments according to schedule; still has not completely paid for them; did not have possession of two of the pieces until months after the contract date; and did not have possession of the

third specimen until February 2019.  The Fund and GP Rare Earth, under the control of Hull and Nohl, recorded large unrealized gains on minerals the Fund did not own, did not have possession of, and had not paid for.

(Dkt. No. 33, ¶¶ 63-66)  Defendants' complaint seems to be that they do not believe that the referenced documents show the contract is false.  That does not make the response inadequate.

## III.    <u>CONCLUSION</u>

For the reasons stated above, the SEC requests that the Defendants' motion to compel be denied.


Dated: August 6, 2020

<div style="margin-left:40%">

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**

By: <u>/s/ Doressia L. Hutton</u>
Doressia L. Hutton (HuttonD@sec.gov)
Timothy J. Stockwell (StockwellT@sec.gov)
Christopher H. White (WhiteCh@sec.gov)
175 West Jackson Boulevard, Suite 1450
Chicago, IL 60604-2615
(312) 353-7390
(312) 353-7398 (fax)

*Attorneys for Plaintiff the United States Securities and Exchange Commission*

</div>


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 6, 2020, I served a true and correct copy of the foregoing filing on all counsel of record through the Court's ECF filing system.

<div style="margin-left:40%">

By: <u>/s/ Doressia L. Hutton</u>

</div>