UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>      Plaintiff,<br><br>   v.<br><br>BLUEPOINT INVESTMENT COUNSEL, LLC, et al.,<br><br>      Defendants. | Case No. 19-cv-809 |

**REPLY TO OPPOSITION TO MOTION TO COMPEL RESPONSES TO
INTERROGATORIES AND PRODUCTION OF DOCUMENTS**

Plaintiff, the United States Securities and Exchange Commission ("SEC") has dragged the discovery process in this case out unreasonably. SEC's initial discovery responses were due February 13, 2020. It took three months – and the filing of a Motion to Compel – for SEC to even produce a privilege log. And after more conferral between the parties, SEC refused to correct inadequacies in its discovery responses or support its objections. SEC's Opposition to Motion to Compel ("Opposition") (Dkt. 80), adduces some facts that SEC asserts support its positions, and for the first time, answers some questions about SEC's document production. But while some of the new information (which should have been disclosed during the meet and confer process) resolves minor disputes, SEC has produced information that undercuts its own discovery objections and should be ordered to produce documents and respond to interrogatories.

Defendants address herein only those items where new information in the Opposition bears on the item or where SEC made an unexpected argument that needs to be addressed. Defendants do not address SEC's speculation as to motives or claims as to the inadequacy of any

discovery response made by Defendants, which is irrelevant to SEC's attention to its own discovery obligations.

To the extent an issue is not otherwise addressed herein, Defendants stand by the arguments made in their Memorandum in Support of Motion to Compel (Dkt. 74) and do not believe the issue needs to be further addressed. This is especially true with respect to SEC's responses to interrogatories, where SEC's responses simply did not address, in many cases, the actual interrogatory it was requested to answer.

**I.    ITEMS RESOLVED BY SEC'S OPPOSITION**

SEC's Opposition resolves two minor items on which Defendants no longer request a ruling. First, Defendants argued that SEC should be compelled to address the scope of its search, given that it indicated it had produced "what we regard as the staff's investigative file in this matter." Dkt. 74, ECF p. 27. In its Opposition, SEC for the first time actually addressed what this phrasing means. Dkt. 80, ECF p. 19.

Second, Defendants argued that SEC had waived its unsupported boilerplate objections on burden, breadth, and proportionality as to various requests for production. As to requests 1, 3, 13 and 18-20, SEC now states that it "searched for and produced the non-privileged, responsive documents that were in the possession or control of those staff members involved in the investigation and litigation of this matter." Dkt. 80, ECF p. 18. During the meet and confer process, SEC was not forthcoming as to whether documents were withheld on the basis of these breadth and scope objections; to the extent that SEC conducted a reasonable search, there is no need for further court action on these requests.[1]

---

[1] FRCP Rule 37(a)(5)(A) makes clear that a party is not to wait until after a motion to compel before cooperating in discovery, by awarding costs where a party produces information only after the filing of such a motion. This is the second time SEC has provided requested information only after Defendants filed a motion to compel (previously, SEC repeatedly refused to provide Defendants with information on when it intended to produce a privilege log and

## II. SEC HAS POSSESSION, CUSTODY, AND CONTROL OF DEPARTMENT OF JUSTICE DOCUMENTS

SEC argues it does not have possession, custody, or control of documents housed with the Department of Justice ("DOJ"). SEC cites numerous cases for this point, but the cited authority is inapposite. SEC first cites *SEC v. Stanard*, 2007 WL 1834709 (S.D.N.Y. June 26, 2007) as a case where DOJ shared information with SEC but where a similar motion was denied. SEC fails to note, however, that in that case the court found it significant that SEC represented that the U.S. Attorney had "indicated that it will not turn over the notes to either side in this matter." *Id.* at *3. SEC has made no similar representation here.

