**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

_____

|  |  |  |
|---|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No.  19-cv-809** |
| **BLUEPOINT INVESTMENT COUNSEL, LLC, MICHAEL G. HULL, CHRISTOPHER J.  NOHL, CHRYSALIS FINANCIAL LLC, GREENPOINT ASSET MANAGEMENT II LLC, GREENPOINT TACTICAL INCOME FUND LLC and GP RARE EARTH TRADING ACCOUNT LLC** | ) ) ) ) ) ) ) ) ) ) | |
| **Defendants.** | ) | |

## SEC'S OPPOSITION TO MOTION TO QUASH

### INTRODUCTION

The SEC brought this civil law enforcement action (the "Law Enforcement Action"), alleging that Defendants have defrauded at least 129 investors in ten states out of tens of millions of dollars.  (ECF No. 33 at ¶ 1).  Defendants have previously agreed in discovery in this matter to provide the SEC with information regarding the sales of any assets by Defendant Greenpoint Tactical Income Fund LLC ("GTIF") and its subsidiary, GP Rare Earth Trading Account LLC ("GP Rare Earth"), since the filing of this Law Enforcement Action—including the identities of the purchasers of those assets.  But Defendants have not produced a complete set of the records they agreed to produce, and have previously taken the position that the SEC must obtain their bank records through third-party subpoenas to banks.  Consistent with the Defendants' previous discovery responses, the SEC issued a subpoena to Wells Fargo Bank (the "Wells Fargo

Subpoena") seeking account records relating to the recent sale of pieces from GTIF's and GP

Rare Earth's mineral collection.

Defendants received notice of the Wells Fargo Subpoena and raised no objection to it for

more than seven weeks, until their own bankruptcy counsel claimed the subpoena should be

quashed.  As Magistrate Judge Crocker previously stated during a hearing in this case:

> But as we all know, under Rule 45 it is up to the third party to object to the
> subpoena. Now, I understand from having done this in other cases that a lot of
> times these motions are tactical; that a party, here the defendants, don't want third
> parties bothered with these sorts of things unless they've got a chance to object
> first. Frankly, the court does not have any sympathy for those sorts of tactical
> considerations, and frankly, given the breadth, depth and length of this current
> dispute, which I believe goes all the way to 2014 -- and I know there is a criminal
> component, I issued all the search warrants. Does anybody not know what's going
> on here? That would surprise me.

(7/24/20 Hearing Tr., Exhibit 1 at p. 17).  Defendants are now asking this Court to preclude the

SEC from proper discovery regarding their assets, specifically how and to whom they are

disposing of the assets.  There is no legal or factual basis for the Defendants' request, and their

motion to quash should be denied.

Moreover, Defendants raised the same argument through a motion for sanctions and

contempt in the bankruptcy court, where it was summarily denied by the bankruptcy court *sua

sponte*.  The bankruptcy judge explicitly held that there is nothing in any of the bankruptcy

court's orders prohibiting the SEC from obtaining the information sought by the Wells Fargo

Subpoena in this Law Enforcement Action.  Defendants' motion to quash in this case is based

entirely on those same bankruptcy court orders, and their arguments have already been explicitly

rejected by the bankruptcy court.  This is now the second time in this case Defendants have

asked the bankruptcy court to sanction the SEC for conducting discovery in this Law

Enforcement Action pending before this Court, (*see* ECF Nos. 42, 94).  Defendants' repeated

attempts to use the bankruptcy proceeding to interfere with discovery in this Law Enforcement Action must stop.

## **FACTUAL BACKGROUND**

### A.  The Wells Fargo Subpoena

On December 3, 2020, pursuant to Federal Rule of Civil Procedure 45, the SEC served a third-party subpoena on Wells Fargo Bank seeking bank records for an account in the name of Collector's Edge Minerals Inc. ("CEMI") for mineral sales CEMI has made on behalf of Defendant GP Rare Earth.  Before serving the subpoena on Wells Fargo, the SEC provided notice and a copy of the subpoena to Defendants' counsel in this Law Enforcement Action, Robert Romashko and Patrick Coffey of Husch Blackwell, LLP.  (A copy of the email with the notice and subpoena is attached hereto as Exhibit 2).[1]  Defendants' counsel did not object to the subpoena.

According to a declaration from Bryan Lees, CEMI's CEO, Wells Fargo notified CEMI of the Wells Fargo Subpoena in a letter dated January 5, 2021.  (ECF No. 94-4 at 11).  On January 15, 2021, CEMI's attorney called Doressia Hutton, counsel for the SEC, to discuss the fact that CEMI had received notice of the subpoena from Wells Fargo Bank.  Ms. Hutton informed CEMI's counsel that the subpoena was limited to the account for CEMI's sales of minerals on behalf of GP Rare Earth and did not call for records of any other accounts used by CEMI.  CEMI's counsel did not object to the subpoena.  SEC counsel forwarded to CEMI's counsel a copy of the subpoena immediately after the call.  (Exhibit 3).  CEMI did not contact

---

[1] GTIF and GP Rare Earth attached a copy of the subpoena they received to their motion to quash.  (*See* ECF No. 94-3 at pp. 103-109).  Notably, they failed to attach the Notice to their counsel to which the subpoena was attached, which shows GTIF and GP Rare Earth were on notice of the subpoena back on December 3, 2020.

the SEC again regarding the Wells Fargo Subpoena and, notably, there are no objections from CEMI to the SEC filed with the motion to quash.

