UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| SEC,<br><br>      Plaintiff,<br><br>  v.<br><br>BLUEPOINT INVESTMENT COUNSEL, et al.,<br>      Defendants. | Case No. 19-cv-809-wmc |

**DEFENDANTS' UPDATE**
**RE MOTIONS TO COMPEL - DOCKET # 73 & 135**

In accordance with the Court's Order [Docket No. 149], Defendants hereby file this update of their previously filed motion to compel [Docket No. 73] and to the SEC's motion to compel [Docket No. 135]. The privileged documents and information sought by the Defendants' motion to compel remain outstanding and are relevant to liability, damages/remedies, and affirmative defenses raised by Defendants. The SEC has refused to withdraw its motion to compel, despite having received – on the day it was filed – all the information it sought.

**Defendants' Motion to Compel**

1.  Very shortly after FBI agents brandishing guns showed up at the homes and offices of Defendants in March 2017, DOJ must have discovered that the information it had received from the SEC and relied upon to get search warrants was false. In record time DOJ appears to have concluded that Defendants were not fraudulently inflating the value of GTIF gems and fine minerals because in just a few months DOJ returned all of the seized gems and minerals. DOJ never brought any criminal charges. This was undoubtedly an embarrassment for the SEC Staff involved.

1

2. In an apparent effort at reputational rehabilitation, the SEC filed an almost 500-paragraph complaint based, in large part, on events occurring *after the FBI raid* and caused by the publicity of the FBI search warrant affidavit, which was based upon the SEC's false information. For example, the SEC alleges that GTIF failed to provide funding to Amiran Technologies that "it needed.[1]" In fact, it was the FBI raid – based on the SEC's false information – that caused GTIF to be unable to obtain funding for Amiran.[2] The SEC alleges that GTIF's gems and fine minerals were appraised at values at which they could not be sold. The SEC made sure that GTIF could not sell its gems and minerals for those appraised values. The FBI raid and the threat of being subpoenaed by the SEC caused GTIF to be unable to find buyers for its gems and fine minerals.[3] Special procedures had to be established in the Bankruptcy Court to protect potential purchasers from SEC harassment. The SEC alleges that GTIF failed to provide audited financials to limited partners. In fact, it was the FBI raid that caused GTIF's auditor to withdraw and other auditors to decline the engagement.[4] *But for* the false and misleading information the SEC provided to DOJ upon which the search warrant affidavit was largely based, the vast majority of the conduct alleged in the complaint would not have occurred. The SEC's role in misleading DOJ and causing harm to Defendants is relevant to causation, to affirmative defenses of the SEC acting in bad faith, and to damages and remedies the SEC seeks. This is not the *general* situation, rather this is a situation

---

[1] The SEC allegation of not providing timely funding to Amiran is not a violation of federal securities laws.
[2] Documents and testimony obtained by the SEC during its investigation revealed that shortly after the FBI raid became public, a potential provider of mezzanine funding (Promontory Point) walked away from a deal with GTIF that was close to closing and that funding was no longer available to GTIF.
[3] Deposition testimony and other sworn testimony establish that the potential purchasers of gems and minerals were hesitant to do business with GTIF for fear that the SEC would require them to respond to subpoenas for documents and testimony. The possibility during the investigation and litigation of having to incur substantial attorney's fees to respond to demands from the SEC impaired GTIF's ability to generate liquidity.
[4] Baker Tilly auditors testified in the SEC's investigation that they withdrew from serving as GTIF's auditor because of the publicity surrounding the March 2017 FBI raid.

where the SEC's false statements to DOJ and other conduct actually caused much of the harm alleged in the complaint.

3. Defendants have made other efforts to obtain the information sought in the motion to compel. The SEC has rebuffed all those efforts:

   a) Defendants sought a Rule 30(b)(6) deposition of the SEC and, alternatively, a deposition of SEC attorney Charles J. Kerstetter, the individual who submitted a declaration in opposition to the motion to compel [Docket No. 81] and who verified the SEC's answers to the interrogatories. The SEC flatly refused to produce Mr. Kerstetter to be deposed or to produce a Rule 30(b)(6) witness.

   b) Defendants issued requests for admission to the SEC concerning certain dates and events occurring in 2015, 2016 and 2017. The SEC refused to respond to the requests for admission, claiming that the Court's scheduling order permitted an extension to April 12 for the SEC to issue discovery, but not for Defendants[5].

The SEC has failed to show that numerous documents it is withholding are covered by any legitimate privilege.

4. Among the many documents the SEC claims are privileged are communications of numerous SEC OCIE examination staff from late 2015 and early 2016. [SEC Response Brief, Docket No. 80 at 27] In its response, the SEC withdrew its claims of work product protection for OCIE examiner communications. Moreover, according to the SEC, anticipation of litigation is indicated by the opening of a formal investigation or the issuance of a litigation hold, which did not happen here until July 1, 2016. [Decl of Asst Reg Dir Charles J. Kerstetter, Docket No. 81, ¶ 7] The only privileges asserted for these types of documents are attorney-client and deliberative process.[6] There is no basis for the SEC to withhold documents like notes taken by a non-lawyer

---

[5] The SEC concedes in its update [Docket No. 150] that discovery for Defendants remained open until April 20. Defendants filed these requests for admission on April 12. Once again the SEC is playing fast and loose with the facts.

