IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES SECURITY
AND EXCHANGE COMMISSION,

                    Plaintiff,

    v.

BLUEPOINT INVESTMENT
COUNSEL LLC, MICHAEL G.
HULL, CHRISTOPHER J. NOHL,
CHRYSALIS FINANCIAL LLC,
GREENPOINT ASSET MANAGEMENT
LLC, GREENPOINT TACTICAL
INCOME FUND LLC, and GP RARE
EARTH TRADING ACCOUNT LLC,

                    Defendant.

OPINION AND ORDER

19-cv-809-wmc

On September 30, 2019, the Securities and Exchange Commission ("SEC") brought this suit against defendants, alleging that Michael Hull, Christopher Nohl, and several of their associated investment funds violated the Securities Exchange Act. Before the court is the SEC's partial motion for summary judgment on three of defendants' affirmative defenses. For the reasons below, the court will grant the motion.

BACKGROUND

A. Parties

Plaintiff SEC is an agency of the U.S. Government formed after the stock market crash of 1929 that triggered the Great Depression; among other things, it is charged with enforcement of federal securities laws and regulations. Defendant Greenpoint Tactical Income Fund LLC ("GTIF") is a private investment fund nominally managed by two of its

members, defendants Greenpoint Asset Management II LLC ("GAM II"), and Chrysalis Financial LLC ("Chrysalis").  (Pl.'s PFOF (dkt #162) ¶ 2.)  Defendants Michael Hull and Christopher Nohl are the actual co-managers of GTIF.  (Id. at ¶ 3-4.)  Defendant GP Rare Earth Trading Account LLC ("RETA") is a wholly-owned subsidiary of defendant GTIF, which (as the name suggests) purportedly deals in rare minerals.  (*Id*. at 5.)  Finally, defendant Bluepoint Investment Counsel LLC is controlled by Michael Hull.  (*Id*. at 6.)

### B. Overview of Allegations[1]

The SEC filed this suit against defendants on September 30, 2019, alleging that Hull, Nohl, and their associated entities serve as investment advisers to GTIF, which has represented itself as an "income fund."  (Am. Compl. (dkt. #33) ¶ 1.)  However, GTIF invested heavily in illiquid assets, such as gems and minerals.  In fact, as of June 30, 2018, around half of the portfolio's value came from its mineral collection and half from securities in Amiran Technologies, Inc., which was an environmental remediation company that is now defunct.  (Id. at ¶ 4.)  The SEC claims that defendants greatly overvalued assets and misled investors about how the fund is run, both constituting violations of the Securities Exchange Act.

According to the SEC, defendants improperly assigned an inflated value to the Fund's interest in Amiran of $46 million in particular, despite knowing that Amiran's

---

[1] Generally, the court would provide a more thorough statement of the facts, but given that the motion at issue is one for partial summary judgment on three, specific affirmative defenses, only a brief overview of plaintiff's allegations from the operative pleading is necessary to provide context. However, the court assumes that all of the cited allegations from the first amended complaint are in dispute and, as such, have not been relied on in this opinion.

subsidiary was in default at the time and Amiran itself was in a precarious financial position. (First Am. Compl. (dkt. #33) ¶ 400.) Moreover, that valuation represented over a $40 million increase in the company's purported value over just a three-year period. (Id. at ¶¶ 243, 400.) Soon after, Amiran shut down and is no longer a going concern. (Id. at ¶ 409.)

The SEC similarly claims that defendants improperly inflated the value of GTIF's gems and minerals holdings by pressuring appraisers to inflate the market value of gems, using outdated appraisals, choosing the highest of several appraisals, or buying gems directly from appraisers willing to assign inflated values despite the recent sale. These inflated values were then allegedly used by defendants to calculate the asset value of the fund. Specifically, as of June 2018, the fund had a reported net value of $138 million, of which 95% is unrealized gains.

