IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,                          OPINION AND ORDER

   v.

                                                19-cv-809-wmc

BLUEPOINT INVESTMENT
COUNSEL, et. al.,

                Defendant.

---

On September 30, 2019, the Securities and Exchange Commission ("SEC") brought this suit against defendants, alleging that Michael Hull, Christopher Nohl, and several of their associated funds violated the Securities Exchange Act. In this opinion, the court addresses the three remaining disputed motions in limine in advance of the Final Pretrial Conference ("FPTC").

OPINION

I.  Motions in Limine for Defendant

    a.  **TO EXCLUDE EVIDENCE OF AMIRAN'S VALUE NOT KNOWN BY GTIF WHEN VALUATIONS WERE PREPARED**

Defendants' fifth motion in limine asks to exclude any evidence of Amiran's value that was not known to the Greenpoint Target Interest Fund ("GTIF") when GTIF prepared its valuations, as GTIF did not *and could not* have known such information. (Def.'s Mot. (dkt. #329) 1.) This would strike expert McMahon's calculations of GTIF's quarterly reports and the value of Amiran. In opposition, the SEC argues that defendants misstate McMahon's findings and professional standards. (Pl.'s Opp'n. (dkt. #334) 1.) The SEC

also notes that valuations are expected to take into account what the parties knew or *could have known* at the time of the valuation, and McMahon's valuations include information defendants could very well have known. (*Id*. at 3-4.) As a general matter, these two standards are *not* in conflict.

However, defendants also appear to argue that the valuations can only contain the knowledge GTIF and the defendants *actually had*, without providing legal support for this assertion. (Def.'s Mot. (dkt. #329) 3-5.) Meanwhile, plaintiff has at least provided a basis for a reasonable jury to find that McMahon followed a generally accepted method of business valuation. (Pl.'s Opp'n. (dkt. #334) 1.) Accordingly, the court will not strike her valuation testimony. To the extent that defendants believe her valuation depended on information that could not be reasonably known, they are welcome to expose the weaknesses of McMahon's testimony and valuations on cross-examination. As the Seventh Circuit has stated, "[t]he fact that an expert's testimony contains some vulnerable assumptions does not make the testimony irrelevant or inadmissible," and "this arguable limitation can also be addressed through cross-examination." *Stollings v. Ryobi Technologies, Inc.*, 725 F.3d 753, 768 (7th Cir. 2013).

As for defendants' argument that McMahon should not be allowed to incorporate later-occurring events into past valuation periods, however, the court agrees and has previously ruled that McMahon cannot use hindsight in her valuations. (Dkt. #326.) Any events that happened after the quarterly valuation report was issued is irrelevant to that report. However, the SEC asserts that McMahon only used information from the relevant time period for each report. (Pl.'s Opp'n. (dkt. #334) 5.) As such, McMahon will be held

to that assertion and may only testify to quarterly valuation calculations that used information reasonably available *before* the report was issued.

In particular, defendants point to section 4.2.5 of the expert report as incorporating hindsight information, but McMahon explicitly refers to that section as "examples of information that may not have been adequately disclosed . . . at the indicated points in time." (McMahon Rep. (dkt. #329-1) 50.) Additionally, defendants criticize various, other of McMahon's statements to the effect that: "[a]lthough Lincoln Financial was retained, nothing came of the effort. These efforts suggested that uncertainty regarding Amiran's financial and operational prospects (e.g., whether it would be awarded the contract in Kuwait) were likely having a downward impact on Amiran's perceived value proposition." (McMahon Rep. (dkt. #329-1) 50.) Defendants argue that this statement is using the ultimate fact that Lincoln Financial did not buy Amiran to justify earlier valuations; however, the implication of McMahon's opinion is that Amiran's efforts to sell the company and related uncertainty as to how Amiran would operate in the future, created some level of instability and could impact the company's value. Again, defendant may cross-examine McMahon about this assumption or present other contrary evidence, but this opinion does not necessarily rely on later facts. The court does not find that any specific opinions identified by defendant rely on hindsight, and no opinions will be struck from McMahon's report absent a further, specific proffer from defendants at the FPTC. Accordingly, defendants' motion in limine is DENIED.

### b. ADMISSIBILITY OF EVIDENCE OF COMMUNICATIONS WITH AUDITORS AND ATTORNEYS

Defendants next ask the court to establish whether defendants' communications with auditors and attorneys is admissible, as they are relevant to rebutting specific claims by the SEC. (Def.'s Mot. (dkt. #330).) Relevant to this motion in limine are many of defendants' exhibits, to which plaintiff has objected. Rather than rule broadly on the admissibility of a category of exhibits, some of which are also objected to on foundation or hearsay grounds, the court will take up challenged exhibits individually at the FPTC. As such, any decision on the admissibility of exhibits is RESERVED.

### c. TO EXCLUDE EVIDENCE THAT GTIF 2017-2018 FINANCIALS ARE NOT AUDITED

Finally, defendants ask to exclude evidence that GTIF did not audit its financials from 2017-2018, as it is irrelevant to the SEC's claims and would be prejudicial to explain why the financials were not audited. (Def.s' Mot. (dkt. #331).) The SEC argues that the fact that certain years were unaudited is important information for the jury and the jury will not assume a lack of audits is evidence of misconduct. (Pl.'s Opp'n. (dkt. #336) 2.) In the alternative, however, the SEC has proposed a limiting instruction, which would state that,

> The SEC does not allege that the securities laws required GTIF to have its financial statements audited. You should not speculate as to any reason why GTIF did not have audited financial statements after December 31, 2016.

(Pl.'s Opp'n. (dkt. #336) 5.)

The court finds that a limiting instruction is a reasonable compromise between the parties' positions. The simple fact that certain financial statements are unaudited is relevant context and uncontroversial, but defendants are correct that explaining why certain years don't have audits would delve into prejudicial topics that the court has already excluded. The SEC may thus refer to that the 2016 and 2017 financial statements as "unaudited" but are admonished not to emphasize that fact unnecessarily. If defendants have edits to the proposed limiting instruction, they should be prepared to offer those edits before or at the FPTC. Defendant's motion in limine is thus GRANTED IN PART and RESERVED IN PART.

ORDER

IT IS ORDERED that:

1) Defendants' Motion in Limine #5 (dkt. #329) is DENIED.

2) Defendants' Motion in Limine #6 (dkt. #330) is RESERVED.

3) Defendants' Motion in Limine #7 (dkt. #331) is GRANTED IN PART and RESERVED IN PART.

Entered this 24th day of May, 2022.

BY THE COURT:

_____
WILLIAM M. CONLEY
District Judge