IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 19-cv-809 |
| BLUEPOINT INVESTMENT COUNSEL, LLC, MICHAEL G. HULL, CHRISTOPHER J. NOHL, CHRYSALIS FINANCIAL LLC, GREENPOINT ASSET MANAGEMENT II LLC, GREENPOINT TACTICAL INCOME FUND LLC and GP RARE EARTH TRADING ACCOUNT LLC, | ) Hon. William M. Conley |
| Defendants. | ) |

**PLANTIFF'S NOTICE OF SUBSEQUENT EVENTS**

As the Court is aware, in August 2022 a jury found the Defendants committed fraud in connection with the management of Greenpoint Tactical Income Fund ("GTIF")[1] by Michael Hull, Christopher Nohl, and their various entities. The jury further found that the Defendants acted with scienter—i.e. that their deceptive conduct was intentional. (ECF No. 370). As part of its pending request for remedies, the SEC is seeking obey-the-law and conduct-based injunctions against all Defendants. (*See* ECF No. 390 at 9-16). In particular, the requested conduct-based injunction would protect victim investors by prohibiting Defendants from participating in any issuance, purchase, offer or sale of any security and/or managing or liquidating GTIF and its subsidiaries. (*Id.* at 14-16).

---

[1] Defendants have since changed the name of GTIF to the "Alluvium Fund."

Shortly before trial, Defendants succeeded in confirming a bankruptcy reorganization plan that left Hull and Nohl as conditional managers of GTIF, thus giving them continued access to the funds and assets of the victim investors. (*See* Bankr. Case No. 19-29613 (Bankr. E.D. Wis.), ECF Nos. 1457 & 1458). Under the plan, investors were to have their funds returned over a four-year period. Although most of the money was to be paid in Year 4, a total of $3.75 million—representing 10% of the total—was due by May 19, 2023. (*See* Richman Decl., ECF No. 395 at ¶ 30).

On July 18, 2023, Nohl sent a letter to GTIF investors announcing that none of the $3.75 million required payment to investors would be made. (Nohl Ltr., attached hereto as Exhibit A). As a result of the failure to make the first payment to investors, Hull, Nohl and their entities were automatically terminated as managers of GTIF. (Nohl Ltr. at 1; *see also* Bankruptcy Plan, ECF No. 395-12 at 51-52, § 6.12(a)). But Hull and Nohl continue to try to exert control over the assets of GTIF. Hull has been soliciting GTIF investors to appoint his entity, Greenpoint Asset Management II ("GAM II"), as a proxy that would vote both to reinstate GAM II and Nohl's entity, Chrysalis Financial LLC, as managers of the fund, and also to dissolve the oversight board created in the bankruptcy plan and reform it with new members. (*See* Alluvium Fund Proxy Voting form, attached hereto as Exhibit B, at 3). As far as the SEC is aware, Hull has not yet succeeded in being rehired, but his efforts are a concerning attempt to undermine any independent oversight or accountability for his actions.

Despite the jury's finding that he committed intentional fraud, Nohl says in his letter that he has "done the best in my power to be loyal, protective and just, and always served the interest of the fund and its investors." (Nohl Ltr. at 5). Nohl's letter also claims that the managers "sold" $2.3 million in gems and minerals in the past year, but it appears that less than half of that

2

amount has actually been received. (*Id.* at p. 5 nn. 5 & 7 ($225,000 and $300,000 sales are "pending payment", and $720,000 is "scheduled to be received August 15, 2023").

Nohl's letter also claims he and Hull are working on selling assets to "a middle eastern sovereign wealth fund" and a "wealthy individual". (*Id.* at pp. 2-3). Nohl goes on to warn investors that "It is not known if new management will have the requisite skills and knowledge necessary to complete the offering [to the purported sovereign wealth fund]," and that the sale to the supposed wealthy individual is expected to be completed because "Michael Hull has developed a close relationship" with him and his family. (Nohl Ltr. at 3). Along with the proxy voting form, Hull sent a message to investors: "This is a critical document re-hiring GAM II and Chrysalis Financial to ensure that the transaction currently in place have the best chance of succeeding." (Exhibit B at 1-2). Hull and Nohl have been telling similar lies to investors for years about their purported close and unique relationships with potential counterparties.[2]

This is also not the first time Nohl has claimed that large sales to vaguely described buyers are just around the corner. For example, in March 2019, Nohl testified that there was a "handshake" deal to sell $32.5 million in minerals to an Egyptian buyer known only as "Mohammad," and negotiations were down to details such as "the number of armed guards you can have, what weaponry they can have, [and] what the ground is for where the exchange will occur." (ECF No. 286, at 206-08). In May 2019, Nohl testified that he hoped to consummate a different $32 million sale with the government of an African nation after a meeting that was to

---

[2] *See, e.g.,* Trial Exhibit 2 (Confidential Investment Letter dated 8/7/14) at BIC_0011920 ("In the mineral and gem world the fund's management is personally connected to the key players who are unknown to all but the most select of top dealers. . . ."); Trial Exhibit 18 (Hull Open Letter to Investors, Quarter 1 2015) at BIC_007460 ("It is sometimes difficult to convey just how impossible it is to acquire the world's best mineral specimen. They are in the highest demand by investors, and are usually only offered to the wealthiest and most connected investors in the world. The fact that our team has advanced ahead of these investors is nothing short of miraculous.")

take place with the President's brother in Wisconsin the following month. (ECF No. 270, at 464-467). Neither "Mohammad" nor the African government ever purchased anything from GTIF.

These recent developments underscore the need for the injunctive relief sought by the SEC. Defendants refuse to accept any responsibility for the very serious misconduct the jury found they committed. They continue to mislead investors with vague promises and misleading disclosures. Moreover, Nohl's letter makes clear the Defendants would pay approximately $6 million of GTIF assets to themselves if they were left in charge and cash was available.[3] Defendants have no intention of voluntarily relinquishing control over the assets of GTIF, and they are determined to continue to use those assets to benefit themselves at the expense of the investors who are victims of their fraud. The conduct-based injunction sought by the SEC will ensure that Defendants have no further access to the proceeds of their fraud. It is imperative that an independent manager take control of GTIF's assets without interference from Hull and Nohl, so that those assets may be used to compensate the victims of Defendants' fraud.

Dated: August 3, 2023                By:  /s/ Christopher H. White

Christopher H. White (WhiteCh@sec.gov)
Timothy J. Stockwell (Stockwellt@sec.gov)
John E. Birkenheier (Birkenheierj@sec.gov)
Charles J. Kerstetter (Kerstetterc@sec.gov)
175 West Jackson Boulevard, Suite 1450
Chicago, IL 60604-2615
(312) 353-7390
(312) 353-7398 (fax)

*Attorneys for Plaintiff the United States Securities and Exchange Commission*

---

[3] *See* Nohl Ltr. at 1-2 & nn. 1-4 (consisting of: (a) $2,000,000 for "combined prefiling claim settlement"; (b) $1,209,863 in "administrative fees for work during the bankruptcy"; (c) $1,350,871 to Hull's entity, H Informatics LLC; (d) $575,000 per manager per year for "amounts due Managing Members in the post-confirmation period"; and (e) "post-bankruptcy accounts payable which is material in amount.")

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2023, I served a true and correct copy of the foregoing filing on all counsel of record through the Court's ECF filing system:

Celiza (Lisa) Bragança, Lisa@SECDefenseAttorney.com

David O'Toole, David@SECDefenseAttorney.com

Claire Ann Richman, crichman@steinhilberswanson.com

Michael Richman, mrichman@Steinhilberswanson.com

By:  /s/ Christopher H. White