SEC further cites *United States v. Rigas,* 583 F.3d 108, 126 (2d Cir. 2009), and implies the appeals court considered whether SEC documents were in DOJ's custody or control. It did not. It affirmed the lower court's denial of a *Brady* motion on the basis of custody without examining the custody ruling. *Id.* The District Court itself did not perform analysis beyond noting that there was no joint investigation and citing to *Stanard*. *See United States v. Rigas,* 2008 WL 144824, at *2 (S.D.N.Y, January 15, 2008).

Nor is SEC's citation to *United States v. Morris*, 80 F.3d 1151, 1169-70 (7th Cir. 1996) applicable. There, the court affirmed a district court decision that under *Brady*, information in the possession of non-cooperating agencies should not be imputed to the prosecution team. Similarly, SEC mischaracterizes the holding of *United States v. Collins*, 409 F.Supp. 3d 228, 241-42 (S.D.N.Y. 2019). That case's discussion of a joint investigation is dicta, because the court held "[e]ven if the Government and the SEC were engaged in joint fact-finding in this case—and they were not… there is no evidence suggesting that the SEC is in sole possession of notes of

---

only disclosed its intended timing after a motion to compel was filed). Defendants do not request costs at this time but note this conduct in the event this pattern continues.

witness interviews or communications with counsel for witnesses." *Id.* There was no evidence suggesting relevant material was held by any agency other than the party agency in that case.

That said, SEC also ignores that the *Collins* case discusses factors regarding the existence of a joint investigation that SEC fails to address here. *Collins* cites and distinguishes *United States v. Martoma*, 990 F.Supp. 2d 458 (S.D.N.Y. 2014), where a joint investigation was found in part because of jointly conducted interviews, but also because of the scope of document sharing between the agencies, coordination of efforts in conducting depositions, and the fact that SEC was providing DOJ updates in the middle of depositions. *Collins*, 409 F.Supp. 3d at 242, *citing Martoma*, 990 F.Supp. 2d 458 (S.D.N.Y. 2014). SEC's categorical privilege log makes it impossible to evaluate the scope of document sharing, coordination efforts in conducting interviews, or whether similar updates were provided to DOJ, because SEC has withheld not only the information itself that was shared, but any detail around said information.

The SEC's other cited cases are similarly inapposite. SEC further claims that the Seventh Circuit has a different standard than set forth in the Ninth Circuit cases cited by Defendants for whether cooperating agencies are in possession of each other's documents. But SEC bases this contention on *Thermal Design Inc. v. Am Soc'y of Heating, Refrigerating & Air-Conditioning Eng'gs, Inc.*, 755 F.3d 832, 838-39 (7th Cir. 2014). That case addresses private organizations, not separate instrumentalities of the same government. With respect to government actors, the standard applied in *Morris*, 80 F.3d at 1169-70, a Seventh Circuit case cited by SEC, focuses on cooperation between agencies, just like the cases cited by Defendants in their Memorandum in Support. If there was a joint investigation (based on the facts and circumstances, not SEC's label) or if SEC can obtain documents on request, then relevant documents are in possession, custody, or control of the SEC.

The only support SEC has provided for the claim that there was no joint investigation is the Declaration of Charles J. Kerstetter ("Kerstetter Dec."). SEC asserts that no joint interviews were conducted and that "SEC did not act on behalf or under control of the DOJ." Dkt. 81, ECF p. 4, para 16. But it does disclose that there was information sharing between the parties, without detail as to the scope thereof. *Id.* at paras. 18, 19. SEC has also disclosed that the DOJ investigation was instituted upon SEC's referral. *Id.* at para. 16. In those circumstances, the scope of such information sharing is critical.

Further, SEC's privilege log asserts that law enforcement privilege, deliberative process privilege, work product and attorney-client privilege all apply to the communications between SEC and DOJ. No itemized privilege log has been provided that even begins to identify (at any level of detail) what materials were shared, or how many there were. SEC still fails to address how it can assert both that all of these privileges somehow apply to all materials shared between the two agencies and that they were not operating together.