Although the Wells Fargo Subpoena called for the production of documents by December 17, 2020, the SEC agreed to allow Wells Fargo until January 29, 2021 to produce documents.[2] The first time anyone raised any issues regarding the subpoena was on January 22, 2021, when Michael Richman, who represents GTIF and GP Rare Earth in their bankruptcy proceedings, sent an email to the SEC. (*See* ECF No. 94-3 at pp. 123-125). Richman's email was sent **50 days after** GTIF and GP Rare Earth first received notice of the Wells Fargo Subpoena. (*See* Exhibit 2). The first time GTIF and GP Rare Earth asked to meet and confer was on January 25, 2021—53 days after receiving notice of the subpoena—when Romashko demanded a call within an approximately four-hour window the next day. (Exhibit 4 at pp. 2-3). Ms. Hutton responded that the SEC was not available on January 26, but offered to meet and confer on January 27. (Exhibit 4 at pp. 1-2). Defendants did not respond to Ms. Hutton's email until after they filed both a motion for sanctions and contempt against the SEC in the bankruptcy court and a motion to quash the Wells Fargo Subpoena in this Court. (*See* Exhibit 4 at p. 1; ECF No. 94).

### B. The Bankruptcy Court Denied Defendant-Debtors' Motion for Sanctions and Contempt Against the SEC *Sua Sponte*

The bankruptcy court denied *sua sponte* GTIF's and GP Rare Earth's "Emergency Motion to Compel Compliance with Orders, Including Protective Orders, and For Sanctions" the day after it was filed, without even waiting for a response from the SEC. (*See* Bankruptcy Court Order of 1/27/21, attached as Exhibit 5). The bankruptcy court stated:

> [N]othing in the debtors' emergency motion shows that the SEC has violated or threatens to violate this court's orders: The motion does not suggest that the SEC has disclosed confidential information or plans to disclose confidential

---

[2] Wells Fargo apparently mishandled the subpoena internally, which is why it did not respond by the original return date.

information.  The motion asserts only that the SEC is seeking to obtain confidential information from Wells Fargo, not disclose that information to others.

(Exhibit 5 at p. 5).  The bankruptcy court concluded that "there is nothing in any of the [bankruptcy] court's orders that prohibits the SEC from obtaining that information in the District Court Case; rather the orders prevent the SEC from *disclosing* that information."  (*Id.* at pp. 5-6) (emphasis in original).  It is telling that Defendants have not informed this Court of the summary denial of their motion in the bankruptcy court, since their entire motion to quash is based on the motion they filed in the bankruptcy court.  (ECF No. 94 at ¶¶ 4-5).

It is also notable that the Defendants failed to inform the bankruptcy court that this Court has entered its own protective order governing the Law Enforcement Action.  Nowhere in their sanctions and contempt motion before the bankruptcy court did Defendants disclose that this Court has entered its own orders governing discovery and confidential information.  Indeed, in denying their motion the bankruptcy court indicated that it was unaware of any order of this Court that "either expressly authorizes such disclosure, or specifically vacates or supersedes those [bankruptcy court] orders." (Exhibit 5 at p. 5).

This Court stayed compliance with the Wells Fargo Subpoena pending resolution of the motion to quash.  (ECF No. 93).  The SEC promptly notified Wells Fargo of that order.  Wells Fargo has yet to produce any documents to the SEC in response to the subpoena.

### C.  The Stipulated Protective Order in this Case

On August 7, 2020, the SEC and Defendants—including GTIF and GP Rare Earth— agreed to a Stipulated Protective Order (the "Stipulated Protective Order") in this Law Enforcement Action.  (ECF No. 82).  The Court accepted and entered the Stipulated Protective Order on the same day.  (ECF No. 83)  The Stipulated Protective Order does not limit the parties'

ability to gather information through discovery.  Rather, it limits the disclosure or communication of "Confidential" information as defined in the Stipulated Protective Order and designated as such by the SEC, Defendants, and other non-parties.  (ECF No. 82 at ¶¶ 4-6).

Defendants initially requested a far broader protective order.  (*See* ECF No. 22 (Defs. Mem. In Support of Motion For Protective Order); ECF No. 24 (SEC Opp. To Motion for Protective Order)).  At a hearing on July 24, 2020, Magistrate Judge Crocker stated that the proposed protective order submitted by Defendants, including GTIF and GP Rare Earth, was not acceptable because it was "much too broad" and "much too self-serving."  (7/24/2020 Hearing Tr., Exhibit 1, at p. 6).  The Court ordered the parties either to submit a jointly-proposed protective order or two separate proposals from which the Court would pick one.  (ECF No. 78). The parties then agreed on the Stipulated Protective Order.  (ECF No. 82).