[6] The SEC provided no basis for claiming the deliberative process privilege for the Chicago Office OCIE Examination Staff, who are not involved in making SEC policy generally and were not involved in making SEC policy here.

SEC OCIE examiner of her February 2016 interview of Defendant Michael Hull as attorney-client or deliberative, even if these documents were circulated to a lawyer. [Docket No. 80, Ex. 3, Priv. Doc ID No. 61]

5. In addition, the timing of SEC actions, indicate that the SEC was coordinating its investigation with DOJ – making these and other documents *Brady* materials that are required to be produced. On June 24, 2016, SEC Assistant Regional Director Paul Montoya informed Defendants in writing that the SEC was closing without action an investigation of Defendants open since 2013. But on July 1, 2016 – less than one week later – the SEC secretly opened a second investigation into Defendants. The SEC has refused to provide any explanation of why it secretly opened this second investigation. Documents improperly withheld as privileged could reveal that this was done at the behest of DOJ.

**SEC Motion to Compel**

6. In addition, Defendants wish to update the Court on the pending SEC motion to compel. [Docket No. 135] Last week, the SEC informed Defendants that it would not withdraw its motion, even though it received the files it sought the same day it filed the motion. It appears the SEC's intent is not to obtain documents but to double down on its false representation to the Court that Defendants made a "dump" of documents to the SEC. As set forth in Defendants' response [Docket No. 139], if the SEC had bothered to do even a cursory review of the documents Defendants had made available via Google Drive, they would have seen that the files were neatly organized in topical folders. The SEC either intentionally or recklessly falsely told the Court that the documents produced were an unorganized "dump." The SEC has refused to correct that false statement.

7. The SEC's false representation to the Court is consistent with its abusive discovery conduct. After Defendants' original counsel withdrew, the SEC began issuing a barrage of discovery:

| | |
|---|---|
| March 2 | 6th Set of Requests for Admission |
| March 3 | 4th Interrogatory |
| March 10 | 7th Set of Requests for Admission<br>8th Set of Requests for Admission |
| March 15 | 15th Set of Document Requests |
| March 16 | 16th Set of Document Requests |
| March 18 | 17th Set of Document Requests |
| March 19 | 18th Set of Document Requests |
| March 31 | 19th Set of Document Requests |
| April 10 | 9th Set of Requests for Admission |
| April 11 | 10th Set of Requests for Admission |
| April 12 | 20th Set of Document Requests<br>21st Set of Document Requests<br>5th – 20th Interrogatories<br>11th Set of Requests for Admission |

The SEC issued all this discovery even though it had been investigating Defendants since 2013 and litigating since 2019. These March and April 2021 discovery requests sought countless documents that had already been produced and ignored by the SEC. Moreover, at depositions the SEC asked blatantly irrelevant and pointless questions of Messrs. Hull and Nohl to prolong their depositions for the full seven-hour period[7]. These discovery abuses reveal that the purpose of the

---

[7] Despite having received Defendants' Answer before the deposition of Michael Hull, the SEC spent a substantial amount of time asking Mr. Hull what he disagreed with in the SEC's First Amended Complaint (not Answer), starting with page one, asking what in each paragraph Mr. Hull disagreed with until the seven hours were completed. The SEC started to do the same thing at Christopher Nohl's deposition. When reminded by the undersigned counsel that Defendants had, in fact, filed an Answer, the SEC proceeded to ask Mr. Nohl the same questions in the same manner with the Answer, starting with page one asking what in each paragraph Mr. Nohl disagreed with until Defendants' counsel terminated the deposition. This abusive behavior can be viewed, not just read, as the depositions were videorecorded.

SEC's motion to compel was not to obtain documents or information but impose unnecessary burdens, including unnecessary legal fees, on Defendants.

Dated: June 16, 2021

Attorneys for Defendants

By: */s/ Celiza P. Bragança*
Celiza P. Bragança (Ill. Bar No. 6226636)
*Lisa@SECDefenseAttorney.com*
BRAGANÇA LAW LLC
5250 Old Orchard Road, Suite 300
Skokie, Illinois  60077 | 847-906-3460

James L. Kopecky *JKopecky@KSRlaw.com*
Howard Rosenburg
HRosenburg@KSRlaw.com
KOPECKY SCHUMACHER ROSENBURG LLC
120 N. LaSalle St., Suite 2000
Chicago, Illinois  60602 | 312-380-6552

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 16th day of March 2021, a true and correct copy of the foregoing was served on all counsel of record via ECF to:

John Birkenheier BirkenheierJ@sec.gov
Christopher H. White *WhiteCH@sec.gov*
Timothy Stockwell  *StockwellT@SEC.gov*
U.S. Securities Exchange Commission
175 West Jackson Boulevard, Suite 1450
Chicago, IL 60604-2615

Michael Richman  *mrichman@@steinhilberswanson.com*
Claire Ann Richman  *crichman@steinhilberswanson.com*
Steinhilber Swanson LLP
122 W. Washington Avenue, Suite 850
Madison, WI  53703-2732

*/s/ Celiza P. Bragança*
Attorney for Defendants