The SEC also claims that Hull, Nohl, and their entities took excessive fees from the fund and engaged in self-dealing during this same period. Specifically, Hull, Nohl, and their subsidiaries allegedly gave several loans to GTIF in which they collected an interest rate over 100%. (First Am. Compl. (dkt. #33) ¶ 164.) None of these loans were ever disclosed to investors and auditors despite totaling some $650,000. (Id. at ¶ 173.) Hull and Nohl also charged GTIF millions of dollars' worth of fees and payments, allegedly leaving GTIF unable to meet funding obligations to Amiran or to timely payback investor redemption requests. (Pl.'s Rep. to Def.'s Resp. to Pl.'s PFOF (dkt. #171) ¶ 18)

While defendants purport to rebut these allegations by stating generally that their behavior was lawful and proper, as well as suggesting that the SEC's claims are retaliatory

3

and motivated by prosecutorial vindictiveness, they cite no *evidence* in response to plaintiff's proposed findings of fact as required by this court's [Procedures on Summary Judgment.](#) (Dkt. #23.)   However, because none of the SEC's allegations regarding defendants' conduct are at issue for this summary judgment motion, this is largely irrelevant.

OPINION

Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If there is any genuine issue as to any material fact, the court cannot grant summary judgment. *Id*. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). Finally, "[t]he evidence of the non-movant[s] is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Id*. at 255.

In addition to offering no evidence in support of their challenged affirmative defenses, the defendants have failed to even outline their *theory* as to the applicability of each defense in their opposition brief. Indeed, rather than responding to the SEC's specific legal arguments and factual evidence as to why each defense is unwarranted, defendants' brief makes broad references to bad faith behaviors, often failing to distinguish between the three defenses and their separate legal requirements. At one point, an analysis of a line of cases ends with the vague assertion that "these cases show defendants' affirmative

4

defenses are not barred as a matter of law," without even attempting to illustrate to what defense this case law refers.  (Def.'s Opp. (dkt. #169) 25.)

As a result, the asserted affirmative defenses of estoppel and due process violations are wholly undeveloped, and defendants fail to respond substantively to the SEC's legal theories or proposed factual findings regarding them. This alone is sufficient to constitute waiver of these two, specific defenses at the very least.  Nevertheless, the court will attempt to analyze each defense separately to illustrate why summary judgment is warranted even if all three affirmative defenses had been fully addressed by defendants.

## I.   Estoppel and Waiver

Defendants argue that the SEC should be estopped from pursuing this case or that, in the alternative, its claims were waived.  Given that the waiver argument is never developed or defended in defendants' response, and that defendants rely mostly on vague claims of bad faith, this sixth affirmative defense as asserted against the SEC can reasonably understood only as an argument for estoppel.  However, even defendants' argument for estoppel seems to rely on the novel theory that the SEC "is well aware from their communication with the US DOJ that their legal theory of asset valuation manipulation and fraud is untrue."  (Ans. (dkt. #132) 113.)

While wholly unclear from their briefing, defendants appear to be asserting estoppel from civil enforcement by the SEC based specifically on the fact that the SEC referred the case at hand to the Department of Justice for potential *criminal* charges, which never materialized.  (Def.'s Opp. (dkt. #169) 2.)  To this end, defendants have sought discovery of the communications between the SEC and DOJ, which Magistrate Judge Crocker has

properly found to be protected as privileged in this lawsuit.   (Dkt. #160.)   Moreover,

without *any* factual evidence, defendants instead vaguely allege that the SEC must know

that their case is meritless because the DOJ did not bring criminal charges.  (Ans. (dkt.

#132) 113.)

This argument amounts to a complete *non sequitur*.  While civil and criminal charges

can stem from the same factual occurrence, the absence of criminal charges does not in the

slightest suggest that the civil case is meritless if for no other reason than that the burden

of proof is lower.  Indeed, this would be true even if defendants had actually been *acquitted*

of criminal charges.  *See Helvering v. Mitchell*, 303 U.S. 391, 397 (1938) (holding "that

acquittal on a criminal charge is not a bar to a civil action by the Government, remedial in

its nature, arising out of the same facts on which the criminal proceeding was based has

long been settled.") Tellingly, defendants offer *no* legal authority to the contrary.

Regarding the assertion of estoppel against a government agency more generally, the

Seventh Circuit has found that defendants must clear a high evidentiary bar:

> In cases involving the United States, estoppel is applicable if
> the government's actions constitute 'affirmative misconduct'
> and if four additional requirements are satisfied. First, the
> party to be estopped must know the facts. Second, this party
> must intend that his [or her] conduct shall be acted upon, or
> must so act that the party asserting estoppel has a right to
> believe it is so intended. Third, the party asserting estoppel
> must have been ignorant of the facts. Finally, the party
> asserting estoppel must reasonably rely on the other's conduct
> to his [or her] substantial injury.