### III. SEC'S OBJECTIONS TO REQUESTS FOR PRODUCTION 8-11 AND 14-17 ARE INAPPROPRIATE BECAUSE THOSE REQUESTS SEEK RELEVANT INFORMATION AND ARE NOT OVERLY BROAD

SEC argues that Requests for Production ("RFP") 8-11 and 14-17 "call for irrelevant information and are overly broad and thus unduly burdensome and disproportionate to the needs of the case." Dkt. 80, ECF p. 20. These requests all seek information related to the DOJ investigation of Defendants. The relevance and scope objections must be addressed separately from the custody or control objection raised by SEC, because, even if the Court accepts SEC's custody or control argument, SEC is in possession of any information actually provided to it by DOJ. If DOJ provided a document to SEC, SEC now has possession, custody, and control of that document, whether or not SEC considers the document to be within the scope of its file.

SEC first argues that these RFPs call for irrelevant information. Dkt. 80, ECF p. 21-22. SEC accuses Defendants of stating "bare conclusions that because SEC made a referral to the DOJ," and argues that "any communication or material shared between the SEC and DOJ have no bearing on whether Defendants violated the federal securities laws" because "SEC does not allege that Defendants misled the DOJ regarding its investments, including its asset valuation practices, but rather that Defendants misled investors." *Id.*

The affidavit filed by DOJ in support of search warrant applications was attached to the Memorandum in Support of Motion to Compel. Dkt. 74-24. It establishes that DOJ was investigating allegations including: the use of unrealized gains in calculating profits (ECF p. 18), investment in asset classes other than those investors were advised of (ECF p. 20), and irregularities in appraisals (pp. 22-27). These are all subjects of the Amended Complaint. Further, SEC has confirmed that it did, in fact, refer the case to DOJ. Dkt. 81, ECF p. 5, para. 15. If DOJ uncovered information bearing on these issues, the information is relevant to those issues as presented by SEC in this case. And if SEC's exchanges with DOJ regarding Defendants were not about these issues, then it is difficult to imagine what they could have been about, although SEC's inadequate privilege log makes it impossible to tell.

SEC further objects to these requests as overly broad, unduly burdensome, and disproportionate to the needs of this case. Dkt. 80, ECF p. 24. SEC did not support its objections with specificity when it made them or during the meet and confer process. SEC now claims that the requests are objectionable because they contain language seeking all documents relative to, regarding, or in relation to Defendants, the SEC, or the SEC's case. *Id.* SEC claims these requests do not provide "a basis to determine what may or may not be responsive." *Id.* SEC cites several cases suggesting that such language is facially improper and that a party resisting such

requests need not provide specific, detailed support for how the requests are overly broad. *Id.* at ECF pp. 24-25. But the cases SEC cites are from 1999, 2001, 2003, and 2014. In 2015, FRCP Rule 34 was amended to require objections to be stated with specificity. Rule 34(b)(2)(B). SEC cannot justify its failure to follow the current version of Rule 34 by citing authority interpreting a version from before amendments intended to address this very issue.

Further, SEC fails to acknowledge that there is authority supporting the use of similar language in discovery requests – cited by SEC in this case in support of its own discovery requests containing similar language. *See* Dkt. 63, ECF p. 17, *citing Dauska v. Green Bay Packaging Inc.*, 291 F.R.D. 251, 261 (E.D. Wisc. 2013)*; Bruggeman v. Blagojevich,* 219 F.R.D. 430, 436 (N.D. Ill. 2004); and 8B Wright, Miller & Marcus, *Federal Practice and Procedure* § 2211 at 173 (3d ed. 2010). These authorities stand for the proposition that a request is reasonable if it is "sufficient to apprise a person of ordinary intelligence what documents are required and that the court be able to ascertain whether the requested documents have been produced." *Dauska*, 291 F.R.D. at 261. While one can imagine edge cases where it is unclear whether a document "relating to" a matter is responsive, here there was an active DOJ investigation into Defendants on the same matters and which was the subject of years of communication between DOJ and SEC. There is no serious question that materials related to that investigation and the topics stated in the Complaint would fall within the request. Accordingly, the matters requested are relevant and the scope of these requests is reasonable.