At the same July 24th hearing, the Court denied the Defendants' request for 3-days advance notice of all third-party subpoenas.  During the hearing, Romashko stated Defendants' concern was subpoenas to "***potential*** buyers."  He never mentioned any concerns regarding subpoenas to banks or even to past purchasers.  After the SEC agreed during the hearing to notify the Defendants of any subpoenas to potential buyers of minerals, the Court stated: "You don't know what you don't know, so I think it's going to be important for either you or one of your colleagues to get additional information from Mr. Romashko and his colleagues as to who the potential buyers might be so there aren't any unintentional missteps."  (7/24/20 Hearing Tr., Exhibit 1, at p. 21).  Thereafter, the SEC twice requested a list of potential buyers from Romashko, who responded that the Defendants did not have such a list.  (*See* Exhibit 6).  The Defendants have never identified any potential buyers to the SEC for whom they wish to take advantage of the additional notice they requested. (*Id.*)  Indeed Romashko's email stated, "If

someone has previously been subpoenaed by SEC or is not a mineral dealer or collector, we aren't requesting additional notice."  (Exhibit 6 at pp. 1-2, 8/19/20 email from Romashko).

### D.  Defendants Have Previously Identified Purchasers Without Objecting

On November 2, 2020, the Defendants—specifically including GTIF and GP Rare Earth—responded to the SEC's Fifth Set of Requests for Production.  (*See* Exhibit 7).  Request number 5 in that set sought: "Documents sufficient to identify all assets sold by or on behalf of Greenpoint Tactical Income Fund or GP Rare Earth since September 30, 2019, including the date of each transaction, ***the identity of each purchaser***, and each purchase price."  (*Id.* at p.2 (emphasis added)).  Defendants asserted no objections, and their entire response stated: "Defendants will produce responsive records, if any".  (*Id.*).

The same set of document requests also included a request for:

> Bank statements and transaction records including checks, wire advices, deposit/withdrawal slips, intra-bank transfer records, etc. ***that evidence the transaction counterparty*** and any message, note or memo thereto for all bank accounts used by or on behalf of Greenpoint Tactical Income Fund and GP Rare Earth Trading Account for 2019 and 2020 year-to-date.

(*Id.* at p. 2 (Request No. 3) (emphasis added)).  The only objection asserted by GTIF, GP Rare Earth, and the other Defendants was a burden objection that the requested bank records should be sought from the banks rather than from the Defendants themselves:

> Defendants object that the request is unduly burdensome insofar as it calls for the production of documents duplicative of documents subpoenaed by Plaintiff and which should already be in Plaintiff's possession by the date of this response. Subject to and without waiving this objection, Defendants will produce responsive documents, to the extent not called for by SEC's third-party subpoenas, if any, no later than November 16, 2020.

(*Id.* (Response to Request No. 3)).  Defendants raised no objection to the SEC obtaining documents showing the requested information—specifically including the transaction

counterparties.  By issuing the Wells Fargo Subpoena, the SEC did what the Defendants asked and sought the documents requested in Request number 3 directly from Wells Fargo Bank.

On December 4, 2020—one day after receiving notice of the Wells Fargo Subpoena—Romashko sent an email to the SEC regarding the Defendants' responses to the Fifth Set of Requests for Production in which he stated: "Documents sufficient to identify the referenced asset sales were produced by Dr. Graewin in her production."  (Exhibit 8 at p. 1).  Shannon Graewin is Defendant Nohl's wife and is the curator of GTIF's and GP Rare Earth's mineral collection; she was also represented by Romashko in responding to a document subpoena from the SEC in this case.  (Exhibit 9 at p. 1, 10/9/20 email from Romashko stating "we are representing Ms. Graewin with respect to the subpoena").  Graewin's production includes at least one report by Bryan Lees, CEMI's CEO, detailing some sales of minerals by CEMI, including the names of the purchasers, descriptions of the items, sales prices and dates, among other things. Graewin's production also includes some records for the CEMI Wells Fargo account for minerals sold for GP Rare Earth, but it does not appear to contain complete sets of either CEMI's sales records or the Wells Fargo account records.  Although the Stipulated Protective Order permits both parties and non-parties to designate documents as "Confidential" if they meet the definition of "Confidential", (ECF No. 82 ¶¶ 2, 5), neither Graewin nor Defendants designated the CEMI report or the Wells Fargo statement as "Confidential."