*United States v. Lair*, 854 F.2d 233, 237–38 (7th Cir. 1988) (internal citations omitted).

Yet in the face of this high bar, defendants fail to offer any evidence meeting even a

threshold showing of affirmative misconduct by the government.

Certainly, at summary judgment, the defendants who carries the burden of proving the elements of governmental estoppel, must provide the court with more than mere allegations that the SEC used "litigation as a means to rehabilitate its reputation after the DOJ/FBI declined to pursue criminal charges." (Def.'s Opp. (dkt. #169) 26.) For example, in a case involving a claim of estoppel against the Small Business Administration ("SBA"), the Seventh Circuit found that a defendant did not "to specify what facts the SBA knew . . . did not indicate what representations [the agent] made to them, and failed to allege how they relied on [the agent's] representations to their detriment." *United States v. Lair*, 854 F.2d 233, 238 (7th Cir. 1988) (overruled on unrelated grounds). Because of these failures, the Seventh Circuit found that summary judgment was appropriate. *Id*. Here, too, defendants offer absolutely no evidence as to what "affirmative misconduct" the SEC supposedly engaged in, what actions it undertook, and how defendants reasonably relied on those actions.

At most, defendants *suggest* that the SEC made errors in its investigative processes; however, a mere suggestion does not begin to satisfy the required standard of "affirmative misconduct," nor make a *prima facie* showing that any of the other four, additional requirements discussed above are satisfied on this record. *Lair*, 854 F.2d 233 at 237. Because neither this court nor a reasonable jury could find that estoppel is warranted given defendant's complete lack of evidence, summary judgment on this affirmative defense will be granted to plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II.     Due Process

The SEC also seeks summary judgment on defendants' affirmative defense of lack of due process and fair notice.  Specifically, defendants allege that (1) they "lacked fair notice that its conduct was prohibited" and (2) "the SEC had the opportunity to provide notice to [d]efendants of any actions to which it objected."  (Ans. (dkt. #132) 112.) Defendants' fundamental legal error in asserting this defense lies with its unstated assumption that a government agency undertaking an investigation of possible unlawful conduct is required to provide the same level of due process as a court proceeding.  To the contrary, the United States Supreme Court has explicitly held that "when governmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used."  *Hannah v. Larche*, 363 U.S. 420, 442 (1960).  In particular, the Supreme Court held in *Hannah* that when the *SEC* undergoes investigative rather than adjudicative proceedings, the SEC's rules regarding notice do not apply, in order to "prevent the sterilization of investigations by burdening them with trial-like procedures." *Id*. at 448.  Again, defendants do not offer contrary case law, nor attempt to distinguish *Hannah.*  Accordingly, this court must follow long-standing, controlling Supreme Court precedent in holding that neither due process protections applied nor due process violations occurred with respect to the SEC's investigation of defendants.

The claim to a denial of fair notice is similarly meritless.  "Due process requires that "laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited."  *Upton v. S.E.C.*, 75 F.3d 92, 98 (2d Cir. 1996) (*quoting Grayned v. City of*

*Rockford*, 408 U.S. 104, 108 (1972).  In cases assessing whether fair notice was given, however, courts look to the particular SEC rule or rule interpretation that is challenged. *E.g., Upton v. S.E.C.*, 75 F.3d 92 (2d Cir. 1996) (looking at whether Rule 15c3-3(e) was interpreted correctly);  *Sec. & Exch. Comm'n v. Ripple Labs, Inc.*, No. 20CV10832ATSN, 2021 WL 2323089 (S.D.N.Y. May 30, 2021) (looking at whether the SEC considered XRP a security); *KPMG, LLP v. S.E.C.*, 289 F.3d 109 (D.C. Cir. 2002) (looking at the interpretation of AICPA Rule 302).

In this case, defendants fail to even identify what SEC rule or practice, if any, they claim to have been unaware until this civil suit was filed, much less to which inadequate notice was provided.  This is no mere technical failure either, as the SEC's allegations recite a long litany of wrongdoing by the defendants.  Without defendants pointing to some rule, practice, interpretation, or procedure to which they lacked fair notice, neither this court nor a reasonable jury would be able to find in favor of defendants on a defense of due process.  Moreover, this court will only allow the SEC to proceed against it on straightforward violations of the law that any prudent seller would or should have been fully aware.  For all these reasons, summary judgment must also be granted to plaintiff on defendants' due process affirmative defense.