### IV. SEC'S CATEGORICAL PRIVILEGE LOG IS INADEQUATE

SEC's categorical privilege log does not properly support its privilege assertions. SEC has now had six months since it first objected to Defendants' discovery requests to produce an adequate log, and its failure to do so in that time should result in waiver of its objections.

SEC attempts to cast "internal back and-forth-email exchanges and other documents created and shared between the SEC's attorneys and staff during its investigation" as the main subject of this dispute. It is not. Of course, Defendants do not believe that, for example, email correspondence between SEC counsel of record and their managers, exchanging drafts of a memoranda recommending the SEC institute litigation, would be discoverable if SEC adequately supported its privilege assertions. The problem is that SEC's log obscures whether, for example, purely factual information has been withheld, cloaking all communications within SEC – and between SEC and other agencies – as privileged. Further, SEC's log obscures what was shared between SEC and DOJ and whether SEC is withholding relevant materials provided by DOJ.

SEC correctly asserts that in some circumstances, a categorical log may be appropriate "where a document-by-document listing is unduly burdensome and 'additional information to be gleaned from a more detailed log would be of no material benefit to the discovering party in assessing whether the privilege claim is well grounded.'" Dkt. 80, ECF p. 29, *citing SEC v. Somers*, 2013 WL 4045295, at *2 n. 2. But SEC fails to establish either criterion is met.

First, SEC provides almost no information suggesting that there is any undue burden in generating a document-by-document log. It is clear that SEC has not even determined what the real burden of doing so would be. SEC claims that 8,700 emails (inclusive of email chains) were generated by the primary SEC lawyer in this case, in addition to some unspecified number of emails and documents generated by other staff. Dkt. 80, ECF p. 30. Then SEC claims it would have to "re-review and log several times that number of emails because more than one person is on each email and, therefore, each person's emails would have to be re-reviewed in preparing the email-by-email listing." *Id.* However, SEC uses an electronic document review platform. *See*

8

SEC Enforcement Manual, p. 48[2]. Most document review platforms support de-duplication of emails, specifically to eliminate the kind of duplicative review SEC claims it would have to undertake. Moreover, most document review platforms allow for threading of emails, so whole threads can be reviewed at once, speeding review. Further, SEC's claims it would have to log even 8,700 emails overstate the burden. SEC claims that many or most of the documents it has withheld are irrelevant. Dkt. 80, ECF p. 31. Obviously, only relevant, privileged documents need to be logged, further reducing the supposed burden.

Even accepting the 8,700 number, reviewing that many documents would not be unduly burdensome. SEC notes that it produced over 59,000 documents to Defendants. Dkt. 80, ECF p. 1. SEC further has claimed in this case that Defendants defrauded investors out of over $52 million. Dkt. 64, ECF p. 10. Given the scope of this case, an 8,700-document review is not disproportionate. Moreover, SEC offers no estimate of the time or expense such logging would actually require. A commonly cited figure for document review speed as an "industry standard" is 60 documents per hour.[3] At that speed, 8,700 items would be a 165-hour project. SEC has had three attorneys appear in this case. It made its objections on February 13. It produced its first privilege log on May 13, 2020, 12 weeks later. If SEC had worked diligently on a log in that time, the document review project SEC describes would have required 4.58 hours a week from each of its attorneys or record, or less than an hour a workday. This is not a crushing burden.

Moreover, SEC's failure to provide a detailed log prejudices Defendants' ability to evaluate SEC's claims of privilege. For example, work product protection only applies where litigation is reasonably anticipated and a document was generated because of the anticipated

---

[2] Available at https://www.sec.gov/divisions/enforce/enforcementmanual.pdf
[3] *See, e.g., Document Review: The Order of Batched Materials Matters*, available at https://www.foley.com/en/insights/publications/2013/11/document-review-the-order-of-batched-materials-mat.