### E.  The Bankruptcy Court Orders Apply to the Dissemination, Not Receipt of Information

Less than a week after the SEC filed this Law Enforcement Action against Hull, Nohl, and entities they control, alleging securities fraud in connection with GTIF, and after the SEC requested Defendants agree to the appointment of a Receiver over the assets of GTIF managed by Defendants, Hull and Nohl on October 4, 2019 filed voluntary petitions under Chapter 11 of

the Bankruptcy Code for GTIF and its subsidiary, GP Rare Earth.  On February 7, 2020, the SEC

filed its First Amended Complaint in this action adding the two Debtors, GTIF and GP Rare

Earth, as Defendants.  (ECF No. 33).

The bankruptcy court has entered two protective orders that govern the *dissemination* of

information. The November 14, 2019 Bankruptcy Order "govern[s] the production and use of

information and materials *in this [bankruptcy] case and any related adversary proceeding*."

(ECF No. 94-3 at p. 4) (emphasis added).  The November 14, 2019 Bankruptcy Order prohibits

the *dissemination* of certain information relating to the debtors' purchases and sales of gems and

minerals, but it does not purport to restrict the SEC's ability to conduct discovery in this Law

Enforcement Action.

The March 20, 2020 Bankruptcy Order applies to a narrow category of confidential

information, namely "sale price, acquisition cost, or appraisal information about specific gems or

minerals . . ." (ECF No. 94-3 at p.21).  That definition does *not* include the identities of buyers.

Moreover, the March 20, 2020 Bankruptcy Order provides that the SEC may disseminate

information "in accordance with an order entered by the District Court that governs the use of

Confidential Information in the District Court Case," (*id*. at p. 20), and specifically recognizes

the authority of this Court to issue orders "(1) governing the use of Confidential Information in

the District Court Case or (2) superseding the effect of this order to the extent this order applies

to the collection or use of Confidential Information in the District Court Case," (*id*. at pp. 20-21).

Separately, on April 24, 2020, the bankruptcy court entered an order granting the

Debtors' motion to retain CEMI to sell minerals and pay compensation to CEMI.  (ECF No. 94-3

at p. 22).  The Bankruptcy Order appointing CEMI provides that the same bank records sought in

the Wells Fargo Subpoena are to be regularly provided both to the U.S. Trustee and the Official

Committee of Equity Security Holders (which represents GTIF investors in the bankruptcy

proceeding):

> CEMI will deposit all sales proceeds (including all amounts to be paid as
> commission) funds into a segregated bank account at Wells Fargo Bank N.A. at
> the Golden, Colorado branch, which funds shall be held for the benefit of the
> Debtor. *Upon receipt or availability of the bank statements, they will be provided
> to counsel for the U.S. Trustee and the Committee along with the corresponding
> cancelled checks, wire information, or other supporting documents for
> transactions contained therein.*

(ECF No. 94-3 at p. 27 ¶ 16) (emphasis added).  Nothing in the April 24, 2020 order identifies it

as a protective order or prohibits the SEC from seeking discovery in this Law Enforcement

Action.

## ARGUMENT

### A. The Bankruptcy Court has Already Held that the Wells Fargo Subpoena Does Not Violate its Orders

The primary argument GTIF and GP Rare Earth make for why the subpoena should be

quashed is that it somehow violates various orders of the bankruptcy court.  There is simply no

reason why Defendants should be bringing disputes over discovery in this Law Enforcement

Action to the bankruptcy court, or attempting to enforce bankruptcy orders in this Court.  But as

discussed above, the bankruptcy court summarily denied the sanctions and contempt motion

GTIF and GP Rare Earth filed in the bankruptcy case, stating: "nothing in the debtors'

emergency motion shows that the SEC has violated or threatens to violate this court's orders."

(Exhibit 5 at p. 5).  The sanctions and contempt motion is attached to the motion to quash and

provides the basis for the motion to quash.  Thus, there is plainly no violation of any bankruptcy

court order.

Again, this is the second time Defendants have asked the bankruptcy court to sanction the

SEC for conducting discovery in this Law Enforcement Action pending before this Court.  (*See*

ECF Nos. 42, 94).  Like the sanctions and contempt motion underlying the motion to quash the Wells Fargo Subpoena, Defendants' first contempt motion was also denied by the bankruptcy Court.  (Exhibit 14 at p. 4).

### B.  GTIF and GP Rare Earth Lack Standing to Quash the Wells Fargo Subpoena Because It Does Not Seek Privileged Information

Ordinarily only the recipient of a subpoena may challenge it through a motion to quash, except where a party claims attorney-client privilege or another personal right in the subject matter of the subpoena.  *DeMarco v. Chomas*, 2008 WL 4693541 at *3 (E.D. Wis. Oct. 23, 2008).  GTIF and GP Rare Earth claim a "privacy interest" because disclosure of the information sought in the Wells Fargo Subpoena will purportedly harm their business.  (ECF No. 94 at 2).  "Rule 45 contemplates quashing of subpoenas which seek disclosure of a privileged matter, but provides no basis for quashing a subpoena seeking confidential or private information." *Chesemore v. Alliance Holdings, Inc.,* 2015 WL 13574292, at *1 (W.D. Wis. July 8, 2015) (Conley, J.).  Additionally, the bank records requested by the subpoena are the business records of Wells Fargo, not the private records of CEMI, let alone GTIF or GP Rare Earth.  *See In re: Pansier*, 2019 WL 1494560, at *4 (Bankr. E.D. Wis. Mar. 22, 2019) (holding that financial records were the "business records of the bank and other entities," not the private documents of the customers).  The Wells Fargo Subpoena calls for no information in which GTIF and GP Rare Earth have even a conceivable privilege.