## III.    Unclean Hands

Finally, the SEC seeks summary judgment on defendants' affirmative defense of unclean hands, arguing that it is barred from being asserted against the government as a matter of law.  (Pl.'s Br. (dkt. #164) 13.)  The District Court for the Northern District of Illinois compellingly addressed this question in *U.S. Commodity Futures Trading Comm'n v.*

*Kraft Foods Grp., Inc.*, 195 F. Supp. 3d 996 (N.D. Ill. 2016), holding that "[w]hile the Seventh Circuit has not definitively addressed whether the affirmative defense of unclean hands may be asserted against a government agency in an enforcement action to protect the public interest, the great weight of authority shows that it may not." *Id*. at 1009. Because defendants offer no persuasive legal authority to the contrary, as discussed below, this court is inclined to follow the Northern District's lead.

Ultimately, like the court in *USCFIC v. Kraft*, this court is particularly "persuaded by the vast majority of case law [holding] that—as a matter of law—the unclean hands defense is not available in actions brought by the government in the public interest," and that "courts frequently grant government motions to strike unclean hands affirmative defenses." *Id*. (citations omitted). Additionally, the Supreme Court has suggested that "though the United States is subject to the general principles of equity, equitable principles 'will not be applied to frustrate the purpose of [the United States'] laws or to thwart public policy.'" *Id*. (quoting *Pan–Am. Petroleum & Transp. Co. v. United States*, 273 U.S. 456, 506, 47 S.Ct. 416, 71 L.Ed. 734 (1927).)

Defendants push back against this legal conclusion, arguing that *United States v. Powell*, 379 U.S. 48 (1964) is the proper precedent upon which to rely. (Def.'s Opp. (dkt. #169) 19.) However, *Powell* and its progeny deal with subpoena enforcement. *Powell*, 379 U.S. 48 (1964). Even in *Powell*, the court allowed the IRS to compel the defendant to produce records, while holding that "[i]t is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused," setting forth situations that may constitute abuse of process. *Id*. at 58. Regardless, the question

10

of whether the IRS may enforce a subpoena without court involvement is miles removed from this case, where defendants are looking to bar the SEC from pursuing their claims against it *in* a court of law.  Indeed, since the SEC is *seeking* judicial enforcement in this case, *Powell*, if anything, supports it being allowed to do so.

Defendants also cite *S.E.C. v. Cuban*, 798 F. Supp. 2d 783, 795 (N.D. Tex. 2011), which *did* find a defense of unclean hands against the SEC is not barred as a matter of law. However, defendants fail to note two problems with that decision's application in this case. First, even in *Cuban*, the court decided not to allow the defendant to proceed with his unclean hands defense, noting that even if available, the defense is "strictly limited." *Id*. at 797, 795.  In this case, defendants offer no evidence suggesting that this strict limitation has been overcome here.   Second, *Cuban* is not only a non-binding opinion from the Northern District of Texas, but was published before *Kraft*.  *Id*.  While neither *Kraft* nor *Cuban* bind this court, *Kraft* was decided by a sister court in the Seventh Circuit and notes the existence of the contrary *Cuban* opinion.  *Kraft*, 195 F. Supp. 3d 996, 1009 (N.D. Ill. 2016).  As such, *Kraft* provides both a more persuasive analysis, as well as one more likely to reflect the current law in the Seventh Circuit.

Even if the defense of unclean hands were available to a defendant in response to a SEC civil complaint, however, defendants here again have failed to offer *any* evidence that would justify its assertion in *this* case.  Absent compelling case law *and* facts to the contrary, therefore, the court will also grant plaintiff's motion for summary judgment on the affirmative defense of unclean hands, especially where, as here, the SEC is plainly acting in the public interest.

11

ORDER

IT IS ORDERED that plaintiff Securities Exchange Commission's motion for partial summary judgment (dkt. #161) is GRANTED and defendants' affirmative defenses of estoppel, due process and notice, and unclean hands are DISMISSED with prejudice.

Entered this 16th day of November, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

12