litigation. *Am. Family Mut. Ins. Co. v. Electrolux Home Prod., Inc.,* No. 11-CV-678-SLC, 2014 WL 3513243, at *2 (W.D. Wis. July 14, 2014). What the document is and when it was generated necessarily bear on those questions.[4] SEC identifies several dates it contends are relevant to the question of when litigation was reasonably anticipated: April 2016, when SEC's Office of Compliance and Inspections made a referral to the Enforcement Division; April 28, 2016, when the Enforcement Division opened an inquiry; July 1, 2016, when a formal investigation was opened and a litigation hold was issued; and November 15, 2016, when the "Formal Order" was issued. Dkt. 81, ECF pp. 2-3, para. 6-8. Yet SEC asserts work product protection over communications generated before many of the cited events – and before it even issued a litigation hold. *See, e.g.,* Dkt. 80-3, ECF pp. 13-15, Nos. 53, 54, 64 (asserting work product claims on document sets beginning April 29, April 22, and May 2016, respectively). Issuing a litigation hold does not mean that work product protection is warranted for all documents after that date, but it is difficult to square claims SEC reasonably anticipated litigation prior to that date with claims SEC did not recognize a duty to preserve documents until then. Further, SEC cannot assert it as a relevant fact and yet claim that knowledge of which communications were made before that date would not impact Defendants' ability to evaluate privilege assertions.

SEC's privilege assertions are similarly unsupported with respect to other types of materials. SEC asserts that, for example, an internal memorandum of an interview of Michael Hull is protected by only attorney-client privilege and deliberative process privilege, but no information is provided suggesting the memorandum seeks or provides legal advice, nor is any

---

[4] SEC claims, bizarrely, that its claims of work product protection "rise or fall as a unit," and cite *United States v. Gericare*, 2000 WL 33156442, at *4 (S.D. Ala. Dec. 11, 2000). That language is contained in that case, but does not appear to be stating a broad principle, and no explanation is given in the case. Further, SEC withdrew its previously asserted work product claim as to OCIE internal documents, suggesting it is fully aware that its claims do not in fact function as a unit. Dkt. 80, ECF p. 33, n. 25. In any event, whether any given document was prepared in anticipation of litigation is the touchstone for work product protection, and the answer is likely different for different documents.

explanation provided as to how the majority of such a memorandum would be protected by the deliberative process privilege, which does not protect facts. *See* Dkt. 80-3, ECF p. 14, No. 61; *see also SEC v. Collins & Aikman Corp.,* 256 F.R.D. 403, 416 (S.D.N.Y. 2009) (deliberative process privilege does not extend to purely factual material).

SEC should have provided an itemized privilege log and identified with specificity how the asserted protections apply to the documents over which it asserts protection. It did not do so. Six months have elapsed since SEC first asserted its privilege objections and they are still unsupported. SEC's privilege objections should be treated as waived.

V. **THE DECLARATION OF CHARLES J. KERSTETTER SHOWS SEC'S SPECIFIC PRIVILEGE ASSERTIONS AS TO COMMUNICATIONS WITH THE DEPARTMENT OF JUSTICE ARE IMPROPER**

Moreover, aside from its inadequate privilege log, SEC has now alleged that its own privilege assertions with respect to its communications with DOJ are improper. SEC asserts that law enforcement privilege, deliberative process privilege, attorney work product, and attorney client privilege apply to its communications with DOJ. Dkt. 80-3, ECF p. 15, No. 64. The log does not identify any specific communications.

Yet, the Kerstetter Dec. claims that "SEC did not disclose to the DOJ its work product and other privileged information." Dkt. 81, ECF p. 5, para. 19. This is not a mistake. SEC, in arguing it conducted no joint investigation with DOJ, admits that its communications with DOJ did not contain any of SEC's privileged material and that its policy was not to disclose such material to DOJ. This admission renders SEC's arguments on this point irrelevant.[5] If SEC