### C.  GTIF and GP Rare Earth Have Waived Any Argument Regarding Production of Buyers' Identities by Producing Such Documents and Affirmatively Agreeing to Produce That Information

Even assuming GTIF and GP Rare Earth's claimed interest would be sufficient to confer standing to challenge the Wells Fargo Subpoena, they have waived any objection to production

of the requested documents.  GTIF and GP Rare Earth argue "[t]he Wells Fargo Subpoena would give SEC access to the names of customers to whom CEMI has sold GPRE fine mineral assets during the pendency of GPTIF and GPRE's bankruptcy."  (ECF No. 94 at ¶ 3).  But Defendants—including GTIF and GP Rare Earth—affirmatively agreed without objection to produce documents (including bank records) identifying that exact information in their responses to requests 3 and 5 in the SEC's Fifth Set of Requests for Production, and then relied on Nohl's wife to produce some of the requested records.  GTIF and GP Rare Earth have thus waived any objection to the disclosure of that information. *See Alloc, Inc. v. Unilin Décor N.V.*, 2006 WL 2583431, at *1 (E.D. Wis. Sept. 5, 2006) ("Failure to timely assert objections to discovery requests may result in a waiver of all objections that could have been seasonably asserted.").

A footnote to the motion to quash claims GTIF and GP Rare Earth only discovered that Graewin had "inadvertently" received some information identifying the purchasers of the minerals when the SEC pointed out in an email on January 22, 2021 that those documents had been included in her production.  Again, Graewin was represented by Defendants' attorney in responding to the subpoena.  (Exhibit 9 at p.1, 10/9/20 Email from Romashko stating "we are representing Ms. Graewin with respect to the subpoena").  There is nothing inadvertent about: "Defendants will produce responsive records, if any,"  (Exhibit 7 at p. 2), or "Documents sufficient to identify the referenced asset sales were produced by Dr. Graewin in her production." (Exhibit 8 at p. 1).

The SEC is entitled to a complete and timely production of the documents Defendants agreed to produce.  Back on November 2, 2020, Defendants agreed to produce records identifying the purchasers of their assets since 2019, except for those records that could be obtained through a subpoena to a bank.  A month later they claimed the responsive documents

were produced by Graewin and did not object when the SEC issued a subpoena to Wells Fargo. Now they contend that Graewin only produced a portion of the responsive documents—and "inadvertently" at that.  They also now argue the SEC should be precluded from obtaining records from Wells Fargo, even though Defendants previously claimed the SEC should be required to rely on subpoenas to banks.  Defendants' constantly shifting positions have served to prevent the SEC from receiving records Defendants agreed to produce three months ago.  This gamesmanship must stop.

### D.  The Motion to Quash is Untimely

The debtor entities, GTIF and GP Rare Earth, are also Defendants in this Law Enforcement Action.  GTIF and GP Rare Earth are represented in this case by Messrs. Coffey and Romashko of Husch Blackwell.  (ECF Nos. 44, 45; *see also* Exhibit 10 (bankruptcy court order authorizing Husch Blackwell to represent GTIF and GP Rare Earth in this case)).[3]  On December 3, 2020, the SEC provided notice of the Wells Fargo Subpoena via email to Messrs. Coffey and Romashko.  (Exhibit 2).  The SEC provided that notice before serving the subpoena on Wells Fargo—exactly as Rule 45(a)(4) requires.  GTIF and GP Rare Earth did nothing in response to the subpoena until *50 days after receiving notice*—and more than a month after the original return date—when Mr. Richman, bankruptcy counsel, first emailed the SEC about the Wells Fargo Subpoena on January 22, 2021.

GTIF and GP Rare Earth attempt to excuse their 50-day delay by claiming that their bankruptcy counsel, Michael and Claire Ann Richman, did not realize Husch Blackwell had received notice of the subpoena.  Before January 22, 2021, neither Husch Blackwell nor the Richmans ever claimed that the SEC must (or asked the SEC to) send discovery requests,

---

[3] After the motion to quash was filed, Husch Blackwell moved to withdraw from this case.  (ECF No. 95).

subpoenas, or any communications regarding this Law Enforcement Action to the Richmans. The Richmans rely entirely on the two virtually identical documents they filed in this case on March 18, 2020, each captioned "Notice of Appearance and Request for Notice."  (ECF Nos. 49, 50).  Unlike the Husch Blackwell appearances, the Richmans' notices do not say they are representing GTIF and GP Rare Earth in this case; rather they state that they "appear as bankruptcy counsel to Greenpoint Tactical Income Fund LLC and GP Rare Earth Trading Account LLC" and each only  ***"requests that [he/she] receive notice of all filings in this case via the Court's CM/ECF System, and at the firm's address*** . . . ."  (ECF Nos. 49, 50) (emphasis added).[4]