---

[5] Mr. Kerstetter does assert that "information shared includes information that might reveal the SEC's techniques and procedures as to how it obtains information relevant to its investigations…" but does nothing more than recite that standard, which is only one element of the law enforcement privilege. Kerstetter Dec. para. 18. He offers no explanation as to how such information might be disclosed; regardless, it is impossible to believe that *every* communication from SEC to DOJ would contain such information.

provided no privileged material to DOJ, then any relevant materials should have been produced. All communications in this category should immediately be disclosed.[6]

## VI. SEC'S WORK PRODUCT ASSERTIONS AS TO INTERVIEW NOTES ARE NOT ADEQUATELY SUPPORTED

Defendants stand by their arguments in their Motion to Compel on these points. SEC has failed to establish the interview notes in question are work product prepared in anticipation of litigation. But Defendants wish to address two of SEC's arguments on this issue.

First, SEC asserts that (assuming work product did apply) its production of formal testimonies did not constitute subject matter waiver of work product protection because "the testimony transcripts do not fall within the scope of the work product doctrine because they were not prepared by or at the direction of SEC attorneys." Dkt. 80, ECF p. 45. They are not, SEC says "notes prepared through the filter of an attorney's mental impressions." *Id.* at ECF p. 45-46. But earlier, SEC identifies as deserving of work-product protection the "selection of topics, the amount of focus given to each one, and the areas of follow-up [that] reveal the attorney's mental impressions regarding the witness's role." *Id.* at ECF p. 32. Of course, all of that information is contained in formal testimony transcripts as well – Defendants have full access to what was said by SEC, the areas of questioning, where follow-up questions were asked and where they were not. The claim that a court reporter hired and paid for by SEC is not preparing the transcript at the direction of the SEC attorney is irrelevant – a transcript of an internal strategy session between SEC attorneys would obviously be privileged, regardless of whether who prepared it. Having waived privilege as to work product contained in formal testimonies, SEC cannot now claim similar information in notes of other interviews remains privileged simply because it was

---

[6] SEC has not asserted that it is seeking to protect *DOJ's* privileges, nor would such an assertion at this date be consistent with SEC's insistence that DOJ and SEC acted separately.

not transcribed by a court reporter. Defendants of course would not object to SEC redacting from interview notes and memoranda information that is not factual in nature.

Second, SEC's argument as to *Brady* material is similarly unavailing. In response to the fact that SEC itself has acknowledged *Brady's* applicability in administrative hearings, SEC states only that discovery in SEC administrative proceedings is limited when compared with the discovery rules under the Federal Rules of Civil Procedure. SEC cites no authority for this proposition, and it is unclear how any limitations on discovery in those proceedings as relevant to this argument. Of particular note, parties in those hearings may still subpoena witnesses both for hearing testimony and for depositions. *See* 17 C.F.R. 201.232. Yet SEC has reached a determination that *Brady* material may not be withheld in these contexts. A regulator should not gain a strategic advantage over those it regulates solely by its choice of forum for litigation, but that is specifically what SEC argues should happen in this case.

## VII. CONCLUSION

SEC's Opposition to Motion to Compel does little to change the underlying facts – SEC has not cooperated in discovery and has made very broad privilege assertions that have not been adequately supported. And now SEC adduces new facts that not only fail to support its privilege assertions, but actually contains a sworn statement that certain items SEC claims are privileged are not. SEC should be ordered to produce relevant documents and respond to the interrogatories that have been served on it.

Dated this 14th day of August, 2020.

          HUSCH BLACKWELL LLP
          Attorneys for Defendants

By:   */s/ Robert M. Romashko*
      Patrick S. Coffey
      State Bar No. 1002573
      Robert M. Romashko
      State Bar No. 1106485

555 E. Wells Street, Suite 1900
Milwaukee, Wisconsin 53202-3819
(414) 273-2100
(414) 223-5000 (fax)
Robert.Romashko@huschblackwell.com
Patrick.Coffey@huschblackwell.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of August, 2020, a true and correct copy of the foregoing was filed and served via the CM/ECF system, to all parties receiving CM/ECF notices in this case.

/s/*Robert M. Romashko*
Robert M. Romashko