Between the filing of their "appearances" and the filing of the motion to quash, the Richmans did not file any documents in this case, were not included in the signature block of any filings made by GTIF or GP Rare Earth, (*see* ECF Nos. 51, 52, 53, 58, 59, 66, 67, 70, 71, 73, 74, 82, 85, 86, 88, 90), and did not attend the only hearing in this matter, (*see* Exhibit 1, cover page for transcript of 7/24/2020).  All discovery responses by GTIF and GP Rare Earth have been signed solely by one of the Husch Blackwell attorneys, (*see, e.g.,* ECF No. 63-18 at p. 25 & Exhibit 7 at p. 3 (Responses to Fifth Set of Requests for Production)), and Husch Blackwell has not copied the Richmans on emails with the SEC—including an email sent by Romashko *after* the motion to quash was filed, (*see* Exhibit 11, Romashko email of 1/28/2021).

The Motion's assertion that Husch Blackwell "did not appreciate the bankruptcy issues raised by the subpoena," (ECF No. 94 at 2, n.1; *see also* ECF No. 94.1 at 16 ¶ 35), is belied by the facts.  The billing records attached to Husch Blackwell's only fee application in the bankruptcy case make reference to Husch Blackwell consulting and conferring with the

---

[4] Since March 18, 2020, the Richmans have been included on all CM/ECF notices in this case, just as they requested.

Richmans on matters related to the Law Enforcement Action approximately 77 times from March through September 2020.  (*See* Exhibit 12 at Exhibit B (other exhibits to fee application excluded)).  Husch Blackwell attorneys have also attended multiple hearings in the bankruptcy proceeding, including the March 13, 2020 evidentiary hearing regarding GTIF's and GP Rare Earth's previous attempt to hold the SEC in contempt for conducting discovery in this case, (Exhibit 13 at p. 1), and the April 21, 2020 hearing regarding, among other things, the retention of CEMI to sell the mineral collection, (Exhibit 15 at p. 2).

Regardless, GTIF and GP Rare Earth are bound by the actions of their attorneys from Husch Blackwell.  *See Tango Music, LLC v. DeadQuick Music, Inc.*, 348 F.3d 244, 247 (7th Cir. 2003) (client "has to take responsibility for the actions of its agents, including the lawyers whom it hires.").  It is up to Hull and Nohl, as principals of GTIF and GP Rare Earth, to ensure that they communicate all necessary information to their different attorneys and/or that their different sets of attorneys in different cases communicate with one another.  Defendants cannot waive objections in discovery and then, months later, completely reverse course because a different set of their lawyers does not approve of the actions previously taken by their counsel of record in this litigation.

**E.  GTIF and GP Rare Earth Failed to Meet and Confer**

GTIF and GP Rare Earth failed to meet and confer with the SEC regarding this dispute, as required by the Preliminary Pretrial Order in this matter.  (ECF No. 23 at 2-3, stating "A party may not file a motion regarding discovery until that party has made a good faith attempt to resolve the dispute. All efforts to resolve the dispute must be set forth in any subsequent discovery motion filed with this court. By this order, the court requires all parties to a discovery

dispute to attempt to resolve it quickly and in good faith. Failure to do so could result in cost shifting and sanctions under Rule 37.").

GTIF and GP Rare Earth did nothing for more than seven weeks after receiving notice of the Wells Fargo Subpoena, and then unilaterally excused themselves from the meet-and-confer requirement, even though the SEC specifically offered a period of time on January 27 for a call. (*See* Exhibit 4 at p. 2).  Tellingly, GTIF and GP Rare Earth failed to provide the SEC's email offering to schedule a meet-and-confer call to the Court with their motion.  The purported emergency—that Wells Fargo anticipated making its production on January 29—was entirely of the Defendants' own making.  GTIF and GP Rare Earth had more than ample time to meet and confer with the SEC.

### F.   Defendants' Substantive Arguments Regarding the Wells Fargo Subpoena are Unpersuasive

#### 1.   Any Relevancy Objection Belongs to Wells Fargo

The motion to quash argues in passing that records sought from Wells Fargo, specifically the identities of purchasers of GTIF's assets, are irrelevant to this Law Enforcement Action.  For a third party subpoena, relevance and burden are objections that "fall to the subpoena's recipient to make."  *In re Pansier*, 2019 WL 1494560, at *3 (Bankr. E.D. Wis. Mar. 22, 2019) (quoting *Parker v. Four Seasons Hotels*, 291 F.R.D. 181, 187 (N.D. Ill. 2013)).  Wells Fargo has not objected to the subpoena, and thus the relevance of the requests is not properly before this Court.[5]

---

[5] GTIF and GP Rare Earth only claim the Wells Fargo subpoena should be quashed to the extent it seeks the identities of purchasers of minerals.  Requiring Wells Fargo to redact the identities of purchasers from its production would be burdensome on Wells Fargo, which is a bank with no independent knowledge of the transactions reflected in its account holders' records.

Defendants' own discovery responses demonstrate the importance of the information to the SEC's case.  Defendants did not object on the basis of relevancy to requests seeking the asset sales including the identities of purchasers.  (*See* Exhibit 7, responses to requests 3 and 5).  They have thus waived any relevancy objections.  The SEC seeks to permanently enjoin and restrain all Defendants from violating the enumerated provisions of the federal securities laws and has alleged that "there is a reasonable likelihood that the Defendants will, unless enjoined, continue to engage in [the alleged conduct]."  (ECF No. 33 at ¶ 23)  Information regarding Defendants' ongoing conduct—especially ongoing asset sales or other disposition of GTIF's and GP Rare Earth's assets—is important to this Law Enforcement Action.

As alleged in the Amended Complaint, Defendants Hull and Nohl have engaged in extensive undisclosed self-dealing and deals with related parties that enriched them and their entities at the expense of the investors.  For example, Nohl has and continues to own and operate his own gem and mineral business.  (ECF No. 33 at ¶ 187).  Nohl's other gem and mineral business has engaged in transactions with GTIF and GP Rare Earth without disclosing those transactions to the investors.  (*Id.*)  Hull has also engaged in undisclosed transactions, including purchasing a sapphire from GP Rare Earth that was put into jewelry for his wife.  (*Id*. at ¶ 187.)  Particularly in light of their past history of undisclosed self-dealing, Defendants' insistence on keeping current asset sales secret from the SEC is troubling.

The SEC seeks disgorgement of ill-gotten gains.  GTIF has paid—and continues to accrue in bankruptcy—management fees to other Defendants.  (*Id.* ¶ 102.)  Defendants Hull's and Nohl's entities, Chrysalis and Greenpoint Management II, are each paid 1% of assets under management, for a total of 2% of assets under management.  (*Id.*)  The net asset value on which those management fees are calculated includes *unrealized* gains.  (*Id.*)  Based on the evidence,

the SEC has alleged that Defendants Hull, Nohl, and their entities have used inflated and improperly determined valuations to charge GTIF excessive management fees.  (*Id.* ¶ 109)  Defendants are continuing to accrue those management fees based on those faulty valuations.  The bank records will reveal the amounts the assets are *actually* selling for.

### 2.  Defendants have not shown any basis for denying the SEC access to the information and documents sought from Wells Fargo

Defendants' contention that the Wells Fargo Subpoena must be quashed because the SEC should not be allowed to *receive* confidential information fails.  Denying the SEC access to the information is an extreme and unnecessary action, and Defendants cite no authority to support such a drastic remedy.  This Court has already put in place a mechanism to handle confidential information – the Stipulated Protective Order.  (ECF Nos. 82 and 83).  The Stipulated Protective Order allows parties and non-parties to designate certain information as "Confidential." (ECF No. 82)  Once designated as "Confidential" access to the information is limited and it has to be filed under seal.  (ECF No. 82 at ¶¶ 4, 9)  If Defendants believe that the information sought by the Wells Fargo Subpoena qualifies as "Confidential" under the Stipulated Protective Order, they can designate it as such.  This approach addresses Defendants' stated concerns while allowing the SEC to obtain the needed information.

GTIF and GP Rare Earth incorrectly claim that they have "presented unrefuted evidence on the Quash Motion, including the Hull Declaration. The Debtors showed that prior investigative subpoenas issued by the SEC to such counterparties had caused some such parties to abandon impending transactions, and other potential counterparties to avoid doing business with Debtors altogether."  (ECF No. 94-1 at ¶ 12).  Not only does the Hull Declaration fail to identify any sale that was purportedly not completed because of an SEC investigative subpoena,

(*See* ECF 94-3 at p. 80), the Defendants have admitted that they are unable to identify any sale

that has been disrupted by the SEC.

> In this Law Enforcement Action, the SEC propounded an interrogatory asking:

> "Do Defendants contend that any prospective sale of any assets of Greenpoint
> Tactical Income Fund or GP Rare Earth Trading Account was not completed as a
> result of any action by the SEC?  If your answer is anything other than an
> unqualified "no", identify all prospective asset sales you contend were not
> completed, including the name of each prospective purchaser, a list of the assets
> that were to be sold, and the date or approximate date each asset sale was to have
> occurred."

(Exhibit 16 at p.1).  The only purported "transaction" identified by Defendants in their verified

response signed by Defendant Nohl was:

> With respect to specific contemplated transactions, during the 2018 Tucson Gem
> and Mineral Show, [a former employee] was approached by a prospective buyer
> interested in purchasing a [specific mineral]. The buyer subsequently backed out
> of the purchase, citing knowledge of the ongoing government investigations of
> GTIF as his reason. The prospective buyer's name is unknown to [the former
> employee.]

(*Id.* at pp. 2-3, 4).[6]  Obviously, one prospective buyer whom the Defendants cannot even identify

purportedly citing knowledge of "government investigations" in declining to purchase a mineral

is not evidence of counterparties abandoning impending transactions because of an SEC

investigative subpoena or other conduct by the SEC.

Lees, the owner of CEMI, submitted a Declaration in which he speculates that potential

buyers do not want their identities disclosed to third parties.  That is not a valid legal basis to

quash the Wells Fargo Subpoena.  It is also inconsistent with the factual record.  First, Lees

appears to be unaware of the Stipulated Protective Order.  In his declaration, he talks about

having "highly confidential information enter [sic] into the public record."  (ECF No. 94-4 at ¶ 5)

Enforcing the Wells Fargo Subpoena will enable the SEC to *obtain* documents relevant to this

---

[6] The SEC has redacted the name and price of the mineral.

Law Enforcement action; it will not cause any information to enter into the public record.  The Stipulated Protective Order provides Defendants with appropriate tools to restrict the disclosure of confidential information in the public record.

Second, under the agreed order appointing CEMI in the bankruptcy proceeding, the same bank records that are the subject of the Wells Fargo Subpoena are to be regularly provided to two third-parties.[7]  (ECF No. 94-3 at p. 27 ¶ 16).  Lees' speculation that prospective buyers do not want their identities disclosed to third-parties is no reason to deny the SEC access to records that GTIF and GP Rare Earth already agreed to disclose to two third-parties.

Finally, it should be noted the fact that the Wells Fargo Subpoena had been issued was not publicly known until Defendants filed it on public dockets in both this case and in the bankruptcy case—thereby announcing to potential purchasers that the SEC may obtain bank records regarding their purchases.  Having done that Defendants now argue that the only solution is to deny the SEC the records.  Defendants created this issue.  The solution is not to punish the SEC by quashing the Wells Fargo Subpoena.

**G.  Defendant-Debtors have no right to participate in the SEC's trial preparation**

In the motion to quash the Wells Fargo Subpoena, Defendants falsely and repeatedly accuse the SEC of misconduct by interviewing Lees.  Defendants claim that since they have identified Lees as a potential witness regarding their bankruptcy plan that all communications with Lees must go through their bankruptcy counsel and/or the bankruptcy court.

Defendants fail to tell this Court that they also identified Lees as a witness in response to the SEC's interrogatory in this Law Enforcement Action asking if Defendants contend any asset sales were not completed as a result of any action by the SEC.  Defendants' response states that

---

[7] The bankruptcy order appointing CEMI was an agreed order between the debtors and three other parties.  The SEC did not take any position on the motion to appoint CEMI.  (*See* ECF No. 94-3 at pp. 22-23).

Lees would have information regarding the purported fact that various "contacts, publications, and general knowledge of the SEC's allegations and investigation, have depressed interest in gem and mineral assets of Defendants even where a specific sale was not contemplated." (Exhibit 16 at p. 2).  Because Defendants identified Lees as a potential witness in response to the SEC's interrogatory in this case, the SEC asked Lees' attorney if his client would participate in a voluntary interview.  Lees agreed, and he and his counsel participated in the interview as part of the SEC's preparation for trial in this matter.  The interview was not recorded or transcribed.

Defendants are not entitled to participate in the SEC's trial preparation activities.  Nor do they get to decide what witnesses the SEC may contact or what questions it may ask.  Nothing about GTIF and GP Rare Earth filing for bankruptcy in the midst of this Law Enforcement Action changes that fact.  The decision of whether to accept the invitation for the interview was properly made by Lees and his own attorney, and Defendants had no right to intrude on that decision.  Defendants are free to talk to Lees on their own; they can also choose to depose him in this case if they wish.  But what they cannot do is restrict the SEC's ability to prepare for trial in this matter by insisting that their bankruptcy attorneys must participate in, or even be notified, of the SEC's pretrial activities.

## **CONCLUSION**

WHEREFORE, the SEC requests that the motion to quash the Wells Fargo subpoena be denied, and that the Court grant such other and further relief as it deems appropriate.

Dated February 8, 2021.

> UNITED STATES SECURITIES
> AND EXCHANGE COMMISSION
>
> By: Christopher H. White

Doressia L. Hutton (HuttonD@sec.gov)
Christopher H. White (WhiteCh@sec.gov)
Timothy Stockwell (Stockwellt@sec.gov)
175 West Jackson Boulevard, Suite 1450
Chicago, IL 60604-2615
(312) 596-6049
(312) 353-7398 (fax)

*Attorneys for Plaintiff the United States
Securities and Exchange Commission*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 8, 2021, I served a true and correct copy of the foregoing filing on all counsel of record through the Court's ECF filing system.

By: <u>/s/ Christopher H. White</u>